JOHN B. BULGOZDY, Cal. Bar No. 219897
Email: bulgozdyj@sec.gov
DAVID J. VANHAVERMAAT, Cal Bar. No. 175761
Email: vanhavermaatd@sec.gov
CAROL LALLY, Cal. Bar No. 226392
E-mail: lallyc@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Lorraine B. Echavarria, Associate Regional Director
John W. Berry, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. **'15CV0226 BAS DHB** |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| TOTAL WEALTH MANAGEMENT, INC. and JACOB KEITH COOPER, | |
| Defendants. | |

Plaintiff Securities and Exchange Commission (the "SEC" or "Commission") alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to Sections 209(d), 209(e)(1), and 214 of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-9(d), 80b-9(e)(1), & 80b-14. Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this Complaint.

2. Venue is proper in this district pursuant to Section 214 of the Advisers

1

1  Act, 15 U.S.C. § 80b-14, because certain of the transactions, acts, practices and
2  courses of conduct constituting violations of the federal securities laws occurred
3  within this district. In addition, venue is proper in this district because Defendant
4  Total Wealth Management, Inc. ("Total Wealth") is headquartered in this district.

## SUMMARY

6  3.  This case involves ongoing fraud and breach of fiduciary duty by
7  Total Wealth, a San Diego-based investment adviser that runs a series of
8  unregistered hedge funds, and Jacob Cooper, Total Wealth's founder, sole owner,
9  and chief executive officer. After being charged by the SEC in an administrative
10 proceeding with violations of the federal securities laws, including fraud, Cooper
11 and Total Wealth took their clients' funds to pay a proposed settlement with the
12 SEC. In addition, Cooper and Total Wealth are continuing to take substantial
13 funds from client accounts, under the guise of "administrative fees," without
14 providing any meaningful explanation or accounting to clients. At the same time,
15 Total Wealth and Cooper have advised clients that Total Wealth is winding down
16 its largest fund, the Altus Fund (from which the investor money was
17 misappropriated), that some of the investments are impaired, that withdrawals are
18 restricted, and that investor funds will be distributed slowly over an extended
19 period because the fund's holdings are illiquid.

20 4.  Cooper and Total Wealth have wrongfully taken client funds, and
21 continue to have access to and use of clients' funds for their expenses, while their
22 clients cannot withdraw their funds or terminate the relationship. To stop this
23 ongoing dissipation of the remaining client assets, the SEC seeks emergency relief
24 through this action. By engaging in this conduct, Total Wealth and Cooper are
25 violating the investment adviser fraud provisions of the federal securities laws and
26 breaching their fiduciary duties to investors. With this action, the SEC seeks a
27 temporary restraining order and preliminary injunction, and an asset freeze over
28 the Defendants' financial accounts. It also asks for the appointment of a receiver

over Total Wealth and its related entities, as well as other necessary, ancillary relief. The SEC also seeks permanent injunctions, disgorgement with prejudgment interest, and civil penalties against Total Wealth and Cooper.

## DEFENDANTS

5. **Total Wealth Management, Inc.** is a California corporation with its principal place of business in San Diego, California. Total Wealth registered with the SEC as an investment adviser on November 25, 2009. According to its most recent Form ADV, filed in December 2014, Total Wealth had approximately $103 million under management in 773 client accounts. Total Wealth is the owner and managing member of Altus Capital Management, LLC ("Altus Management").

6. **Jacob Keith Cooper** is a resident of Washington, Utah and the founder, sole owner, and CEO of Total Wealth. Cooper co-founded Total Wealth with Shoemaker. Cooper founded and solely owns and operates Pinnacle Wealth Group, Inc., a California corporation.

## STATEMENT OF FACTS

### A.   Cooper Controls Total Wealth and the Altus Funds

7. Total Wealth registered with the SEC as an investment adviser in 2009. At all times, Cooper has been the sole owner of Total Wealth and its chief executive officer.

8. In late 2009, Cooper organized the Altus Capital Opportunity Fund, L.P. ("Altus Fund") to allow Total Wealth's clients to pool their money to invest in securities and other investments, and to meet the mandatory minimum investment requirement for funds for which they otherwise might not qualify.

