DAVID R. ZARO (BAR NO. 124334)
JOSHUA A. DEL CASTILLO (BAR NO. 239015)
TIM C. HSU (BAR NO. 279208)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        jdelcastillo@allenmatkins.com
        thsu@allenmatkins.com

Attorneys for Receiver
KRISTEN A. JANULEWICZ

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>  Plaintiff,<br><br>  v.<br><br>TOTAL WEALTH MANAGEMENT, INC.; et al.,<br><br>  Defendants. | Case No. 15-cv-226 BAS (DHB)<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT<br><br>**FIRST INTERIM APPLICATION FOR PAYMENT OF FEES OF RECEIVER, KRISTEN A. JANULEWICZ**<br><br>[Notice of Applications for Payment of Fees and Reimbursement of Expenses; First Interim Application of Allen Matkins; Memorandum of Points and Authorities; Declaration of Kristen A. Janulewicz; and [Proposed] Order submitted concurrently herewith]<br><br>Date:  November 2, 2015<br>Ctrm:  4B<br>Judge: Hon. Cynthia Bashant |

Kristen A. Janulewicz (the "Receiver"), the Court-appointed permanent receiver for Defendant Total Wealth Management, Inc. ("Total Wealth") and its subsidiaries and affiliates, including, but not limited to Altus Capital Management, LLC (collectively, the "Receivership Entities" or "Entities"), hereby submits this First Interim Application for Payment of Fees (the Receiver's "Application"). The

Case No. 15-cv-226 BAS (DHB)

Application covers the period from February 1, 2015, through June 30, 2015 (the "Application Period").

As reflected below, during the Application Period, the Receiver and her staff spent a total of 1,014.6 hours working on behalf of the Receivership Entities, at a weighted average rate of $193 per hour, for fees totaling $195,832.90. In accordance with this Court's prior Orders, **the Receiver now requests that this Court approve 100% of the Receiver's fees incurred during the Application Period, and enter an Order authorizing the Receiver to pay, on an interim basis, 90% of the fees incurred, in the amount of $176,249.61.**

As reflected in the Receiver's prior submissions to the Court, during the Application Period, the Receiver made substantial progress in satisfaction of her duties as defined by the Court in its February 4, 2015, Temporary Restraining Order and Order Appointing Receiver (the "TRO") and February 12, 2015, Preliminary Injunction and Order (the "Appointment Order"). Specifically, during the Application Period, the Receiver, among other things: (1) performed a site-visit of the Entities' San Diego place of business; (2) undertook an extensive Receivership Entity document recovery effort, resulting in the recovery of nearly 1 million pages of materials relating to the business and financial activities of the Receivership Entities; (3) completed a preliminary review of the most significant materials recovered in an effort to better understand the business and financial activities of the Receivership Entities; (4) accounted for the bulk of the investments made by the Entities on behalf of their investor clients; (5) identified numerous entities believed to be in possession assets belonging to the Receivership Entities ("Receivership Assets" or "Assets")); (6) recovered approximately $3.2 million in Receivership Assets; (7) reviewed and responded to inquiries from investors and other third parties; and (8) assembled and presented her preliminary analysis and conclusions to the Court in the form of her previously submitted Initial Report.

Given the amount and nature of the work completed by the Receiver and her staff during the Application period, the Receiver respectfully submits that the fees and expenses incurred are appropriate and, accordingly, requests that the Court enter an Order authorizing payment of 90% of her fees ($176,249.61), at this time, from the funds of the Receivership Entities.

I.  **WORK PERFORMED BY THE RECEIVER.**

During the Application Period, the Receiver and her staff undertook substantial efforts to understand the business and financial activities of the Receivership Entities, investigate and recover Receivership Assets, and otherwise administer the estate of the Receivership Entities.  While significant progress has been made, the Receiver's efforts continue.  The Receiver's previously submitted Initial Report and First Interim Report summarize the Receiver's efforts and preliminary conclusions in substantial detail, and the Receiver invites the Court and all interested parties to review those documents in conjunction with the present Application.  Below, the Receiver addresses many of the key efforts undertaken and issues addressed during the Application Period, and provides a detailed summary of the services provided and time spent by the Receiver and her staff during the Application Period, payment for which is now requested, as addressed above.

