DAVID R. ZARO (BAR NO. 124334)
JOSHUA A. DEL CASTILLO (BAR NO. 239015)
KENYON HARBISON (BAR NO. 260416)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail:    dzaro@allenmatkins.com
             jdelcastillo@allenmatkins.com
             kharbison@allenmatkins.com

Attorneys for Receiver
KRISTEN A. JANULEWICZ

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 15-cv-226 BAS (DHB) |
| Plaintiff, | NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |
| v. | **SECOND INTERIM REPORT AND PETITION FOR FURTHER INSTRUCTIONS OF RECEIVER, KRISTEN A. JANULEWICZ** |
| TOTAL WEALTH MANAGEMENT, INC.; et al., | |
| Defendants. | Date:    March 7, 2016<br>Ctrm:    4B<br>Judge:   Hon. Cynthia Bashant |

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ........................................................................2

II.  GENERAL BACKGROUND AND PROCEDURAL HISTORY ......................5

III. SUMMARY OF RECEIVER'S ACTIVITIES AND EFFORTS SINCE
     SUBMISSION OF INITIAL REPORT...........................................................6

     A.   Marshaling And Preserving Receivership Assets ..............................6

          1.   Cash Recoveries ....................................................................6

          2.   Metro Coffee Sales Proceeds ................................................7

          3.   Pending Federal and State Court Litigation ...........................8

     B.   Investigation And Discovery..............................................................9

     C.   Updated Preliminary Accounting And Inventory Efforts .................10

IV.  OTHER SIGNIFICANT RECEIVERSHIP ACTIVITIES ............................11

     A.   Receivership Entity Tax Filings......................................................11

     B.   Motion For Permission To Pursue Claims Against PPCN And
          Hartman .........................................................................................11

     C.   Prosecution Of Professional Liability Claims Against Pre-
          Receivership Professionals.............................................................12

V.   SUPPLEMENTAL PRELIMINARY CONCLUSIONS AND
     OBSERVATIONS .....................................................................................13

     A.   Receipt Of Revenue Sharing Fees..................................................13

     B.   Use Of Funds Raised From Investors For Legal Defense................14

     C.   Investments In The Aegis Entities ..................................................15

     D.   Delta Capital Partners Holdings And Toro Investments....................15

     E.   Investments Were Subject To Substantial Losses............................16

VI.  RECOMMENDATIONS AND PETITION FOR FURTHER
     INSTRUCTIONS.......................................................................................16

     A.   Continue General Investigation, Discovery, And Receivership Asset
          Identification And Recovery Efforts ................................................17

     B.   Aegis Holding Investigation............................................................17

     C.   Complete Limited Forensic Accounting ...........................................17

**Page**

D.    Secure Guidance From The Court In Connection With Prior Filings And Requests For Relief ........................................................................ 18

E.    Submit Further Reports To The Court ............................................... 18

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

(ii)

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 7, 2016, in Courtroom 4B of the above-entitled Court, 221 W. Broadway, San Diego, California 92101, and in accordance with (a) this Court's February 12, 2015 "(1) Preliminary Injunction, Appointment of a Permanent Receiver, and Related Orders; and (2) Order Vacating Hearing on Preliminary Injunction" (the "Permanent Appointment Order"); (b) Civil Local Rule 66.1(e); and (c) this Court's May 8, 2015 "Order Granting Motion for Order in Aid of Receivership" (the "Aid Order"), Kristen A. Janulewicz (the "Receiver"), the Court-appointed permanent receiver for Total Wealth Management, Inc. ("Total Wealth") and its subsidiaries and affiliates, including but not limited to Altus Capital Management, LLC ("Altus Capital") (collectively, the "Receivership Entities" or "Entities") will and hereby does submit her Second Interim Report and Petition for Further Instructions (the "Second Interim Report") to this Court:

## I.  PRELIMINARY STATEMENT.

As detailed in the Receiver's prior Reports to the Court, and as further detailed below, the Receiver has made substantial progress in her efforts to identify and recover available assets of the Entities ("Receivership Assets") as well as to better understand the business and financial activities of the Entities.  While the Receiver's work is ongoing, the status of her efforts and the preliminary conclusions[1] developed from her review and analysis of materials recovered to date are appropriate for an interim update.  Since the submission of her last Report, the Receiver has:

- Recovered additional Receivership Assets, bringing the total cash on hand for the benefit of the Entities to approximately $3.5 million.

