Jessica G. Peterson, CA Bar No. 282743
**DURHAM JONES & PINEGAR, P.C.**
111 East Broadway, Suite 900
P O Box 4050
Salt Lake City, UT  84110-4050
Telephone:  (801) 415-3000
Facsimile:  (801) 415-3500
Email: jpeterson@djplaw.com

Attorney for JACOB KEITH COOPER

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>TOTAL WEALTH MANAGEMENT, INC., et al.,<br><br>Defendant. | Case No. 15cv226-BAS (DHB)<br><br>**DEFENDANT JACOB K. COOPER'S REPLY IN SUPPORT OF MOTION TO SELL PERSONAL ASSETS AND TO ESCROW PROCEEDS**<br><br>Date:  April 25, 2016<br>Judge: Hon. Cynthia Bashant<br>Place:  221 West Broadway<br>         San Diego, CA 92101<br>         Courtroom 4B<br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>Magistrate David H. Bartick |

Defendant Jacob K. Cooper ("Cooper") hereby files his reply in support of his Motion to Sell Personal Assets and to Escrow Proceeds ("Motion) and combined response to the Receiver's Response to Defendant Cooper's Motion to Sell Personal Assets and to Escrow Proceeds ("Receiver's Objection") and the Plaintiff Securities and Exchange Commission's Opposition to Defendant Jacob Cooper's Motion to Sell Assets and to Escrow Proceeds ("SEC's Objection") (collectively, "Objections")

# I. THE PROPOSED PROCEDURES TO ENSURE THE HIGHEST SALE PRICE AND PROTECT THE SALE PROCEEDS

The Objections by the Receiver and SEC are off the mark. All that matters is whether the Condo and Boat will be sold for the highest and best price and whether the proceeds (if any) are protected from dissipation. Cooper believes the proposed terms will result in the greatest net proceeds and protect the sale proceeds. *See* Dkt. 80, pp. 5-6. For example, in order to ensure the sale of the Boat is an arms-length transaction, Cooper agrees to maintain a log of the parties that contact him about buying the boat and to obtain contact information for the ultimate buyer. *Id.* If the Receiver or the SEC believe the sale is suspicious, they can subpoena and depose the buyer, those who expressed an interest in buying the Boat, and Cooper, himself. If they identify misconduct by Cooper, then they can seek appropriate relief from this Court. Additionally, all money relating to the sale of the Boat will be handled by Cooper's attorneys. *Id.* With respect to the Condo, the standard listing agreement provides many protections that the sale will be an arms-length transaction.[1]

In addition to the sale terms already proposed, Cooper will agree to have Cindy Wing set the listing price of the Condo and have her sign a declaration attesting to her independence from Cooper. Cooper will also agree to the inclusion of language in the order granting the Motion that prohibits Cindy Wing from sharing the commission with Cooper or any individuals the Receiver and the SEC identify to Ms. Wing within ten days of entry of the order. The latter provision should address the SEC's concerns about the unnamed "associates" with whom Cooper apparently plans to conspire. Dkt. 85, p. 2, ln. 11 & p. 3, ln. 28. Again, the Receiver and the SEC can conduct discovery to investigate the sale if they believe the sale is fraudulent. Cooper will agree to specifically sell the Boat for free (since that was not clear to the Receiver), exclusive of

---

[1] The SEC cries foul because the proposed listing agreement has not been signed. Dkt. 85, p. 3, ln 21-22. The objection is nonsensical. The listing agreement is a legal document that, if signed, would be a breach of the Court's Freeze Orders.

any advertising costs, which he must document with receipts to be provided to the Receive and SEC. As noted in the Motion, Cooper will agree to other reasonable sale procedures to address legitimate concerns of the Court.

## II.     THE OBJECTIONS DO NOT RAISE LEGITIMATE CONCERNS

The Objections miss the mark because they do not raise legitimate concerns. For example, the Receiver's complaint about whether Cooper obtained certified appraisals of the Boat and Condo or whether he used Zillow.com and NADA.com to value the Assets are misplaced. Dkt. 84, pp. 2-4. The SEC makes essentially the same objection. Dkt. 85, pp. 3-4. These arguments are simply red herrings. As explained above, what matters is whether Cooper obtains the highest and best price and whether the sale proceeds (if any) are protected. The proposed sale procedures do both. Furthermore, the Court should not overlook the fact that Cooper is personally motivated to sell the Assets for as much as possible. Although the proceeds will be escrowed, he may ultimately receive them.

