1
2
3
4
5
6
7
8
9    **UNITED STATES DISTRICT COURT**
10   **SOUTHERN DISTRICT OF CALIFORNIA**
11

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 15-cv-226-BAS-RNB |
| Plaintiff, | **ORDER:** |
| v. | **(1) GRANTING IN PART AND DENYING IN PART THE RECEIVER'S AND PLAINTIFF'S JOINT MOTION FOR AN ORDER AWARDING SETTLEMENT FUNDS TO RECEIVER (ECF No. 208);** |
| TOTAL WEALTH MANAGEMENT, INC. *et al.*, | |
| Defendant. | |
| | **(2) DENYING DEFENDANT JACOB COOPER'S MOTION FOR AN ORDER AWARDING SETTLEMENT FUNDS TO COOPER (ECF No. 215);** |
| | **AND** |
| | **(3) DENYING COOPER'S MOTION TO STRIKE PORTIONS OF THE DECLARATION OF RECEIVER THOMAS A. SEAMAN (ECF No. 215)** |

Plaintiff Securities and Exchange Commission ("SEC") and Receiver Thomas A. Seaman (the "Receiver")[1] jointly move for the Court to award proceeds to the Receiver from two court-approved, confidential settlements entered into by and between the Receiver and Defendant Jacob Cooper in connection with two state court actions, *Seaman v. Lively*, No. 37-16-00003644-CU-PN-CTL (the "Receiver Malpractice Action") and *Cooper v. Jacko*, No. 27-2015-00038876-CU-PN-CTL (the "Cooper Malpractice Action"). Defendant Jacob Cooper opposes the motion and moves for the Court to award all proceeds to him. (ECF No. 215.) In addition, Defendant moves to exclude the Receiver's Declaration filed in connection with Plaintiff's and the Receiver's joint motion (the "Joint Motion"). (ECF No. 215.)

For the reasons that follow, the Court: (1) grants in part and denies in part Plaintiff's and Receiver's Joint Motion for an order awarding settlement funds to the Receiver (ECF No. 208); (2) denies Defendant's cross-motion for an order awarding settlement funds to Cooper (ECF No. 215); and (3) denies Defendant's motion to exclude portions of the Receiver's Declaration (ECF No. 215).

## I.    RELEVANT BACKGROUND

### A.    This Court's Judgment Against Cooper

On February 4, 2015, the SEC filed the Complaint in this case, alleging that Cooper and Total Wealth wrongfully took investor client funds. (ECF No. 1.) The SEC sought a temporary restraining order, preliminary injunction, and the appointment of a receiver over Total Wealth and its related entities. (*Id.*) In addition, the SEC sought permanent injunctions, disgorgement, and civil penalties against Total Wealth and Cooper. (*Id.*)

Over two years after this case began, the SEC moved for summary judgment against Cooper on July 24, 2017. (ECF No. 151.) Cooper did not oppose that motion,

---

[1] Seaman is the court-appointed permanent receiver for Total Wealth Management, Inc. ("Total Wealth") and its subsidiaries and affiliates, including but not limited to Altus Capital Management, LLC (collectively, with Total Wealth, the "Receivership Entities" or "Entities").

but instead filed a motion to stay all proceedings in this case pending the outcome of a March 2017 state criminal case against him. (ECF No. 173.) Cooper never contested the substance of the SEC's allegations or the evidence presented in its summary judgment motion. (ECF No. 176 at 9.) On September 27, 2017, the Court denied Cooper's motion to stay, granted the SEC's motion for summary judgment, and, among other things, ordered Cooper to pay the SEC $584,354. (ECF No. 185.) The Court provided Cooper a $150,000 credit in connection with funds he already paid to the Receiver. (*Id*.) The Court ordered that the SEC would hold the funds paid by Cooper, but could transfer them to the Receiver or propose a plan to distribute the funds subject to the Court's approval. (ECF No. 151 at 7:24–27.)

**B.      The SEC Administrative Proceeding and ALJ Judgment**

On April 15, 2014, prior to initiating this case, the SEC brought its own administrative enforcement proceeding (the "Administrative Proceeding") against Total Wealth and Cooper as well as other several other Total Wealth executives. *See Total Wealth Mgmt., et al*., Securities Act Release No. 9575, Exchange Act Release No. 71948, Investment Advisers Release No. 3818, Investment Company Act Release No. 31017, 2014 WL 1438614 (Apr. 15, 2014). An SEC administrative law judge ("ALJ") issued an Initial Decision against Cooper in *In the Matter of Total Wealth Mgmt., Inc.* on August 17, 2015. *Total Wealth Mgmt., et al*., Release No. 860, 2015 WL 4881991 (ALJ Aug. 17, 2015). The Initial Decision ordered Cooper to pay $2,595,992.99, inclusive of disgorgement, penalties, and prejudgment interest, which was intended to benefit the investors harmed by his unlawful conduct. *Id.* at *45. The ALJ set a 21-day deadline for Cooper to petition for review of the Initial Decision. *Id*. at *46. The Initial Decision became the SEC's Final Decision on October 13, 2015 because Cooper did not file a petition for review by the ALJ's deadline and because the SEC declined to conduct its own independent review. *In the Matter of Jacob Keith Cooper*, Exchange Act Release No. 7613, Investment

Advisers Release No. 4223, Investment Company Act Release No. 31867, 2015 WL 5935346 (Oct. 13, 2015).