9. In 2011, Cooper established a series of pooled investment funds: the Altus Conservative Portfolio Series, L.P., the Altus Growth Portfolio Series, LP, the Altus Focused Growth Portfolio Series, L.P., the Altus Income Portfolio Series, L.P., the Altus Moderate Growth Portfolio Series, L.P., and the Altus Moderate Portfolio Series, L.P. (collectively, the "Altus Portfolio Series").

10. The Altus Fund and the Altus Portfolio Series held many of the same investments, usually in other funds. In all cases, Cooper selected the investments.

11. Altus Management is the general partner of the Altus Fund and the Altus Portfolio Series. Total Wealth is the investment adviser to the Altus Fund and the Altus Portfolio Series.

12. All investors in the Altus funds were clients of Total Wealth and Cooper when they invested in the funds, and the investments in the Altus Fund and the Altus Portfolio Series were part of an overall client investment strategy managed by Total Wealth and Cooper. Total Wealth and Cooper owe a fiduciary duty to the investors in the Altus Fund and the Altus Portfolio Series.

13. As of December 2014, Total Wealth had approximately $103 million under management in 773 client accounts; the Altus Fund claimed gross assets valued at more than $41 million with 86 beneficial owners; and the Altus Portfolio Series collectively claimed gross assets valued at approximately $30.9 million with 58 beneficial owners.

**B.  Cooper and Total Wealth Solicited Investors in the Altus Fund and the Altus Portfolio Series**

14. The Altus Fund and the Altus Portfolio Series obtained investors through Total Wealth. Prior to the formation of the Altus Fund, existing Total Wealth clients could elect to place their investments directly in the offerings recommended by Total Wealth and Cooper. Starting in 2010, Total Wealth and Cooper began advising their preexisting clients to transfer their separate accounts into the Altus Fund. They also began offering the Altus Fund and, later, the Altus Portfolio Series, to new clients.

15. Total Wealth located potential new clients through paid weekly radio broadcasts, existing client referrals, webinars and Total Wealth's website, and meet-and-greets through a local speaker's bureau or a free lunch. Cooper and other Total Wealth representatives then met with potential investors before

accepting them as clients of Total Wealth or as investors in the Altus Fund or Altus Portfolio Series.

16. Total Wealth provided prospective clients with investor packets and brochures, including a packet designed specifically for investors in the Altus Fund and/or Altus Portfolio Series. The packet frequently included an executive summary of the fund, which was created and approved by Cooper. Investors in the Altus Fund and/or Altus Portfolio Series typically received an offering memorandum, a limited partnership agreement, and a subscription agreement.

17. Total Wealth clients who invested directly in the Altus Fund or the Altus Portfolio Series received statements from Altus Fund or the Altus Portfolio Series funds (via Total Wealth).

### C. The Administrative Proceeding

18. The SEC instituted public administrative and cease-and-desist proceedings against Total Wealth, Cooper, and two other persons affiliated with Total Wealth, on April 15, 2014. The Order Instituting Proceedings alleges that these four respondents breached their fiduciary duties and defrauded their clients and investors by failing to disclose their conflicts of interest, making material misrepresentations, and engaging in a fraudulent scheme to conceal their unlawful conduct. First, they failed to disclose the conflicts of interest created by their receipt of undisclosed revenue-sharing fees. This conflict arose because the respondents placed their clients' money into other unaffiliated funds that paid the respondents fees for doing so. Second, they materially misrepresented to clients the extent of the due diligence that they conducted on the investments they recommended. Third, they engaged in a pattern of conduct to conceal the revenue-sharing fees they were paid. They also violated an SEC rule regarding an investment adviser's custody of client funds.

19. Following the institution of the administrative proceedings, Cooper and Total Wealth reached a tentative settlement that was subject to approval by the

five-member Commission in Washington, DC.

20. As a condition of the proposed settlement, Cooper agreed to escrow $150,000 in advance of Commission consideration of the offer, which was a portion of the monetary relief to be ordered against him. .

21. Cooper has stated that he has recently entered a period of "deep financial distress," and has "no income" and "no job opportunities."

### D. Total Wealth's and Cooper's Misappropriation of Client Funds

#### 1. Misappropriation of investor funds for Cooper's settlement

22. Cooper misappropriated $150,000 of client monies from the Altus Fund, through Altus Management, to fund his escrow obligation in connection with the proposed settlement of the administrative proceeding.