A.  **Assumption Of Control Over Receivership Entities And Receivership Entity Books And Records.**

Upon the issuance of the TRO, the Receiver travelled to the Receivership Entities' offices of record, in order to perform a site inspection and assume authority and control over any books and records maintained at the site.  As reflected in the Receiver's prior submissions to the Court, the Receiver determined, upon her arrival, that the Entities had abandoned their offices in late 2014.  However, while the Receiver was unable to recover any materials at the site, she was successful in arranging for all correspondence directed to the Entities to be forwarded to her, and has since received a number of materials.

LAW OFFICES
atkins Leck Gamble

The bulk of the records obtained by the Receiver to date were recovered from the Entities' internet or "cloud" servers (maintained by third parties), the Entities pre-receivership accountants, and via document subpoenas to third parties in possession of Receivership Entity records – most notably banks and other financial institutions.  As a result of her document recovery efforts, and as further detailed in the Receiver's prior submissions to the Court, the Receiver has recovered nearly one million pages of documents relating to the business and financial activities of the Receivership Entities, including accounting materials, general ledgers, bank statements, investor files, and other documents.

Contemporaneously with her recovery of Entity books and records, the Receiver commenced an inventory of known Receivership Assets and began recovering additional Receivership Assets through the recovery of funds from frozen Entity accounts and the turn-over of Assets by third parties.  As part of her Asset recovery effort, the Receiver has also diligently reviewed those materials in her possession to identify any sources of potential Asset recovery, and delivered notices of her appointment and turn-over demands to any parties she reasonably believes to be in possession of Receivership Assets.

### B.   Witness Interviews.

Shortly after her appointment, and as reflected in her Initial Report, the Receiver conducted numerous interviews with Defendant Jacob Cooper, as well as others affiliated with the Receivership Entities, including their former accountants, former employees, and Entity investors, to gather as much information as possible. The Receiver used the information obtained from these interviews to further investigate the financial condition and identify possible sources for recovery of Receivership Assets.

### C.   Metropolitan Coffee and Concessions.

Just after her appointment, the Receiver was contacted by Harry Kraatz, the bankruptcy court-appointed Responsible Person for Metropolitan Coffee and

Concessions ("MCC"), a subsidiary of Aegis Holding Company, LLC ("Aegis") an entity in which a significant amount of investor funds were invested.  The Receiver was informed that:  (1) MCC was in bankruptcy facing a potentially catastrophic cash-flow problem; (2) MCC was in the process of seeking a potential buyer for its assets (and certain assets held by Aegis that permitted MCC to carry out its coffee concession business in San Francisco Bay Area Rapid Transit stations); and (3) that MCC's bank account had been frozen by the TRO as a consequence of Defendant Cooper's having had signatory authority over it at one point.

The Receiver immediately worked with Mr. Kraatz and the Plaintiff Securities and Exchange Commission to unfreeze the specified account in order to allow MCC to continue doing business while it sought a buyer.  Thereafter, the Receiver worked with MCC's representatives and the representatives of prospective buyers to ensure that a sale could be timely completed.  As reflected in the Receiver's recently submitted First Interim Report, a sale was ultimately consummated and $260,000 in surplus proceeds delivered to the Receiver to be held in trust pending the Court's adjudication of the Receiver's rights in such proceeds as against another creditor.

**D.     The Private Placement Capital Notes II, LLC Investments.**

The Receiver has determined that, at the time of her appointment, the Receivership Entities held approximately $34 million in promissory notes issued by Private Placement Capital Notes II, LLC ("PPCN").  As reflected in her prior submissions to the Court, the Receiver therefore directed substantial time and effort, including during the Application Period, to investigating PPCN's business and financial activities, including its assets and prospective ability to repay the notes. As part of this effort, and as previously reported, the Receiver conducted an initial interview with PPCN's principal Anthony (Tony) Hartman, who confirmed that the Entities did, in fact, hold numerous notes issued by PPCN, briefly discussed the PPCN's purported investments, including investments in a distressed golf course

1  property in South Carolina and a gypsum mine in Utah, along with a handful of non-
2  performing bridge loans, and the approximate amount invested in the underlying
3  investments.  The Receiver requested financial statements for PPCN, and their
4  underlying investments, along with an operations summary.  While PPCN provided
5  some information to the Receiver, including in response to a document subpoena, it
6  has failed to produce all of the requested information, claiming it to be proprietary
7  information.