---

[1]  Due to the volume and nature of the information recovered, the nature and complexity of the matters and transactions to which they relate, and the Receiver's need to complete her work, the Receiver's conclusions are presented herein are preliminary.  The Receiver may modify such conclusions after further investigation and analysis.

- Recovered additional documents in connection with her investigation of the business and financial activities of the Receivership Entities, via third party document subpoenas.

- Updated her preliminary conclusions regarding Total Wealth's receipt of revenue sharing, management, and other fees from entities in which Total Wealth invested funds received from investors.  In some instances, these fees were received from money-losing or insolvent funds in which the Entities were invested.  Such fees totaled approximately $1.8 million.

- Determined that Defendant Jacob Cooper ("Cooper"), either individually or via an entity under his control, separately received approximately $775,000 in revenue sharing, management, and other fees from entities in which Total Wealth invested funds received from investors.

- Updated her preliminary conclusions regarding the use of funds raised from investors to pay for legal defense the legal defenses of, at least, Defendant Cooper and Total Wealth.  Specifically, the Receiver has confirmed that more than $530,000 in funds raised from investors were expended in connection with pre-receivership legal defense matters, including $150,000 to pay an anticipated settlement with the Commission and another $367,219.49 and $14,950.63 to two pre-receivership law firms who appear to have assisted in the legal defense of Defendant Cooper and Total Wealth.

- Agreed to an appropriate disposition of $260,000 in proceeds recovered from the bankruptcy sale of Metropolitan Coffee and Concession Company, LLC ("Metro Coffee") and related assets, enabling the Entities to retain $80,000 even in the face of a senior, secured claim by a non-receivership creditor.

- Proactively monitored funds owed to the Receivership Entities from prior liquidation requests and pursued collections.  As of the date of this Interim

Report, the Receiver has collected redemptions and miscellaneous income totaling approximately $2.8 million.  A summary of the Receiver's cash collections, by Entity, is appended hereto as **Exhibit 1**.

- Continued her review and analysis of the Entities' investment of at least $18 million in investor funds in Aegis Holding Company, Inc. ("Aegis Holding") and related entities, exclusive of amounts invested in Metro Coffee, all of which appear to have been written off in the pre-receivership period, constituting a substantial loss to investors.  The Receiver is continuing to investigate how the funds invested in Aegis Holding and related entities were spent or dissipated.

- Completed her initial review and analysis of the business and financial activities of Private Placement Capital Notes II ("PPCN") and petitioned this Court for authority to prosecute claims against PPCN and its principal, Anthony (Tony) Hartman ("Hartman"), arising from what the Receiver believes to be fraudulent and deceptive conduct on PPCN's and Hartman's behalf.

- Completed her initial review and analysis of the role pre-receivership Entity professionals, including counsel, may have contributed to Total Wealth's commission of securities fraud, as determined in the related administrative proceeding styled In re Total Wealth Management, Inc., et al., File No. 3-15842 (the "Administrative Proceeding"), and prepared an anticipated professional liability complaint against certain pre-receivership professionals based on her conclusions.

The Receiver's charge includes, among other things:  (1) assuming control of the Entities and their Assets; (2) conducting such investigation and discovery as necessary to identify and locate outstanding Receivership Assets; (3) preserving and preventing the dissipation of Receivership Assets; and (4) providing an accounting to the Court and plaintiff Securities and Exchange Commission (the "Commission")

regarding the business and financial activities of the Receivership Entities.  As reflected in this and prior Reports, the Receiver and her approved counsel of record, Allen Matkins Leck Gamble Mallory & Natsis LLP ("Allen Matkins"), have diligently pursued these goals since the inception of the receivership, and the Receiver's efforts, analysis, supplemental preliminary conclusions, and recommendations are presented below.

Please note that the omission from this Report of matters addressed in previous Reports submitted by the Receiver does not reflect a determination that such matters are no longer pertinent or that any previously presented conclusions have been modified or withdrawn.

## II.  GENERAL BACKGROUND AND PROCEDURAL HISTORY.

The Court and any interested parties are invited to review the following materials[2] for a general summary of the relevant facts underlying the above-captioned receivership case and the activities of the Receiver and her professionals:

- Commission's Complaint (the "SEC Complaint") against Defendants Total Wealth and Jacob Keith Cooper (Docket No. 1.);

- Commission's Ex Parte Application for Temporary Restraining Order and Other Relief (Docket No. 2.);

- Stipulation and Temporary Restraining Order and Orders (1) Freezing Assets; (2) Prohibiting the Destruction of Documents; (3) Granting Expedited Discovery; (4) Requiring Accountings; (5) Appointing a Temporary Receiver, and Order to Show Cause Re Preliminary Injunction and Appointment of a Permanent Receiver (the "TRO") (Docket No. 5;

- Commission's Memorandum of Points and Authorities in Support of Preliminary Injunction and Appointment of Permanent Receiver (Docket

---

[2]   Materials are available on the Receiver's website, totalwealthreceiver.com.