The Receiver's argument about whether Cooper used receivership assets to purchase the Assets is similarly misplaced. Dkt. 84, p. 5. Because the proceeds will be escrowed, it is not necessary to make the determination of how Cooper paid for the Assets—that will be determined another day. What is more perplexing is how the Receiver has been unable to determine in the last fourteen months whether the Boat and Condo are receivership assets. In the first nine months, the Receiver reviewed over *1 million* pages of documents. Dkt. 57-1, p. 4, ln. 11-12. In the first five months, the Receiver incurred $464,952.18 in fees and expenses. Dkt. 51. Another nine months have passed since the Receiver's last fee application. And yet, Cooper is not aware of the Receiver serving any discovery upon him, and he is certain that he has not been deposed.

It would be speculation to guess why the Receiver has not investigated the Assets but one clue may be the relative values of the Assets. In other words, according to the SEC, Cooper is responsible for the loss of $46 million of his clients' money. Dkt. 85,

DURHAM JONES & PINEGAR, P.C.
111 E. Broadway, Suite 900
Salt Lake City, Utah 84111 (801) 415-3000

p. 3, ln. 10. In comparison, the potential equity in the Boat is $22,656.93 (using the SEC's comparable for a boat in Austin, Texas, and deducting the amount owed) and the equity in the Condo may be $54,838.62 (using the Receiver's Zillow, plus 8%, comparable and deducting 8% transactional costs and the amount owed). These are likely best-case scenarios, and the actual values are probably much less. The equity in the Assets may be less than the amount owed to the secured creditors, in which case the net proceeds will be less than the attorneys' fees the Receiver has incurred in simply objecting to the Motion. It would seem the Receiver and the SEC are making a mountain out of a molehill, particularly in light of the receivership costs that may now exceed $1 million alone.

### III. THE RECEIVER SHOULD NOT BE PERMITTED TO SELL THE ASSETS

The Objections are replete with complaints and protests over why Cooper should not be permitted to sell the Assets. What is clear from the Objections is that there are no circumstances under which the Receiver and the SEC would consent to Cooper selling the Assets. The only possible terms under which they will agree to the sale is if the Receiver sells the Assets.[2] However, the Receiver should not be permitted to sell the Assets.

First, allowing the Receiver to sell the Assets would give her the benefit of controlling the Assets without the burden of actually administering them. In other words, Cooper currently spends approximately $4,000.00 per month to service the debt and maintain the Assets. Motion, p. 10. If the Receiver wants the benefit of controlling the sale of the Assets, then she should have the burden of servicing the debt. Given the

---

[2] Prior to filing the Motion, Cooper's counsel emailed the proposed Motion to both the Receiver's counsel and the SEC's counsel. It is regrettable the Receiver and the SEC were unwilling to put their animus toward Cooper aside and engage in a meaningful dialogue so that the Assets could be sold in a manner that minimized receivership costs and avoided unnecessary Court involvement. For example, neither proposed having the Receiver conduct the sale, but rather waited until after Cooper filed the Motion to make their proposal.

limited equity in the Assets and the associated costs, it is not surprising the Receiver has not asserted control of the Assets and let Cooper maintain them.

Second, if the Receiver sells the Assets subject to Court approval, it will likely drive the sale price down, not up. For example, there may be no market for the Boat if a potential buyer is faced with waiting months for the Court to approve the sale. The effect on the Condo would be similar. It is axiomatic that potential buyers will be fearful of a sale requiring Court approval, thereby decreasing the potential pool of buyers, and thereby decreasing the value. There is already limited equity in the Assets and, thus, no room for additional reduction in value.

Third, the expense of having the Receiver manage the sales likely outweighs any benefits. For example, the Boat is located in St. George, Utah, so the Receiver would have to pay to have it moved to southern California or hire a broker to sell the Boat at an unknown cost. Regarding the Condo, the Receiver's blended rate is $193.00 per hour, Dkt. 51-3, p. 3, ln. 5., and her attorneys cost $444.90 per hour, Dkt. 51-9, p. 12, ln. 12. It is unimaginable that the Receiver and her attorneys would spend less than twenty hours hiring a real estate agent, reviewing the listing agreement, supervising the marketing, reviewing the closing documents and moving the Court for approval of the sale. The cost to the receivership to sell the Assets could easily exceed $10,000.00 or $20,000.00.