Over a month after the Initial Decision became final, Cooper filed a *pro se* petition for review of the Initial Decision on November 17, 2015. *See In the Matter of Jacob Keith Cooper*, Securities Act Release No. 10035, Exchange Act Release No. 77068, Investment Advisers Release No. 4329, Investment Company Act Release No. 31985, 2016 WL 453458, at *1 (Feb. 5, 2016). The SEC dismissed the petition as untimely. *Id.* at *4. The SEC reasoned that Cooper had failed to file a petition within the 21-day period set by the ALJ in the Initial Decision and that Cooper failed to show that he was entitled to equitable tolling for several reasons, including that "Cooper admits that he received the Initial Decision from his lawyer on August 24." *Id.* at *3. Some eight months later, Cooper appealed the SEC's dismissal of his petition to the Ninth Circuit, an appeal which remains pending. *See Cooper v. SEC*, No. 15-73193, Petition for Review, ECF No. 1 (9th Cir. Oct. 16, 2015).

### C.     The Malpractice Actions and Jacko Settlement

On November 9, 2015, Cooper filed a California state court action against Michelle Jacko, Jacko Law Group, and other entities operated by Jacko (the "Jacko Entities"). (ECF No. 215 at 1:22–23, ECF No. 215.) Cooper alleged professional negligence as a result of negligent advice and direction given to Cooper. (ECF No. 215 at 1:24–25.) On February 3, 2016, the Receiver also filed a California state court action against the Jacko Entities, which alleged an identical cause of action for professional negligence. (ECF No. 215 at 1:25–28.)

Cooper and the Receiver engaged in a joint mediation with the Jacko Entities, and a tentative settlement was reached in August 2017 ("Jacko Settlement" or "Settlement"). (ECF No. 215 at 2:16–17.) During that process, Cooper and the Receiver determined that, following payment of the Jacko Settlement funds, they would discuss the allocation of those funds between them. (ECF No. 215 at 2:16–22.) This Court approved and authorized the Jacko Settlement on September 22,

2017.  (ECF No. 175.)  The Court retained jurisdiction over the Jacko Settlement proceeds in the event that the parties could not agree upon an allocation of the funds. (ECF No. 185.)

## II.    EVIDENTIARY ISSUES

Before turning to the merits of how to allocate the Jacko Settlement proceeds, the Court must address various evidentiary issues raised by Cooper which bear upon resolution of the pending motions.  These evidentiary issues pertain to the Receiver and Plaintiff's request that the Court judicially notice the ALJ's Initial Decision and the Receiver's Declaration.

### A.    The Request for Judicial Notice and Cooper's Objection

The Court first addresses Cooper's argument that the Court may not judicially notice either the Initial Decision or the findings and conclusions of fact from the Administrative Proceeding.  (ECF No. 215 at 6:1–4.)  Specifically, Cooper contends that the Initial Decision may not be judicially noticed because it is not a matter of public record.  (ECF No. 225 at 5:2–8.)  The Court rejects this argument.

Federal Rule of Evidence 201(b) allows a court to take judicial notice of "a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Records and reports of administrative bodies are proper subjects of judicial notice.  *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953); *see also United States v. 14.02 Acres*, 547 F.3d 943, 955 (9th Cir. 2008) ("Judicial notice is appropriate for records and reports of administrative bodies" (quoting *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1954)).  The Initial Decision is a public record created by the SEC, an administrative body.  *See United States v. Sine*, 493 F.3d 1021, 1036–37 (9th Cir. 2007) (stating that a court may take judicial notice of matters of public record); *see also 14.02 Acres*, 547 F.3d at 955 ("Judicial notice is appropriate for records and reports of administrative

bodies.") (quoting *Interstate Nat. Gas Co.*, 209 F.2d at 385).  The Court must judicially notice the existence of the Initial Decision, including the outstanding $2.5 million judgment it contains against Cooper.  *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (citing Fed. R. Evid. 201(b)); *see United States v. Boulware*, 384 F.3d 794, 805–06 (9th Cir. 2004) (citations omitted) (stating that "a prior judgment is not hearsay to the extent that it is offered as legally operative verbal conduct that determined the rights and duties of parties").

Nevertheless, the Court will not judicially notice the findings and conclusions of fact contained in the Initial Decision, for the purposes of this Order.  Cooper disputes the findings and conclusions of fact in the Initial Decision.[2]  Generally, a court should not take judicial notice of facts if they are subject to "reasonable dispute."  *See* Fed. R. Evid. 201(b) (stating that, in order for a fact to be judicially noticed, it must be indisputable, meaning it must be one that only an unreasonable person would insist on disputing).  Whether the conclusions and facts contained in the Initial Decision are subject to "reasonable" dispute is not an issue the Court need decide because the Court can resolve the pending motions without addressing it.[3]  Accordingly, the Court rejects Cooper's arguments regarding the propriety of taking judicial notice of the Initial Decision.

**B.    Cooper's Objections to the Receiver's Declaration**

The Receiver submitted a Declaration in connection with the Joint Motion. (*See* ECF No. 208-2, Declaration of Thomas A. Seaman ( "Seaman Decl.").)  The

---

[2] Cooper further argues that the Court should not consider any factual findings set forth in the Initial Decision because their probative value is substantially outweighed by the danger of unfair prejudice to him.  (ECF No. 215 at 7:16-19.) Because the Court does not judicially notice the findings of fact contained in the Initial Decision for other reasons, the Court need not address this argument.

[3] The findings of fact in the Initial Decision regarding Defendant's alleged securities fraud are generally not necessary to determine how to distribute assets.  *See SEC v. Bivona*, No. 16-CV-01386-EMC, 2017 WL 4022485, at *6 (N.D. Cal. Sept. 13, 2017).

Declaration details the Receiver's forensic accounting investigation, which includes a detailed review of relevant business records by the Receiver. (ECF No. 208 at 3:12–17.) These records include general ledgers and other digital and computer records, accounting records, bank and other financial statements, invoices for professional services rendered, written communications, court records, and client files turned over by pre-receivership counsel. (*See* Seaman Decl. 2:10–20.) From his investigation and analysis, the Receiver concludes that Cooper misappropriated at least $1,842,141.36 in funds derived from investors for himself or his personal benefit, not including investor money used to pay his salary. (Seaman Decl. 4:1–4, Exs. 1–5.)