23. When asked about the source of the $150,000 placed in escrow, Cooper admitted that "[i]n order to pay the $150,000 required to be placed in escrow, I had to borrow money from the Altus Fund." Cooper caused the Altus Fund to record a "loan" of $150,000 to Altus Management on September 26, 2014, for "SEC settlement."

24. Cooper signed, on behalf of himself, a one-page document dated September 26, 2014, which purports to memorialize a $150,000 loan from Altus Management to Cooper. In that document, Cooper claimed he had determined that it would be "advantageous" to investors for the Altus Fund to provide a "short-term loan so that Mr. Cooper can satisfy the SEC's deadline for placing money in escrow." But to the extent that determination was even made, Cooper had an inherent conflict of interest in deciding whether client funds should be used to fund his personal obligation to the SEC.

25. Altus Management obtained the $150,000 by transferring funds into its account from the account of the Altus Fund.

26. The Altus Fund's limited partnership agreement does not permit the Altus Fund to lend money to Cooper, directly or indirectly through Altus Capital

Management, for Cooper to use to satisfy his personal obligations. Under the terms of the operating agreement, Altus Management has the power to "sell, exchange, or otherwise transfer assets of the [Altus Fund]" if such actions are taken "for and on behalf of the [Altus Fund] and ... as [Altus Management] shall deem necessary and appropriate to carry out the purposes for which the [Altus Fund] was organized." A loan to Cooper was not necessary and appropriate to carry out the purposes of the Altus Fund.

27. Cooper's misappropriation of investor funds to fund his settlement with the SEC is material to investors because he took money invested and entrusted to Total Wealth by investors, in breach of his fiduciary duty, for his own benefit and without any disclosure or approval from investors. It is also material because it shows that there are inadequate financial controls to protect the investors' funds from unauthorized use by Cooper and Total Wealth.

28. By misappropriating assets of Altus Funds to pay the personal obligations of Cooper, Total Wealth and Cooper breached their fiduciary duties to their clients.

29. At all relevant times, Cooper acted with scienter. As the control person for Total Wealth, Cooper's scienter is imputed to Total Wealth.

### 2. Unexplained "administrative" fees taken from client accounts

30. Beginning in mid-2014, Total Wealth and Cooper have charged investors inflated and unexplained "administrative fees," thus dissipating the investors' remaining assets.

31. Some Total Wealth investors have been charged unexplained administrative fees of several thousands of dollars per account without any notice or consent. Total Wealth did not advise the investors of the fees in advance, and most investors did not learn of the increased fees until September 2014, when Total Wealth sent investors their June and July statements. The "administrative

fees" that Total Wealth charged Altus Fund investors ranged from approximately $3,500 to $7,500 per account, depending on the size of the account.

32. In most instances, the fees were debited from the cash balances of investor accounts and appeared on account statements as "Admin/Other Fees." One investor, who had an agreement that Total Wealth would charge his credit card for all fees related to his Altus account, incurred a charge of approximately $6,500 on his credit card.

33. After charging the fees to the accounts, Total Wealth informed its clients, primarily through a mass email dated October 6, 2014, that the increased administrative fees were being used to fund, among other things, legal and other expenses incurred in the defense of a class action against the respondents in California state court that mirrors the allegations in the administrative proceeding. In the mass email, Total Wealth made vague statements to investors that "many of you were aware of a class action lawsuit brought on by only a few clients, causing increased fees for all," and that "[t]he irony is that [the class action] counsel and a very small group of investors have caused a significant amount of those increased fees they have complained about."

34. To the extent that Cooper is purporting to make any determination that any legal expenses for his defense are appropriate, Cooper has an inherent conflict of interest since he is using investor money to defend himself in a lawsuit brought against him by his investors.

35. Cooper's misappropriation of investor funds to allegedly fund his defense costs is material to investors because he took money invested and entrusted to Total Wealth by investors, in breach of his fiduciary duty, for his own benefit and without any disclosure or approval from investors.

36. Upon discovery of the unexplained "administrative fees," investors emailed and phoned Total Wealth and Cooper asking for a full accounting of the fees. Despite repeated requests for information from clients, neither Total Wealth

8

nor Cooper has ever provided an accounting or any other meaningful explanation regarding the fees.

37. The unexplained administrative fees are particularly egregious because in October 2014 Cooper and Total Wealth informed investors that they have restricted withdrawals and investor funds would be distributed slowly over an extended period because the Altus Fund and Altus Portfolio Series assets are illiquid and impaired.