8      The Receiver has reviewed all available PPCN-related information contained
9  in the Receivership Entities' records, along with PPCN-related material obtained
10 from third parties.  Most notably, during the Application Period, the Receiver
11 undertook an extensive review and analysis of PPCN bank records, essentially
12 recreating an approximate PPCN balance sheet and profit and loss statement from
13 Jan 2009 through February 2015, in order to better understand PPCN's sources and
14 uses of funds, and to identify all possible assets held by PPCN.  These efforts
15 remain ongoing, and have led to the identification of additional parties upon whom
16 document subpoenas have been served.  As reflected in the Receiver's Initial Report
17 and First Interim Report, the information obtained to date does not provide a clear
18 picture of the nature of PPCN's business and financial activities, nor of its ability to
19 repay the outstanding $34 million owed to the Receivership Entities.

20     **E.   Testimony In The Commission's Administrative Proceeding.**

21     Prior to commencing the present action, the Commission commenced an
22 administrative proceeding (the "Administrative Proceeding") against Total Wealth
23 and its principals styled <u>In re Total Wealth Management, Inc., et al.</u>, which matter
24 was pending before an administrative law judge.  Testimony in the Administrative
25 Proceeding was taken in March 2015, and the Receiver was called both to testify at
26 the Administrative Proceeding, as well as to prepare exhibits to be introduced into
27 evidence therein.
28

### F. Response To Document Subpoenas.

Just as she has propounded a number of document subpoenas to third parties in her efforts to recover Receivership Assets and better understand the business and financial activities of the Receivership Entities, the Receiver herself was subject to a responding to subpoenas during the Application Period, largely in connection with the efforts of aggrieved Entity investors to prosecute actions of their own against the Entities and their principals.  The Receiver has made productions in accordance with each of the subpoenas received.

### G. Preparation Of Tax Returns.

During the Application period, the Receiver obtained pre-receivership Entity tax returns from the accountants of the Receivership Entities, and filed extensions for 2014.  The Receiver further coordinated with her own tax accountants, and 2014 returns are currently in process.  In order to undertake this effort, some of which has been made in the period after the Application Period, the Receiver has had to gather all K-1's from the underlying investment funds and undertake a time-consuming project to manually summarize the 2014 accounting detail, by investor, by fund, including for the Altus Capital Opportunity Fund, which has 192 individual accounts.

### H. Investigation Of Entity Losses.

During the Application Period, the Receiver devoted substantial attention to accounting for and understanding confirmed Receivership Entity losses.  Most significant among these losses is an approximately $18 million loss to the Entities resulting from their writing off their entire investments in two related entities, Aegis Atlantic and Aegis Retail Group, in 2014.  As reflected in the Receiver's Initial Report, losses to the Entities (and thus to their investors) may ultimately exceed $40 million.

## II. ASSET RECOVERY SUMMARY.

As reflected above, the Receiver has made substantial progress in recovering Receivership Assets. During the Application Period, the Receiver's efforts resulted in the recovery of approximately $3.2 million in Assets (gross receipts) for the benefit of the Entities, broken down as follows:

| | | |
|---|---|---:|
| • | Turnover/Seizure | $ 2,015,076.87 |
| • | Fund Liquidations | $ 1,043,777.58 |
| • | Settlement Income | $ 150,000.00 |
| • | Life Insurance Commission | $ 5,269.69 |
| | **Total** | **$ 3,214,124.14** |

The Receiver's fees, and the Receiver's fees as a percentage of gross receipts are summarized below:

| | Application Period |
|---|---:|
| Gross Receipts | $ 3,214,124.14 |
| Receiver's Fees | $195,832.90 |
| Receiver's Fees as % of Receipts | 6.1% |

As of the filing of this Application, the Receiver is now holding cash in the approximate amount of $3,472,742.29. Accordingly, the Receiver respectfully submits that the fees incurred during the Application Period were reasonable, and should be approved by the Court.