No. 6);

- Permanent Appointment Order (Docket No. 8);

- Joint Motion for Order to Release Specified Account, relating to Metro Coffee (Docket No. (9);

- Initial Report and Recommendations and Petition for Instructions of Receiver, Kristen A. Janulewicz ("Initial Report") (Docket No. 17);

- Joint Motion for Order to Release Wells Fargo Account, relating to Silver Hawk Owners Association, Inc. (Docket No. 25);

- First Interim Report and Petition for Further Instructions of Receiver, Kristen A. Janulewicz ("First Interim Report") (Docket No. 43);

- First Interim Applications for Payment of Fees and Reimbursement of Expenses of Receiver, Kristen A. Janulewicz, and Allen Matkins Leck Gamble Mallory & Natsis LLP ("Fee Application") (Docket No. 51);

- Motion of Receiver, Kristen A. Janulewicz, for Authority to Pursue Claim Against Private Placement Capital Notes II, LLC and Anthony (Tony) Hartman ("PPCN Motion") (Docket No. 57); and

- Joint Motion of Plaintiff, Securities and Exchange Commission, Receiver, Kristen A. Janulewicz, Non-Party Strategic Funding, Inc., and Defendant, Jacob Cooper, to Release Funds Held in Trust ("Joint Motion") (Docket No. 61).

III.   **SUMMARY OF RECEIVER'S ACTIVITIES AND EFFORTS SINCE SUBMISSION OF INITIAL REPORT.**

A.   **Marshaling And Preserving Receivership Assets.**

1.   Cash Recoveries.

At the time of the Receiver's submission of her Initial Report, she had recovered approximately $2,151,603 million in cash, including cash in Entity bank accounts. At the time of submission of her First Interim Report, the Receiver had recovered an additional $1,351,745 in cash, including from other Entity bank

accounts, as well as $150,000 in funds from an aborted Administrative Proceeding settlement, liquidations from LJL Secured High Yield Income Fund I in the amount of approximately $260,691.77, and money received from Amerifunds Secured Income Fund I LLC and Amerifunds Secured Income Fund II LLC totaling approximately $547,453.  In summary, at the time the First Interim Report was submitted, the Receiver was holding cash in the amount of approximately $3,465,491 for the benefit of the Receivership Entities, not including the $260,000 received from the Metro Coffee sale, as discussed below.

Since the submission of her First Interim Report, the Receiver has collected an additional $59,670, of which the majority was received from the Rainmaker Capital Precious Commodities Fund, one of the investments into which investor moneys were invested.  Accordingly, and as of the date of this Report, the Receiver holds cash in the amount of approximately $3,506,255 for the benefit of the Receivership Entities, not including an additional $80,000 she expects to retain in connection with the Metro Coffee sale, which are discussed below.

2.     Metro Coffee Sales Proceeds.

As addressed in the prior Reports, millions in investor funds were invested in Aegis Holding, Metro Coffee, and related entities by the Receivership Entities. Metro Coffee operated Peet's Coffee stores in Bay Area Rapid Transit District ("BART") stations in San Francisco, California.  As noted in the Initial Report, the Receiver was appointed in the midst of Metro Coffee's Chapter 11 bankruptcy case and during its efforts to dispose of estate property.  This case remains pending in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"), although it has now been converted to a chapter 7 case.[3]

In an effort to protect against losses associated with Aegis Holding and Metro Coffee over and above the substantial write-off taken in the pre-receivership period,

---

[3] In re Metropolitan Coffee and Concession Company, LLC, USBC, N.D. Cal. Case No. 14-44242.

the Receiver worked with the Bankruptcy Court's designated Responsible Person for Metro Coffee to facilitate the sale of Metro Coffee's assets (along with the necessary BART permits, held by Aegis Holding).  The Metro Coffee sale was concluded and, as of the date of this Report, the Receiver is holding $260,000 in proceeds from the sale in trust.[4]

As reflected in the Joint Motion, Strategic Funding, Inc. ("Strategic"), a putative creditor of Metro Coffee and Aegis Holding, has alleged a security interest in these funds equal to or superior to those of the Receiver.  The Receiver has alleged a super-priority equitable interest in the funds, but has confirmed that Strategic's non-contingent, secured interest is valid and may indeed be superior.  Accordingly, and in an effort to ensure that the funds are appropriately shared as between Strategic and the Receiver, the Receiver has agreed, as addressed in the Joint Motion, to retain $80,000 for the benefit of the Entities, and Strategic will receive $180,000.[5]  As of the filing of this Report, the Court has not entered an order on the Joint Motion.