Fourth, there are no assurances the Receiver will sell the Assets for more than is owed to the secured creditors, which could leave Cooper with the deficiencies. Given the Receiver's and the SEC's prior unwillingness to reach a reasonable solution without involving the Court, *see* n.2 *supra*, and the enmity toward Cooper that is evident in the Objections, the Receiver might deliberately sell the Assets for less than the amounts owed, particularly if the Receiver must service the debt each month.

Therefore, the Receiver should not be allowed to sell the Assets. Nevertheless, Cooper is willing to allow the Receiver to sell the Assets under the following conditions: (1) the Receiver is ordered to service the debt and pay all other expenses

associated with the Assets until they are sold—the Receiver must take control of the Assets and pay for them; (2) the Receiver is ordered to sell the Assets for an amount that will pay off or retire the secured debts and pay all other costs of sale—Cooper will not be required to contribute any money to the sales, nor will he have any financial obligations, e.g. deficiencies, after or as a result of the sales; (3) the Receiver is ordered to continue to service the debt and pay all other expenses associated with the Assets if the Receiver fails to sell the Assets; (4) the sales must be approved by the Court after notice to Cooper and a hearing; and (5) the Receiver is ordered to communicate with Cooper and his attorneys regarding the status of the sale and to provide regular updates regarding the progress of the sales.

## **CONCLUSION**

In summary, after proposing the terms of the sale in the Motion, Cooper stated the following: "Cooper is also amenable to other reasonable sale procedures to accommodate legitimate concerns raised by the Receiver and SEC." Dkt. 80, p. 6. What is striking in the Objections is that the Receiver and SEC simply complained about the sale and offered no real solutions. While they are not required to propose a compromise, their decision to simply complain about the proposed sale demonstrates that the Receiver and SEC are more concerned about preventing the sale than finding a solution that efficiently advances the purpose of the receivership. The Court should not be lured into the animus expressed by the Receiver and particularly the SEC toward Cooper; rather, the Court should grant the Motion, allow the sale on the terms proposed by Cooper and include additional, reasonable terms to ensure the Assets are sold at arms-length and at the highest price.

Dated: March 24, 2016.

**DURHAM JONES & PINEGAR, P.C.**

*/s/ Jessica G. Peterson*
Attorney for Jacob Keith Cooper

# PROOF OF SERVICE

Code Civ. Proc. § 1013a(3)

I, Jessica G. Peterson, hereby declare I am employed in the County of Salt Lake, State of Utah. I am over the age of 18 and not a party to the within action. My business address is Durham Jones & Pinegar, 111 East Broadway, Suite 900, Salt Lake City, UT 84111.

On March 24, 2016, I served the foregoing document described as **DEFENDANT JACOB K. COOPER'S REPLY IN SUPPORT OF MOTION TO SELL PERSONAL ASSETS AND TO ESCROW PROCEEDS** on all interested parties in this action as set forth on the attached service list in the following manner:

    \_\_\_\_ **BY MAIL:** I am familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Salt Lake City, Utah in the ordinary course of business. I am aware that on motion of the party, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

    \_\_\_\_ **BY FACSIMILE:** In addition to service by mail as set forth above, a copy of said document(s) was also delivered by facsimile transmission to the addressee(s) pursuant to Code of Civil Procedure §1013(e).

    \_\_\_\_ **BY OVERNIGHT MAIL:** I caused said document(s) to be picked up by an overnight delivery service company for delivery to the addressee(s) on the next business day.

    \_\_\_\_ **BY PERSONAL SERVICE:** By causing personal delivery by _____ of the document(s) listed above to the person(s) at the address(es) set forth on the attached service list.

    \_X\_ **(CM/ECF):** I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send electronic notification of such filing to interested parties in this action.

    \_\_\_\_ (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

    \_X\_ (FEDERAL) I declare that I am employed in the office of the member of the bar of this court at whose direction the service was made.

Executed on March 24, 2016, at Salt Lake City, Utah

                                      */s/ Jessica G. Peterson*
                                      Jessica G. Peterson

DURHAM JONES & PINEGAR, P.C.
111 E. Broadway, Suite 900
Salt Lake City, Utah 84111 (801) 415-3000

{00274169.DOCX /}