Cooper broadly objects to this Declaration and requests that the Court strike it. (ECF No. 215 at 12:22–23.) First, he asserts that the Declaration contravenes Federal Rule of Evidence 602 because the Receiver does not have personal knowledge of the Declaration's facts. (*Id.*) Second, Cooper contends that the Declaration's forensic accounting information was gathered during the Administrative Proceeding, which may not be relied upon by this Court. (ECF No. 215 at 12:5–6.) The Court construes Cooper's request as a motion to exclude and finds Cooper's objections are insufficient to exclude the Receiver's Declaration.

### 1.    The Receiver Has Sufficient Personal Knowledge

The Receiver has personal knowledge of the facts in his Declaration and forensic accounting report. Federal Rule of Evidence 602 states that a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. The Rule ensures that a witness cannot simply state conclusions without any evidentiary basis. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("It is not enough for a witness to tell all she knows; she must know all she tells."). However, "[e]vidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602.

In this case, not only is the Receiver's forensic accounting investigation supported by evidence, but the Receiver has also testified about his personal knowledge regarding *his* investigation. Specifically, in the Declaration, the Receiver states that he has "personal knowledge of the facts detailed in [the] Declaration." (Seaman Decl. 2:6–9.) The assertion is plainly supported by the evidence because the Receiver undertook the investigation and analysis of the business and financial activities of the Receivership Entities. (Seaman Decl. 2:10–20.) For example, the Receiver and his staff "reviewed hundreds of thousands of pages of documents . . . in connection with [the] investigation." (Seaman Decl. 2:17–20.) The Receiver's Declaration in turn contains multiple exhibits of relevant business records and transactions, including general ledgers and other digital and computer records, accounting records, bank and other financial statements, invoices for professional services rendered, written communications, court records, and client files turned over by pre-receivership counsel. (*See* Seaman Decl. 2:10–20.) Based on these records, the Receiver has concluded that Cooper misappropriated at least $1,842,141.36 in funds derived from investors for himself or his personal benefit, not including investor money used to pay his salary. (Seaman Decl. 4:1–4, Exs. 1–5.)

Because there is evidence of the Receiver's personal knowledge, this case is distinguishable from *Carmen*. In *Carmen*, there was no evidence in the deposition or in the papers of any basis in personal knowledge for "the plaintiff's subjective belief about the defendant's motives." *See Carmen*, 237 F.3d at 1028. Unlike *Carmen*, the Receiver does not base his Declaration on his own subjective belief. Rather, the Receiver's testimony is (1) supported by evidence, such as business records, a ledger reflecting business transactions, and thousands of pages of documents in connection with the business and financial activities of the Receivership, and (2) the Receiver's own review of that evidence. (Seaman Decl. 2:17–20, 4:7–9.) Accordingly, the Court rejects Cooper's objection that the Receiver's Declaration must be excluded on the ground that the Receiver lacks

personal knowledge.

### 2. The Forensic Accounting Evidence is Admissible

Cooper further argues that the Declaration's forensic accounting evidence is not admissible because conclusions and findings of fact from the Initial Decision may not be relied upon by this Court. (ECF No. 215 at 3:6–8.) The Court easily rejects this argument because the Receiver's forensic accounting investigation in this case is *separate from and independent of* the findings and conclusions of fact in the Initial Decision. This Court specifically charged the Receiver with the duties of investigating, recovering, and marshaling the assets of the Receivership Entities. (ECF No. 8 at 9:5–14 (order appointing the Receiver); ECF No. 102 at 2 (appointing Seaman as successor receiver who "succeeds to all of the duties and obligations of the original receiver as defined in this Court's preliminary injunction and order appointing receiver".) The Receiver had the authority to conduct a forensic accounting investigation and to discern the details of Cooper's business and financial transactions, which the Receiver exercised. (ECF No. 208 at 3:6–11.) Accordingly, the Court finds that the Receiver's Declaration, including its findings and conclusions based on the Receiver's investigation, is admissible and denies Cooper's motion to exclude portions the Receiver's Declaration.

## III. DISCUSSION

With the evidentiary issues resolved, the Court turns to the merits of the motions. The Receiver argues that the Court should set-off Cooper's debt to the Receivership Entities against the Jacko Settlement proceeds. (ECF No. 208 at 5:16–17.) Alternatively, he argues that Cooper's claim to payment from the settlement should be equitably subordinated. (ECF No. 208 at 7:6–7.) The Receiver ultimately contends that Cooper's right to a portion of the proceeds, if any, yields to the outstanding judgments against him rendered by the ALJ and this Court as well as the investor restitution and disgorgement claim the Receiver seeks to prove now. Cooper challenges the Receiver's Joint Motion and argues that there should be no set-off

from his recovery of the Jacko Settlement funds. (ECF No. 215 at 3:13–15.) Additionally, he argues that his claim to recovery of the proceeds should not be equitably subordinated because he, and not the Receivership Entities, suffered harm from the Jacko Entities' malpractice. (ECF No. 215 at 3:10–12.)

The Court concludes it is proper to grant a set-off of Cooper's debt against the Settlement proceeds insofar as it is necessary to satisfy the outstanding portion of the Court's previous summary judgment award of $584,354.00. (ECF No. 151.) The Court concludes that although set-off is not proper for the Receiver's restitution and disgorgement claim, any claim Cooper might have to Settlement proceeds must be equitably subordinated to the restitution and disgorgement claim, to the extent any proceeds remain after set-off of this Court's judgment. Finally, the Court rejects both set-off and equitable subordination for the judgment against Cooper that resulted from the ALJ's Initial Decision.