38. The continued charging of unexplained "administrative fees" is a breach of fiduciary duty by Total Wealth and Cooper and a misappropriation of investors' assets.

39. At all relevant times, Cooper acted with scienter. As the control person for Total Wealth, Cooper's scienter is imputed to Total Wealth.

## FIRST CLAIM FOR RELIEF

### Fraud by an Investment Adviser

### Violations of Sections 206(1) and (2) of the Advisers Act

### (Against Defendants Total Wealth and Cooper)

40. The SEC realleges and incorporates by reference paragraphs 1 through 39 above.

41. Total Wealth and Cooper, by engaging in the conduct described above, directly or indirectly, by use of the mails or means and instrumentalities of interstate commerce:

    a. with scienter, employed and are employing devices, schemes or artifices to defraud clients or prospective clients; or

    b. engaged in or are engaging in transactions, practices, or courses of business which operated as a fraud or deceit upon clients or prospective clients.

9

42. By engaging in the conduct described above, Total Wealth and Cooper violated, and unless restrained and enjoined will continue to violate, Sections 206(1) and (2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and (2)].

## SECOND CLAIM FOR RELIEF

### Fraud Involving a Pooled Investment Vehicle

### Violations of Section 206(4) of the Advisers Act and Rule 206(4)-8

### (Against Defendants Total Wealth and Cooper)

43. The SEC realleges and incorporates by reference paragraphs 1 through 39 above.

44. Total Wealth and Cooper, by engaging in the conduct described above, while acting as an investment adviser to a pooled investment vehicle, directly or indirectly, by use of the mails or means or instrumentalities of interstate commerce:

    a. Made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, to any investor or prospective investor in the pooled investment vehicle; or

    b. Engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the pooled investment vehicle.

45. By engaging in the conduct described above, Total Wealth and Cooper violated, and unless restrained and enjoined will continue to violate, Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

10

**I.**

Issue findings of fact and conclusions of law that Defendants Total Wealth and Cooper committed the alleged violations.

**II.**

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, temporarily, preliminarily, and permanently enjoining Defendants Total Wealth and Cooper, and their agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Sections 206(1), 206(2), and 206(4) of the Advisers Act, 15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4), and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8.

**III.**

Issue, in a form consistent with Fed. R. Civ. P. 65, a temporary restraining order and a preliminary injunction against Defendants Total Wealth and Cooper, freezing the assets of Total Wealth and Cooper, prohibiting them from destroying documents, granting expedited discovery, and requiring accountings from Total Wealth and Cooper, and appointing a receiver over Total Wealth and its related entities.

**IV.**

Order Total Wealth and Cooper to disgorge all ill-gotten gains they received, together with prejudgment interest thereon.

**V.**

Order Defendants Total Wealth and Cooper to pay civil penalties pursuant to Section 209(3) of the Advisers Act, 15 U.S.C. § 80b-(9)e.

**VI.**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the

1 | terms of all orders and decrees that may be entered, or to entertain any suitable
2 | application or motion for additional relief within the jurisdiction of this Court.

## VII.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: February 3, 2015

Respectfully submitted,

/s/ John B. Bulgozdy

John B. Bulgozdy
David J. Van Havermaat
Carol Lally
Attorneys for Plaintiff
Securities and Exchange Commission

# PROOF OF SERVICE

I am over the age of 18 years and not a party to this action.  My business address is:

[X]    U.S. SECURITIES AND EXCHANGE COMMISSION, 444 S. Flower Street, Suite 900, Los Angeles, California 90071-9591
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1905.

On February 4, 2015, I caused to be served the document entitled **COMPLAINT** on all the parties to this action addressed as stated on the attached service list:

[ ]    **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

[ ] **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

[ ] **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

[ ]    **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

[ ]    **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

[X]    **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

[X]    **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

[ ]    **FAX:** By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date:  February 4, 2015              */s/ David J. VanHavermaat*
                                     David J. VanHavermaat

2

**SEC v. Total Wealth Management, Inc., et al.**
**United States District Court – Southern District of California**

SERVICE LIST

Charles H. Field
Chapin Fitzgerald Knaier LLP
550 West C Street
Suite 2000
San Diego, CA 92101
Email: cfield@cfktriallawyers.com
*Attorney for Defendants*

3