1  **III. SUMMARY OF RECEIVER'S FEES.**

2      **A. Summary Of Receiver's Fees By Category Of Work.**

The total fees of $195,832.90, incurred since the inception of the case through June 30, 2015, can be broken down into the following categories of work:

| Task | Amount | Percentage |
|---|---|---|
| Accounting and Reporting | $16,262.00 | 8% |
| Administration | $318.50 | 0% |
| Financial Analysis | $3,048.00 | 2% |
| Forensic Accounting | $23,550.50 | 12% |
| Investor Relations | $17,808.00 | 9% |
| Project Management | $18,964.00 | 10% |
| Receiver | $62,801.40 | 32% |
| Receivership Administration | $25,323.50 | 13% |
| Research Files | $10,855.00 | 6% |
| Takeover Property | $16,902.00 | 9% |
| **Total** | **$195,832.90** | **100%** |

    **B. Summary Of Receiver's Fees By Timekeeper.**

**Exhibit A**, attached hereto, includes each and every time entry during the Application Period for which the Receiver has requested compensation, on a month-by-month basis. Each month's time entries are further sorted alphabetically by task name, then by alphabetically by timekeeper.

**Exhibit B**, attached hereto, provides a summary, by timekeeper, setting forth the amount of time spent by the Receiver and her staff at each timekeeper's specific hourly rate. As reflected therein, the Receiver expended 374.9 during the Application Period, for fees totaling $101,228.40. In order to manage the administration of the Receivership Entities' estate in as cost-effective a manner as possible, the Receiver delegated some assignments to staff billed at hourly rates ranging from $65 to $375 per hour. These agents performed accounting, bookkeeping, financial analysis, business management, investor relations, debt

collection, litigation support, asset management, and other services. During the Application Period, the Receiver's agents expended 639.7 hours of work, at an average rate of $148 per hour.

By using qualified staff largely billing at significantly lower hourly rates, the Receiver was able to achieve a weighted average hourly (blended) rate of $193 per hour for the Application Period. In order to further conserve Assets, the Receiver agreed to not bill for travel time, which normally would be billed at 50% of the timekeeper's rate. Finally, the Receiver did not charge for the cost to prepare the instant Application, which resulted in an additional savings of $1,518.00. Inception-to-date fee applications savings total $1,518.00.

In her reasonable business judgment, the Receiver believes the hourly rates charged are appropriate, given the requirements of the receivership, and that the total fees for which she seeks approval are fair and reasonable. (Declaration of Kristen Janulewicz, ¶ 4.)

C. **Summary Of Charges By Task**.

**Exhibit C**, attached hereto, provides a monthly summary of work by task, including administration, accounting and reporting, forensic accounting, financial analysis, investor relations, project management, receiver, receivership administration, research files, and takeover of property. This summary further includes total costs for each task by month during the Application Period, and a chart reflecting all task categories in which services were performed during the entire Application Period.

\\\
\\\
\\\
\\\
\\\
\\\

The total hours and cost by task for the Application Period were as follows:

| Task | Hours | Rate | Amount |
|---|---|---|---|
| Accounting and Reporting | 73.8 | $220 | $16,262.00 |
| Administration | 4.9 | $65 | $318.50 |
| Financial Analysis | 9.5 | $321 | $3,048.00 |
| Forensic Accounting | 93.5 | $252 | $23,550.50 |
| Investor Relations | 162.2 | $110 | $17,808.00 |
| Project Management | 113.8 | $167 | $18,964.00 |
| Receiver | 231.7 | $271 | $62,801.40 |
| Receivership Administration | 196.9 | $129 | $25,323.50 |
| Research Files | 60.2 | $180 | $10,855.00 |
| Takeover Property | 68.1 | $248 | $16,902.00 |
| Totals | 1,014.6 | $193 | $195,832.90 |

## IV.  CONCLUSION.

As reflected above, the Receiver has determined, in her reasonable business judgment, that the hourly rates charged during the Application Period, and the total fees incurred, were reasonable.  **Accordingly, the Receiver respectfully requests that the Court enter an Order approving the $195,832.90 in fees incurred during the Application Period and authorizing the payment, on an interim basis, of 90% of the fees incurred, in the amount of $176,249.61.**

Dated:  September 21, 2015

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
DAVID R. ZARO
JOSHUA A. DEL CASTILLO
TIM C. HSU

By:     */s/    Joshua A. del Castillo*
    JOSHUA A. DEL CASTILLO
    Attorneys for Receiver
    KRISTEN A. JANULEWICZ

Case No.  15-cv-226 BAS (DHB)

1023960.02/LA

-11-

LAW OFFICES
atkins Leck Gamble