3.   Pending Federal and State Court Litigation.

The Receiver has also endeavored to protect the estate of the Receivership Entities from diminution, including via notice to parties believed to be in possession of Receivership Assets (of whatever form), as well as filing formal Notices of Pending Receivership in all known federal and state actions where the Receivership Entities are Defendants, of which, at the time of filing of the Initial Report, the Receiver noted four (4) such actions.[6]  Prior to the First Interim Report, the Receiver

---

[4] These funds represent all surplus proceeds generated from the sale.  In the First Interim Report, the Receiver included these funds in her Exhibit 1, Summary of Cash, and by extension on her Exhibit 2.  In this report, the Receiver has revised cash downward in both exhibits to reflect the fact that these cash proceeds have been held in trust.

[5] The Commission and Defendant Cooper also agreed to such an allocation of the sales proceeds, as reflected in the Joint Motion.

[6] In her Initial Report, the Receiver referenced the following proceedings:  (1) Mitchell v. Total Wealth Management, Inc., USDC, SD Cal., Case No. 14 cv-1552-GPC-JLB; (2) Staniforth v. Total Wealth Management, Inc., USDC, SD Cal. Case No. 14 cv-1899-GPC-JLB; (3) Calderon v. Total Wealth Management, Inc., San Diego County Superior Court Case No. 37-

additionally filed formal Notices of Pending Receivership in two (2) additional state court actions not identified in her Initial Report.[7]

In the <u>Staniforth</u> and <u>Mitchell</u> matters, Judge Gonzalo P. Curiel responded to the Receiver's Notices of Pending Receivership by issuing Orders to Show Cause ("OSCs") whether the Permanent Appointment Order should stay those entire actions, respectively.  The Receiver, by and through Allen Matkins, filed responses to the OSCs, and, on May 12, 2015, Judge Curiel stayed the <u>Staniforth</u> action entirely, and stayed the <u>Mitchell</u> action, in part.  In each of these matters, the Receiver was ordered to provide an update on the status of the receivership on or before August 14, 2015.  The Receiver did so.  In the <u>Mitchell</u> matter, the parties on September 2, 2015 filed a stipulated motion to stay the entire action, which was granted on September 21, 2015.  As part of that order granting the stipulation in the <u>Mitchell</u> matter, the Receiver was ordered by Judge Curiel to provide an additional status report on or before December 1, 2015.  The Receiver did this as well.  As of the date of this report, no further order has been entered in the <u>Mitchell</u> matter requiring further status reports from the Receiver.

While Judge Curiel did not order the Receiver to file a December 1, 2015 status report in the <u>Staniforth</u> matter, as he did in the <u>Mitchell</u> matter, the Receiver did so, determining that it was best to treat the two cases, handled by the same judge, similarly.  As of the date of this Report, no further order has been entered in the <u>Staniforth</u> matter requiring further status reports from the Receiver.  Additionally, since the filing of the First Interim Report, the Receiver has been advised that the <u>Troya</u> matter was dismissed.  The <u>Morin</u> matter remains stayed, and, at the request of that court, counsel for the Receiver appeared telephonically at

---

2014-00015682-CU-SL-CTL; and (4) <u>Troya v. Total Wealth Management, Inc.</u>, San Diego County Superior Court Case No. 37-2014-00012816-CU-PN-CTL.

[7] These actions are: (1) <u>Morin v. Total Wealth Management, Inc.</u>, San Diego County Superior Court Case No. 37-2014-00025391-CU-BC-CTL; and (2) <u>Drehsler v. Total Wealth Management, Inc.</u>, San Diego County Superior Court Case No. 37-2014-00042224-CU-FR-CTL.

1    a case management conference on December 4, 2015, at which time the case

2    management conference was continued to June 3, 2016.  On July 22, 2015, the

3    Calderon matter was removed to Federal court, where it is currently pending before

4    Judge Robert T. Benitez.[8]  The Receiver will continue to monitor these and any

5    other relevant pending state or federal court litigation.