**A. General Principles Governing Receiverships**

A district court's "power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005) (quoting *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986)). A "district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *Id.* (quoting *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978)). This broad deference to the district court's supervisory role in an equity receivership "arises out of the fact that most receiverships involve multiple parties and complex transactions." *Id.* (quoting *Hardy*, 803 F.2d at 1037). However, case law involving "district court administration of an equity receivership (once the receivership is underway) is sparse and is usually limited to the facts of the particular case." *Hardy*, 803 F.2d at 1037 (quoting *Lincoln Thrift Ass'n*, 577 F.2d at 607).

The primary purpose of an equity receivership is to promote the district court's orderly and efficient administration of an estate for the benefit of the creditors.

*Hardy*, 803 F.2d at 1038; *SEC v. Wencke*, 783 F.2d 829, 837 n.9 (9th Cir. 1986). The court may institute reasonable administrative procedures to serve this purpose. *Hardy*, 803 F.2d at 1038. The procedures used by a district court must be a reasonable and practicable attempt to administer the receivership without depriving the creditors of fair notice and a reasonable opportunity to respond.[4] *See id.*, 803 F.2d at 1040; *see also Wencke*, 783 F.2d at 837–38 (noting that use of summary procedures is permissible if potential creditors of the receivership are given adequate notice).

Courts look to bankruptcy law as an aid to address issues that arise in the receivership context. *See, e.g.*, *SEC v. Wells Fargo Bank*, 848 F.3d 1339, 1345 (11th Cir. 2017) (stating that bankruptcy law is analogous and instructive to the receivership context); *Marion v. TDI Inc.*, 591 F.3d 137, 148 (3d Cir. 2010) (analyzing bankruptcy law in a receivership context); *Fidelity Bank, Nat'l Ass'n v. M.M. Grp., Inc.*, 77 F.3d 880, 882 (6th Cir. 1996) (stating that it is "appropriate and helpful to refer to the rules governing appellate standing in bankruptcy proceedings" when no case law exists regarding the rules in a receivership action); *Unisys Fin. Corp. v. Resolution Tr. Corp.*, 979 F.2d 609, 611 (7th Cir. 1992) (reasoning that bankruptcy law is "parallel" and "instructive" in the receivership context). This Court has also authorized the Receiver to "[a]dminister the estate of the Receivership Entities . . . in accordance with relevant bankruptcy principles." (Order Granting Motion for Order in Aid of Receivership 3:25–27, ECF No. 31.)

---

[4] The use of summary proceedings to determine appropriate relief in equity receiverships is within the jurisdictional authority of a district court. *See Wencke II,* 783 F.2d at 836–38; *Universal Fin.,* 760 F.2d 1034, 1037 (9th Cir. 1985); *United States v. Ariz. Fuels Corp.,* 739 F.2d 455, 458 (9th Cir. 1984). Such procedures "avoid formalities that would slow down the resolution of disputes. This promotes judicial efficiency and reduces litigation costs to the receivership." *Wencke II,* 783 F.2d at 837 n.9.

**B.    Set-Off of Cooper's Debt Against the Settlement Proceeds**

**1.    General Principles**

The right of set-off allows entities that owe each other money to "apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995) (citations omitted). In bankruptcy law, set-offs are allowed to the extent that they are based on (i) mutual obligations existing between the debtor and a creditor and (ii) on concepts of fairness and the prevention of injustice. *In re Pieri*, 86 B.R. 208, 210 (B.A.P. 9th Cir. 1988) (citations omitted). The defining characteristic of a set-off is that "the mutual debt and claim . . . are generally those arising from *different* transactions." 4 *Collier on Bankruptcy* ¶ 553.03, at 553–14 (15th ed. 1995).

The burden of proving an enforceable right of set-off rests with the party asserting the right. *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399 (9th Cir. 1996) (citing *In re Cty. of Orange*, 183 B.R. 609, 615 (Bankr. C.D. Cal. 1995)). When the burden is met and it is determined that a right of set-off exists, set-offs are "generally favored" and a "presumption in favor of their enforcement exists." *In re De Laurentiis Entm't Grp., Inc.*, 963 F.2d 1269, 1277 (9th Cir. 1992) (describing the historical common-law presumption in favor of set-offs). However, although set-offs are generally favored, they are not automatically permitted. *In re Pieri*, 86 B.R. at 210 (citing *Melamed v. Lake Country Nat'l Bank*, 727 F.2d 1399, 1404 (6th Cir. 1984)).

The Ninth Circuit has held that a court has discretion in deciding whether to allow a set-off. *See, e.g.*, *First Nat'l Bank of Portland v. Dudley*, 231 F.2d 396, 398 (9th Cir. 1956); *In re Diplomat Elec., Inc.*, 499 F.2d 342, 346 (5th Cir. 1974). Principles and rules of equity jurisprudence guide the court's discretion. *See Capital Consultants, LLC*, 397 F.3d at 738 (stating that a "district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership" (quoting *Lincoln Thrift Ass'n*, 577 F.2d at 606)); *see In re Diplomat Elec., Inc.*, 499 F.2d at

346.  Because the set-off right is an established part of bankruptcy laws, it should be enforced "unless compelling circumstances" require otherwise. *In re Buckenmaier*, 127 B.R. 233, 237–38 (B.A.P. 9th Cir. 1991) (citing *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1165 (2d Cir. 1979)).

### 2. Application

#### a. The Court's Previous Judgment

The Receiver argues that the Court should set-off Cooper's debt to the Receivership Entities against the Jacko Settlement proceeds. (ECF No. 208 at 5:16–17.)  This Court previously granted a motion for summary judgment against Cooper and in favor of the SEC in the amount of $584,354, inclusive of penalties and disgorgement, for restitution to Receivership Entities investors. (ECF No. 151.)  In its discretion, the Court finds it is proper to grant a set-off Cooper's debt from this Court's previous judgment against the Settlement proceeds. *See Capital Consultants, LLC*, 397 F.3d at 738 (stating that a "district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership" (quoting *Lincoln Thrift Ass'n*, 577 F.2d at 606)); *see also In re De Laurentiis Entm't Group, Inc.*, 963 F.2d at 1277 (noting that set-offs are "generally favored" and a "presumption in favor of their enforcement exists").