6         **B.    Investigation And Discovery.**

7         As noted in the Initial Report and in the First Interim Report, the Receivership

8    Entities left no books, records, or computers behind at their offices.  Accordingly,

9    the Receiver had to obtain documents relating to the nature, location, and amount of

10   Receivership Assets and the business and financial activities of the Receivership

11   Entities from third party sources, including via an access request, direct turn-over

12   demands, document subpoenas, and informal requests.  In summary, the Receiver

13   has issued dozens of formal notices of her appointment, along with turn-over

14   requests for Receivership Assets.  In addition, the Receiver has served dozens of

15   document subpoenas on third parties, including parties believed to be in possession

16   of Receivership Assets and parties in possession of materials directly relating to the

17   business and financial activities of the Receivership Entities.

18        In addition to the recovery efforts detailed in prior Reports, including digital

19   document recovery efforts, the Receiver has continued to recover new documents

20   and records.  Since the submission of her First Interim Report, the Receiver has

21   served subpoenas on Gateway Capital Partners, LLC, Metro Coffee's Bankruptcy

22   Court-designated Responsible Person, and Joel Sjostrom (an Aegis Holding

23   principal).  The Receiver has further received additional document productions from

24   Jacko Law Group, PC, and First Citizens Bank, in response to subpoenas served

25   prior to the filing of the First Interim Report.  The Receiver is continuing her review

26   and analysis of the materials recovered to date.  The Receiver will continue to issue

27

28   [8]  Calderon v. Total Wealth Management, Inc., et al., USDC, SD Cal., Case No. 3:15-cv-01632-BEN-NLS.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1031247.03/LA

-9-

1  additional demand letters and subpoenas as deemed necessary to collect material
2  information that may lead to sources of recovery for the receivership estate.  .

3  **C.    Updated Preliminary Accounting And Inventory Efforts.**

4  As a result of her review of materials recovered since the submission of her
5  First Interim Report, the Receiver has been better able to quantify the relationship
6  between various Receivership Entities, undertake an updated inventory, and prepare
7  an updated accounting of Receivership Assets.  A copy of the Receiver's updated
8  accounting, reflecting the reported book value of known Receivership Assets (not
9  including recovered cash) is attached hereto as **Exhibit 2**.

10
11
12  **IV.    OTHER SIGNIFICANT RECEIVERSHIP ACTIVITIES.**

13  **A.    Receivership Entity Tax Filings.**

14  Since the submission of her First Interim Report, the Receiver has filed the
15  2014 tax returns for the Altus Funds[9] (on September 15, 2015) and provided Form
16  K-1s to investors/limited partners, on or about September 17, 2015.  The Receiver
17  has continued to respond to investor inquiries, requests, and questions, including in
18  connection with the tax materials she has submitted and delivered.  At present, the
19  Receiver is in the process of preparing to file the 2015 tax returns for the Altus
20  Funds.  The Receiver estimates that these returns will be complete by the end of
21  March 2016.

22
23
24
25
26

---

[9]  The "Altus Funds," which are Receivership Entities as a consequence of their common control by and affiliation with Total Wealth and Altus Capital Management, LLC, include Altus Focused Growth Portfolio Series, LP; Altus Income Portfolio Series, LP; Altus Conservative Portfolio Series, LP; Altus Moderate Growth Portfolio Series, LP; Altus Moderate Portfolio Series, LP; Altus Growth Portfolio Series, LP; and Altus Capital Opportunity Fund, LP.

27
28

**B.** **Motion For Permission To Pursue Claims Against PPCN And Hartman.**

The First Interim Report provided an extensive explanation of the Receiver's efforts to recover records from PPCN, and from related entities and individuals, along with details regarding the Receiver's investigation of PPCN.  As reflected in the proposed complaint that the Receiver has requested that this Court authorize, the Receiver has determined that the Altus Funds invested[10] at least $24,000,000 in PPCN under false pretenses, which investments were memorialized by the issuance of so-called promissory notes by PPCN.  The Receiver has further determined that this investment constitutes at least 70% of all funds invested in PPCN.  The Receiver additionally has concluded that at least $11,200,000 in interest accrued to the Altus Funds in accordance with the promissory notes has not been paid, and instead was added to balance of the Altus Funds' investments.  In addition, the Receiver has submitted a request to redeem approximately $16 million in eligible promissory notes, which request has been ignored by PPCN.