First, there is a pre-existing mutual obligation between Cooper and the Receivership Entities with regard to the Court's previous judgment.  The judgment requires Cooper to pay the SEC, and therefore the Receiver, $584,354 that would be distributed to the defrauded investors. (ECF No. 151.)  Cooper concedes that it is proper to consider this judgment in determining how to award the Jacko Settlement proceeds. (ECF No. 215 at 11.)  The Court's previous judgment thus constitutes a pre-existing obligation of Cooper for which a set-off may be granted. *See In re Pieri*, 86 B.R. at 210 (citations omitted).

Next, the Court must determine whether it satisfies general principles of equity and fairness to grant a set-off with regard to the Court's judgment. *See In re Pieri*,

86 B.R. at 210 (citations omitted) (noting that the right to set-off is dependent on general principles of equity); *see also In re Buckenmaier*, 127 B.R. at 237–38 (stating that the right of set-off is an established part of bankruptcy laws (citing *Bohack Corp.*, 599 F.2d at 1165)). The Receiver acts on behalf of the best interests of the investors of the Receivership Entities, who were harmed. (ECF No. 208 at 8:18–22.) This Court previously granted the Receiver the power and duty to "collect and take custody, control, possession, and charge of all funds, assets, collateral, [or] premises." (ECF No. 8 at 9:5–6.) It indisputably satisfies principles of equity and fairness to grant a set-off. *See Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 795 (6th Cir. 2009) ("[T]he purpose of a receiver [is] to marshal the receivership entities' assets . . . so that the assets may be distributed to the injured parties in a manner the court deems equitable."). As the Receiver is currently in possession and control of the Jacko Settlement proceeds, the Court finds it proper and equitable for the Receiver to maintain possession and control of Cooper's settlement award for distribution to the defrauded investors.

Lastly, the Court must determine that there are no compelling circumstances that would require the Court to deny a set-off in this case. *See In re Buckenmaier*, 127 B.R. at 237–38 (stating that a set-off should be enforced, "unless [there are] compelling circumstances") (citing *Bohack Corp.*, 599 F.2d at 1165). Cooper contends that he is the only person who suffered damage as a result of the professional negligence of the Jacko Entities, and therefore only he should be awarded the Jacko Settlement proceeds. (ECF No. 215 at 16:22–25.) Although Cooper does not refer to this argument as a "compelling circumstance" that would justify rejecting a set-off, the Court construes his argument as such. *See In re Buckenmaier*, 127 B.R. at 237–38 (citing *Bohack Corp.*, 599 F.2d at 1165). The Court finds that Cooper has failed to identify a compelling circumstance to deny a set-off. The focus of a set-off analysis is whether Cooper has an existing obligation for which set-off would be appropriate. *See In re Pieri*, 86 B.R. at 210 (citations

– 14 –

omitted). Even if Cooper is the only one to have suffered harm as a result of the Jacko entities' conduct[5], his obligation to the investor creditors in this case—which arises from his settled liability in this case regarding the harm he caused the investors creditors—remains. Accordingly, the Court grants a set-off of Cooper's debt against the Settlement proceeds insofar as it is necessary to satisfy the outstanding portion of this Court's judgment against Cooper in the amount of $584,354.00.[6] (ECF No. 151.)

### b. The ALJ's Initial Decision and Resulting Judgment

On August 17, 2015, the ALJ rendered an Initial Decision in the Administrative Proceeding, which contained a judgment against Cooper in the amount of $2,595,992.99, inclusive of disgorgement and penalties. *See In re Matter of Jacob Keith Cooper*, Release No. 860, 2015 WL 4881991 (ALJ Aug. 17, 2015). The Joint Motion also seeks a set-off based on this judgment. The Court finds that it is not proper to grant a set-off to satisfy the ALJ's judgment because there is a compelling circumstance that warrants rejecting a set-off. *See In re Buckenmaier*, 127 B.R. at 237–38 (stating that a set-off should be enforced "unless [there are] compelling circumstances" (citing *Bohack Corp.*, 599 F.2d at 1165)).

Cooper raises two arguments against granting a set-off for the ALJ judgment. First, Cooper challenges the validity of the ALJ's judgment on the ground that the ALJ was not constitutionally appointed. (ECF No. 215 at 10:3–25.) Second, Cooper

---

[5] Cooper also states that he attempted to alleviate the suffering of his investors by relinquishing his right to receive money for necessary and reasonable living expenses; he argues that this attempt "should act as a mitigating and militating factor in his favor." (ECF No. 215 at 17:16-23.) This argument is unpersuasive particularly given the extent of the harm the investors suffered as a result of Cooper's conduct.

[6] Because it is proper to set-off Cooper's debt to satisfy the Court's previous judgment, the Court will not fully analyze whether it is proper to equitably subordinate Cooper's claim in order to satisfy that same judgment. *See Ariz. Fuels Corp.*, 739 F.2d at 458 (stating that receivership courts have discretion in determining whether to allow, disallow, or subordinate claims of creditors). However, the Court observes that equitable subordination of any claim Cooper might have to the Settlement proceedings would be proper with respect to this Court's judgment.

argues that the Court should not rule on the Joint Motion until the Supreme Court has decided *Lucia v. SEC*, a case which was pending at the time of Cooper's opposition and cross-motion which addressed the constitutionality of SEC ALJ appointments. (ECF No. 215 at 10:3–25.) Cooper's second argument is moot because the Supreme Court decided *Lucia* on June 21, 2018, holding that SEC ALJs are "Officers of the United States" and are subject to the Appointments Clause of the Constitution. *Lucia v. SEC*, 138 S. Ct. 2044, 2047 (2018). Thus, only Cooper's first argument remains. Contrary to the objections raised by the Receiver and Plaintiff that *Lucia* is not relevant to these proceedings, the Court finds it is relevant because the Joint Motion expressly requested a set-off based on the ALJ judgment. Accordingly, the Court briefly discusses *Lucia*, which frames Cooper's challenge to granting a set-off based on the ALJ's judgment.