As a consequence of the above, the Receiver filed the PPCN Motion on November 9, 2015, requesting authorization from this Court to file her proposed complaint and prosecute claims against PPCN and Hartman.  As of the date of this Report, the Court has not entered an order on the PPCN Motion, and the Receiver respectfully reaffirms her request that the motion be granted as soon as practicable. In the alternative, absent an order from the Court, and should the Receiver determine that further deferral in filing will endanger a prospective recovery, she will file her proposed complaint and promptly advise the Court.

---

[10]   Certain PPCN investments were originally made by some Total Wealth clients in their individual capacities.  These investments were later retitled for the benefit of the Altus Funds, which appear to be the sole receivership beneficiaries of the PPCN promissory notes at this time.

**C.     Prosecution Of Professional Liability Claims Against Pre-Receivership Professionals.**

In addition to her investigation regarding the Altus Funds' investment and PPCN and the circumstances and representations surrounding those investments, the Receiver has continued her investigation of other potential sources of recovery for the Receivership Entities.  Setting aside potential claims arising from the substantial Aegis Entity (defined below) losses, the Receiver has preliminarily concluded that a number of pre-receivership professionals, including counsel, contributed to Total Wealth's violations of federal securities laws, particularly with respect to its failure to disclose the existence of revenue sharing agreements and their attendant conflicts of interest.  The Receiver reserves the right to prosecute claims against such professionals in accordance with Article XI.A of the Permanent Appointment Order. While the Receiver's preference would be to secure a specific order from the Court authorizing such a prosecution, should the Receiver determine that time is of the essence with respect to the prosecution of such claims, she will file an appropriate complaint and promptly advise the Court.

**V.     SUPPLEMENTAL PRELIMINARY CONCLUSIONS AND OBSERVATIONS.**

While the Receiver's document recovery, review, and analysis efforts remain ongoing, the Receiver has conducted sufficient review and analysis of the materials recovered to date to present additional preliminary conclusions and observations regarding the business and financial activities of the Receivership Entities, and to affirm or clarify certain preliminary conclusions presented in her Initial Report.

**A.     Receipt Of Revenue Sharing Fees.**

In addition to receiving advisory fees from the Altus Funds, Total Wealth received revenue sharing fees from a number of the underlying funds in which the Altus Funds were invested.

The Receiver has continued to research the issue of revenue sharing since the submission of her First Interim Report.  The Receiver presently believes that the extent of revenue sharing was greater than previously disclosed, largely due to the fact that the Receiver has recently determined that certain revenue sharing payments were erroneously booked by Total Wealth as advisory fees.  As of the date of this Report, the Receiver has determined that Total Wealth received the following revenue sharing fees:

- $459,662.59 paid collectively by Aegis Atlantic LLC ("Aegis Atlantic"), Aegis Retail Group ("Aegis Retail"), and Metro Coffee,[11] from 2011 through February 2013;

- $163,733.88 paid by LJL Funding LLC ("LJL Funding"), an investment common to many of the Altus Funds, from 2010 through February 2014;

- $532,279.66 paid by PPCN from 2012 through September 2014;

- $568,406.81 paid by Rainmaker Capital, Inc., from 2009 through August 2014; and

- $33,480 paid by Pacific West Capital Group from 2010 through September 2012.

As a consequence of this new information, the Receiver has updated her calculation regarding the receipt of revenue sharing fees and presently calculates that Total Wealth received approximately $1.8 million in revenue sharing fees, in the aggregate, from approximately February 2009 through September 2014.

In addition, the Receiver believes that Defendant Cooper, either individually or via a company he controlled called Pinnacle Wealth Group ("PWG"), received approximately $775,000 in revenue sharing fees from 2009 to early 2011.  This amount includes $415,000 paid by Denver Financial Group and/or PPCN, nominal

---

[11] Aegis Holding, Aegis Atlantic, and Aegis Retail are collectively referred to herein as the "Aegis Entities."

compensation from Moneta Capital Management LLC, payments of $307,664.58 from an entity called Novus Investment and its dba, Dynamic Sales, owned by Don Davis, and $52,500 from Jomac, LLC, the principals of which were Michael McNamara and John Staiano, who were involved, along with Robert Stinson, Jr., in the "Life's Good" Ponzi scheme addressed in previous Reports.