In *Lucia*, the SEC instituted an administrative proceeding against Lucia and his investment company for allegedly deceiving prospective clients. *Id.* at 2049. The ALJ issued an initial decision which concluded that Lucia violated the Investment Advisers Act and imposed sanctions, including $300,000 in civil penalties. *Id.* Lucia argued before the SEC that the administrative proceeding was invalid because the ALJ had not been constitutionally appointed. *Id.* On appeal, the Supreme Court held that the SEC's ALJs are indeed "Officers of the United States" within the meaning of the Constitution's Appointment Clause, therefore they may only be constitutionally appointed by the President, a court of law, or a head of department. *Id.* at 2051. The ALJ who presided over Lucia's proceeding was not appointed in such a manner. *Id.* In deciding how to remedy that constitutional violation, the Supreme Court reasoned that Lucia was entitled to a new hearing before a different constitutionally-appointed SEC ALJ because he had made a "timely challenge to the constitutional validity of the appointment of [the] officer who adjudicate[d] his case." *Id.* at 2055 (citing *Ryder v. U.S.*, 515 U.S. 177, 182–83 (1995)). The Supreme Court determined that Lucia's challenge was timely because he had "contested the validity

of [the ALJ's] appointment before the Commission" and even thereafter "continued pressing that claim in the Court of Appeals and this Court." *Id.*

Armed with *Lucia*, Cooper argues that set-off is inappropriate because the ALJ in his administrative proceedings was not constitutionally appointed. (ECF No. 215 at 10–11; ECF No. 226 at 2.) Analogizing his circumstances to those of the petitioner in *Lucia*, Cooper argues that he timely raised his challenge to the constitutional validity of the ALJ's appointment and thus he is entitled to relief. (ECF No. 226 at 2.) Cooper argues that this alleged constitutional infirmity thus renders the ALJ's $2.5 million judgment against him a "complete nullity" which is "void" and "no longer exists." (ECF No. 215 at 9; ECF No. 226 at 2.)

Setting aside the merits of Cooper's *Lucia*-based challenge to the validity of the SEC ALJ judgment[7], the Court finds that there are compelling circumstances to deny the Joint Motion's request to grant a set-off on the basis of that judgment. *See In re Buckenmaier*, 127 B.R. at 237–38 (citations omitted) (stating that a set-off should be enforced, "unless [there are] compelling circumstances"). In October

---

[7] The Court has doubts that Cooper's *Lucia*-based argument will entitle him to any relief from the ALJ judgment. By its terms, *Lucia* provides relief from an SEC judgment made by an unconstitutionally appointed ALJ when an individual subject to that judgment has made a "timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case." *See Lucia*, 138 S. Ct. at 2055 (citing *Ryder*, 515 U.S. at 182–83). The SEC determined that Cooper did not file a timely petition against the Initial Decision and failed to show that he was entitled to equitable tolling of the deadline because he knew of the decision within a week of its issuance. *See In re Matter of Jacob Keith Cooper*, Securities Act Release No. 10035, Exchange Act Release No. 77068, Investment Advisers Release No. 4329, Investment Company Act Release No. 31985, 2016 WL 453458, at *1 (Feb. 5, 2016). Given these findings, it is questionable whether Cooper is entitled to any relief. *See United States v. Olano*, 507 U.S. 725, 731 (1993) (quoting *Yakus v. U.S.*, 321 U.S. 414, 444 (1944)) (A constitutional right "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right"); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) (courts "should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.").

2015, Cooper appealed the judgment in the Administrative Proceeding and his appeal remains pending before the Ninth Circuit. *See Cooper v. SEC*, No. 15-73193, ECF No. 44 (9th Cir. June 27, 2018) (status report filed by Cooper after *Lucia* decision); ECF No. 45 (9th Cir. June 28, 2018) (status reported filed by SEC). Although the SEC and the Receiver have sought to use the ALJ judgment against Cooper now[8], the proceedings in this Court are collateral to the direct review of the Initial Decision Cooper has sought in the Ninth Circuit. This Court will not grant a set-off for a judgment whose validity remains unsettled in the forum conducting a direct review. Accordingly, in its broad equitable discretion over whether to grant a set-off, the Court finds that it is inappropriate to do so now with respect to the ALJ judgment and denies a set-off for that judgment. *See In re Pieri*, 86 B.R. at 210 (citations omitted) (noting that the right to set-off is dependent on general principles of equity). This denial is without prejudice to the Receiver and SEC seeking a set-off or equitable subordination with respect to the ALJ judgment at a later point after the Ninth Circuit has resolved Cooper's appeal, if appropriate, and insofar as any proceeds from the Jacko Settlement remain.