### B.   Use Of Funds Raised From Investors For Legal Defense.

As first addressed in the Receiver's Initial Report, the records obtained by the Receiver confirm that certain funds raised from investors were used to pay for the legal defenses of Defendant Cooper and the Receivership Entities.[12]  Specifically, $150,000 was paid to the Commission in connection with an anticipated settlement of the Administrative Proceeding, which settlement was later rejected when the Commission learned the payment had been drawn from investor funds.  These funds have since been returned to the Receiver.  In addition, at least $367,219.49 was paid in 2014 by the Altus Capital Opportunity Fund ("ACOF") to the Sparer Law Group, pre-receivership counsel for Defendant Cooper, Total Wealth, and ACOF.  ACOF also made payments totaling $14,950.64 to the Jacko Law Group, P.C., which appears to have provided services relating to the defense of Defendant Cooper and Total Wealth in the Administrative Proceeding.  These payments were made by ACOF, and later allocated across (that is, proportionally charged against) the remaining Altus Funds.  In the aggregate, and as of the date of this Report, more than $530,000 in funds raised from investors appears to have been expended in connection with the legal defense of Defendant Cooper and, at least, Total Wealth and ACOF.

### C.   Investments In The Aegis Entities.

As mentioned in the Receiver's prior reports, over $18 million in investments in the Aegis Entities (including accrued interest) was written off in 2014, apparently

---

[12]  This does not include payments to attorneys not associated with litigation defense, such as payments

1  as a result of the complete failure of the investments.  As of the date of this Report,

2  the information reviewed by the Receiver strongly suggests that some of this failure

3  may be attributable to the misappropriation or misuse of investment funds, including

4  in connection with at least two restaurants, "Sprig" and "Preserve 24", as previously

5  addressed in the First Interim Report.

6      The materials presently available to the Receiver do not provide a complete

7  accounting for the entire $18 million lost in connection with the Aegis Entities, and

8  the failures of Sprig and Preserve 24 cannot reasonably account for these losses.

9  For the reasons stated in the First Interim Report, including the potential diversion

10  of funds and assets away from the Aegis Entities, the Receiver is continuing to

11  devote reasonable time and resources to the investigation of the Aegis Entities and

12  their assets, including the disposition of such assets, in order to determine what, if

13  any, claims for restitution or disgorgement might be available to the Receivership

14  Entities.

15      **D.      Delta Capital Partners Holdings And Toro Investments.**

16      Delta Capital Partners Holdings LLC ("Delta") is a litigation finance

17  partnership or fund founded by a partner or former partner of the law firm

18  representing one of Total Wealth's pre-receivership attorneys, John Lively, who

19  provided Total Wealth with securities advice.  The First Interim Report described

20  certain relevant documents recovered to date, the apparent investments in entities

21  called Toro Investments I, Toro Investments 2, and Toro Investments IV ("Toro"),

22  and the issuance of promissory notes by Delta.  The Receiver is continuing, and will

23  continue, to investigate these relationships and transactions.

24      **E.      Investments Were Subject To Substantial Losses.**

25      In her Initial Report, the Receiver expressed the view that investments were

26  subject to substantial losses.  The work completed prior to the submission of the

27  First Interim Report confirmed this conclusion.  As noted therein, the Receiver has

28  determined that the Life's Good, Inc. investment, mentioned in the Initial Report,

reflects a loss of approximately $2.4 million.  Metro Coffee investments have lost approximately $3.2 million (including accrued interest), not including the $260,000 recently recovered of which the Receiver expects to recover $80,000. Approximately $18 million (including accrued interest) has been lost in connection with the Aegis Entities.

In addition, the Receiver's has learned since the First Interim Report that there was an additional $80,000 investment made in Ball Gum International, which the Receiver suspects, based on research to-date, has been lost.  Accordingly, as of the date of this Report, it appears that investment losses total at least $23,520,000 (including accrued interest), not including potential, but presently unconfirmed losses in PPCN totaling in the tens of millions of dollars, assume a worst case scenario.

## VI.   RECOMMENDATIONS AND PETITION FOR FURTHER INSTRUCTIONS.

While the Receiver's document recovery, review, and analysis efforts remain incomplete, the materials she has recovered and reviewed to date strongly militate in favor of the continuation of the receivership with, at least, the following goals:

### A.   Continue General Investigation, Discovery, And Receivership Asset Identification And Recovery Efforts.

The records recovered to date do not provide a complete accounting of all funds received and expended by the Entities, including investor funds.  As such, the Receiver believes that additional investigation and discovery efforts may yield a material benefit to the estate of the Receivership Entities, both in terms of providing a more complete understanding of their business and financial activities and potentially identifying additional recoverable Receivership Assets.  The Receiver therefore recommends that the Court allow her to continue her investigation, discovery, and Receivership Asset identification and recovery efforts, including as expressly provided for in the Permanent Appointment Order.