### c. The Restitution and Disgorgement Claim

Lastly, the Receiver also seeks a set-off on the ground that the investors have a disgorgement and restitution claim against Cooper. (ECF No. 208 at 4:9–11.) To grant a set-off, there must be a pre-existing obligation between the debtor, Defendant Cooper, and the creditors, the investors of the Receivership Entities, on whose behalf

---

[8] The Joint Motion expressly requested a set-off based on the ALJ Judgment. (ECF No. 208-1 at 2–3, 8.) After Cooper raised his *Lucia*-based challenge in opposition to the Joint Motion, the Receiver and SEC doubled down on their request that the Court rely on the ALJ judgment, albeit in separate replies. (ECF No. 220 at 3–4 (Receiver's reply); ECF No. 222 (SEC's reply.) After the Supreme Court decided *Lucia* and Cooper filed a notice of supplemental authority with the Court, the Receiver appears to have conceded that reliance on the ALJ judgment is inappropriate by instead basing his request solely on the restitution and disgorgement claim and the outstanding judgment in this case. (ECF No. 227 at 2.) The SEC did not join the Receiver's response.

the Receiver acts. *See In re Pieri*, 86 B.R. at 210 (citations omitted). The Joint Motion fails this first requirement because the Receiver cannot show that the disgorgement and restitution claim is a *pre-existing* obligation from Cooper to the investors. Rather, the Receiver seeks to establish that such a claim exists through a present determination by the Court. The claim is thus distinguishable from the existing judgment this Court entered against Cooper. Accordingly, the Court denies a set-off with respect to the restitution and disgorgement claim.

### C. Equitable Subordination of Cooper's Claim to the Proceeds

#### 1. General Principles

The court has discretion to subordinate claims of certain creditors of the Receivership Entities to the claims of investors or other creditors. *See Ariz. Fuels Corp.*, 739 F.2d at 458 (stating that receivership courts may allow, disallow, or subordinate claims of creditors). Equitable subordination is appropriate when a claimant has engaged in inequitable conduct to advantage himself to the disadvantage of other claimants. *See, e.g.*, *In re First All. Mortg. Co.*, 471 F.3d 977, 1006 (9th Cir. 2006). A bankruptcy court has the authority to subordinate a claim on equitable grounds. *See Pepper v. Litton,* 308 U.S. 295, 304–05 (1939); *In re Westgate-Cal. Corp.,* 642 F.2d 1174, 1177 (9th Cir. 1981); *Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.)*, 926 F.2d 1458, 1464 (5th Cir. 1991). However, equitable subordination is an unusual remedy which should be applied only in limited circumstances. *In re Fabricators, Inc.*, 926 F.2d at 1464; *In re Octagon Roofing,* 157 B.R. 852, 857 (N.D. Ill. 1993).

Three findings are generally required before equitable subordination will be granted: "(1) that the claimant engaged in some type of inequitable conduct, (2) that the misconduct injured creditors or conferred unfair advantage on the claimant, and (3) that subordination would not be inconsistent with the Bankruptcy Code." *In re Lazar*, 83 F.3d 306, 309 (9th Cir. 1996) (citing *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 699–700 (5th Cir. 1977)); *see* 11 U.S.C.A. §

510(c).  The court is required to make specific findings and conclusions with respect to each of the three requirements.  *In re Lazar*, 83 F.3d at 309; *In re Fabricators, Inc.*, 926 F.2d at 1465; *Wegner v. Grunewaldt*, 821 F.2d 1317, 1323 (8th Cir. 1987).  However, satisfaction of this three-part standard does not mean that a court is required to equitably subordinate a claim; rather, the court is permitted to take such action.  *In re AutoStyle Plastics, Inc.*, 269 F.3d 726, 744–45 (6th Cir. 2001) (noting that the court applies careful scrutiny in reviewing equitable subordination claims and uses great caution in applying a remedy (citing *In re Octagon Roofing,* 157 B.R. at 857)).

Equitable subordination is particularly appropriate when the claimant involved is an insider.  *See id.*; *In re First All. Mortg. Co.*, 471 F.3d at 1006.  When reviewing equitable subordination claims, courts impose a higher standard of conduct on insiders.  *In re AutoStyle Plastics, Inc.*, 269 F.3d at 744–45 (citing *In re Octagon Roofing,* 157 B.R. at 857).  Indeed, "[a] claim arising from the dealings between a debtor and an insider is to be rigorously scrutinized by the courts." *Id.* (citing *In re Fabricators, Inc.*, 926 F.2d at 1465).  Therefore, "if the claimant is an insider, less egregious conduct may support equitable subordination."  *In re Herby's Foods, Inc.*, 2 F.3d 128, 131 (5th Cir. 1993); *cf. In re Fabricators, Inc.*, 926 F.2d at 1465 (citations omitted) ("If the claimant is not an insider, then evidence of more egregious conduct such as fraud, spoliation or overreaching is necessary.").  However, "the mere fact of an insider relationship is insufficient to warrant subordination." *In re AutoStyle Plastics, Inc.*, 269 F.3d at 745 (citations omitted).  "In order to equitably subordinate a creditor's claim, the creditor-insider must actually use its power to control to its own advantage or to the other creditors' detriment."  *In re AutoStyle Plastics, Inc.*, 269 F.3d at 745 (citations omitted); *In re Fabricators, Inc.*, 926 F.2d at 1467.

1    ## 2. Application

2    ### a. The Restitution and Disgorgement Claim

3       To the extent any proceeds remain after a set-off for this Court's judgment, the

4    Court finds it is proper to equitably subordinate any claim Cooper has to satisfy the

5    restitution and disgorgement claim raised in the Joint Motion.  The requirements of

6    equitable subordination are satisfied for that claim, particularly in light of Cooper's

7    status as an insider which lessens the evidentiary burden the Receiver must satisfy to

8    show inequitable conduct.  *See In re Lazar*, 83 F.3d at 309 (citing *In re Mobile Steel*

9    *Co.*, 563 F.2d at 699–700).