**B.     Aegis Holding Investigation.**

The Receiver has obtained substantial financial records associated with the Aegis Entities. The amount of money invested (and lost) in the Aegis Entities (second only to potential PPCN losses, including accrued interest) militates in favor of completing an investigation to determine whether any Assets may be recovered by the Receiver via the prosecution of restitution or disgorgement claims.

**C.     Complete Limited Forensic Accounting.**

As reflected in the Initial Report and the First Interim Report, the Receiver has commenced and continued a preliminary forensic accounting in order to develop a complete understanding of the business and financial activities of the Receivership Entities and to identify recoverable Receivership Assets. This accounting, once complete, should better enable the Receiver to account for the amount and use of investor funds as well as to identify subjects of potential disgorgement or other actions. Accordingly, the Receiver respectfully recommends that she be authorized to complete her preliminary forensic accounting.

**D.     Secure Guidance From The Court In Connection With Prior Filings And Requests For Relief.**

The Receiver's Initial Report was filed on March 12, 2015 (Docket No. 17), accompanied by a proposed order on her request for further instructions as reflected therein. The Receiver filed her First Interim Report on August 7, 2015 (Docket No. 43), and likewise lodged a proposed order relating to her recommendations and petition for further instructions. On September 22, 2015 the Receiver filed the Fee Application (Docket No. 51), along with a lodged proposed order. The Commission filed a statement in support of the Fee Application on October 13, 2015 (Docket No. 54). On November 19, 2015 the Receiver filed the PPCN Motion (Docket No. 57), seeking permission to pursue claims against PPCN and Hartman. Finally, the Receiver filed the Joint Motion (Docket No. 61) on December 17, 2015.

As of the date of this Report, the Court has not entered orders on any of the above, pending filings and requests for relief.  The Receiver respectfully requests that the Court provide the guidance or instructions requested in connection with the Initial Report and Interim Report, authorize the prosecution of her proposed complaint against PPCN and Hartman, and grant the Joint Motion as soon as possible.  Orders in the Receiver's favor on these matters will substantially assist the Receiver in the administration of her duties under the Permanent Appointment Order, and could result in the recovery of substantial additional Receivership Assets.

The Receiver likewise respectfully requests that the Court issue an order on the Fee Application as soon as possible.  The Receiver and her professionals, including Allen Matkins, have been working on this matter without compensation for nearly one (1) year, since its inception, in February 2015.  The Receiver believes that the payment of the Fee Application and the submission of forthcoming fee applications in accordance with this Court's prior orders is now appropriate.

### E.   Submit Further Reports To The Court.

Assuming the Court authorizes the Receiver to undertake the actions recommended herein, as well as to continue those actions provided for in the Permanent Appointment Order, the Receiver proposes to submit further interim reports to this Court addressing her progress, findings, conclusions, and further recommendations, in approximately 90 to 120 days.

\\\
\\\
\\\
\\\
\\\
\\\
\\
\\\

1    Accordingly, the Receiver respectfully requests that the Court enter an order:

2    1.    Accepting the Receiver's Second Interim Report;

3    2.    Authorizing the Receiver to continue to administer the Receivership

4  Entities in accordance with the terms of the Permanent Appointment Order;

5    3.    Authorizing the Receiver to undertake the recommendations presented

6    herein; and

7    4.    Providing such other and further relief as the Court deems necessary

8  and appropriate.

9

10  Dated:  February 1, 2016              ALLEN MATKINS LECK GAMBLE
                                            MALLORY & NATSIS LLP
11                                       DAVID R. ZARO
                                         JOSHUA A. DEL CASTILLO
12                                       KENYON HARBISON

13                                       By:      /s/     Joshua A. del Castillo

14                                           JOSHUA A. DEL CASTILLO
                                             Attorneys for Receiver
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **<u>VERIFICATION</u>**

2         I have read the foregoing SECOND INTERIM REPORT AND PETITION

3    FOR FURTHER INSTRUCTIONS OF RECEIVER, KRISTEN A. JANULEWICZ,

4    and know its contents.

5         I am the Receiver appointed in this action.  The matters stated in the

6    foregoing document are true, to the best of my knowledge.

7         I declare under penalty of perjury that the foregoing is true and correct.

8    Executed on February 1, 2016 in Irvine, California.

9

10                        KRISTEN A. JANULEWICZ

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1031247.03/LA