10      The first requirement for equitable subordination asks whether Cooper

11   engaged in inequitable conduct.  This inquiry requires the Court to make "specific

12   findings and conclusions" regarding Cooper's inequitable conduct and the injury that

13   occurred to his investors.  *See id.*; *In re Fabricators, Inc.*, 926 F.2d at

14   1465; *Wegner*, 821 F.2d at 1323.  As the movant seeking equitable subordination, the

15   Receiver must plead and prove that Cooper engaged in inequitable conduct.  *See In*

16   *re 604 Columbus Ave. Realty Tr.*, 968 F.2d 1332, 1359–60 (1st Cir. 1992) (stating

17   that equitable subordination usually applies to three situations: the fiduciary's misuse

18   of his position to the disadvantage of creditors, third party domination and control

19   plus disadvantage, and fraud).  It is clear that Cooper, as CEO and founder of Total

20   Wealth, was an insider of Total Wealth.  *See In re First All. Mortg. Co.*, 471 F.3d at

21   1006 (stating that equitable subordination is particularly appropriate when the

22   claimant involved is an insider); *see also In re Herby's Foods, Inc.*, 2 F.3d at 131

23   (noting that, "if the claimant is an insider, less egregious conduct may support

24   equitable subordination").  The Receiver's forensic accounting investigation led him

25   to conclude that Cooper misappropriated at least $1,842,141.36 in funds derived from

26   investors for himself or his personal benefit, not including investor money used to

27   pay his salary.  (Seaman Decl. 4:1–4, Exs. 1–5.)  In opposition, Cooper asserts a

28

blanket denial of all the Receiver's findings and conclusions. (ECF No. 215 at 13.)[9] However, despite the opportunity to credibly controvert the Receiver's findings, Cooper's denial is unsupported by any facts that would render the Receiver's factual findings and conclusions suspect. Accordingly, the Court concludes that there is uncontroverted evidence that Cooper engaged in inequitable conduct. *See In re 604 Columbus Ave. Realty Tr.*, 968 F.2d at 1359–60.

The Receiver's forensic accounting investigation and resulting findings satisfy the second equitable subordination requirement. After careful analysis of financial records, the Receiver has credibly proven that Cooper's misconduct conferred unfair advantage on Cooper to the detriment of the investor clients. *See In re Lazar*, 83 F.3d at 309 (citing *In re Mobile Steel Co.*, 563 F.2d at 699–00; *see* 11 U.S.C.A. § 510(c). Once more Cooper fails to seriously dispute this conclusion or the facts underlying it. Cooper misappropriated at least $1,842,141.36 in funds for his personal benefit, thereby conferring unfair advantage on himself. (Seaman Decl. 4:1–4, Exs. 1–5.)

Lastly, Cooper makes no concrete argument that equitable subordination of Cooper's claim, if any, to the restitution and disgorgement claim is inconsistent with the Bankruptcy Code. Accordingly, the Court concludes that it is proper to equitably subordinate Cooper's claim to the Settlement proceeds to the restitution and disgorgement claim.

---

[9] Cooper argues that the Receiver's findings are based on the finding of the Initial Decision and thus cannot serve as a basis for awarding the Settlement proceeds to the Receiver. (ECF No. 215 at 12–13.) This argument is belied by the Receiver's declaration, which attests to the Receiver's independent investigation. Cooper also argues that the Receiver's Declaration indicates that the Receiver reviewed court records and it is "highly likely . . . those 'court records' included the Initial Decision, and such cannot be relied upon[.]" (*Id.* at 12.) Setting aside that administrative records are not court records, Cooper fails to show any identity between the findings in the Initial Decision and the Receiver's decision that might suggest that the Initial Decision is the true basis of the Receiver's conclusions.

### b. The ALJ Judgment

Assuming *arguendo* that the requirements of equitable subordination are satisfied with respect to the ALJ's Initial Decision, the Court has discretion to subordinate the claims of certain creditors to the claims of investors or other creditors. *See Ariz. Fuels Corp.*, 739 F.2d at 458 (stating that receivership courts may allow, disallow, or subordinate claims of creditors). At the time of this Order, Cooper's appeal regarding the ALJ judgment's validity is still pending before the Ninth Circuit. *See Cooper*, No. 15-73193, ECF No. 1. In its discretion, the Court finds that it is not proper to grant equitable subordination with regard to the ALJ judgment before the Ninth Circuit has resolved Cooper's appeal. Accordingly, the Court denies equitable subordination of Cooper's claim to the Settlement proceeds to satisfy Cooper's debt from the ALJ's judgment without prejudice to the Receiver and SEC raising this issue again after the appeal is resolved, assuming that any proceeds remain and the judgment is affirmed.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court **DENIES** Cooper's cross-motion (ECF No. 215) and **DENIES** Cooper's motion to exclude portions of the Receiver's Declaration. (ECF No. 215.).

Further, the **GRANTS IN PART AND DENIES IN PART** the Joint Motion (ECF No. 208) as follows.

1. The Court **DENIES without prejudice** the Joint Motion's request for set-off and equitable subordination for the ALJ judgment of $2,595,992.99.

2. The Court otherwise **GRANTS** the Joint Motion. (ECF No. 208). The Court:

    a. **ORDERS** that Cooper's outstanding obligation from the Court's judgment against Cooper in the amount of $584,354.00 (ECF No. 151) be set-off against the Settlement proceeds resulting from the

Receiver Malpractice Action and the Cooper Malpractice Action, and

    b.    **ORDERS** that—to the extent any proceeds remain after the preceding set-off granted by this Order—any remaining proceeds shall be applied to satisfy the amount of the restitution and disgorgement claim identified in the Joint Motion and Receiver' Declaration.

3.    The Receiver is **ORDERED** to hold any proceeds from the Jacko Settlement that remain after application of the proceeds authorized by this Order.

4.    The Court **ORDERS** that the Receiver **SHALL NOTIFY** the Court whether proceeds remain after they are applied to satisfy the outstanding judgment in this case and the restitution and disgorgement claim, but shall not identify the amount of the proceeds. **<u>Such notice shall be provided to the Court not later than 14 days after application of the proceeds</u>**.

    **IT IS SO ORDERED.**

**DATED: July 17, 2018**

Hon. Cynthia Bashant
United States District Judge