# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br> v.<br><br>TOTAL WEALTH MANAGEMENT, INC., *et al.*,<br><br>        Defendants. | Case No. 15-cv-00226-BAS-RNB<br><br>**ORDER:**<br><br>**(1) OVERRULING OBJECTION,**<br><br>**(2) ESTABLISHING ALLOWED CLAIMS,**<br><br>**AND**<br><br>**(3) APPROVING OMNIBUS AND SPECIFIC CLAIM OBJECTIONS**<br><br>**[ECF Nos. 230, 239]** |

  Before the Court is a motion filed by Receiver Thomas A. Seaman ("Receiver") for a court order (1) establishing allowed claims in the Receivership and (2) approving the Receiver's omnibus and specific claim objections. (ECF No. 230.) The SEC has filed a non-opposition to the Receiver's motion. (ECF No. 235.) The California Franchise Tax Board ("FTB") has filed an objection to the Receiver's proposed disallowance of certain amounts in the FTB's claims. (ECF No. 236.) The Receiver has filed a reply in which he concedes the FTB's objection and requests that the FTB's aggregate claim of $47,764.40 be allowed. (ECF No. 237 at 3, 5.) The Receiver has also submitted to the Court an objection he received from Investor

– 1 –

Donald William Clugston, which the Receiver argues the Court should overrule. (ECF No. 237 at 2–5; *id.* Ex. A ("Investor's Objection").)[1]  Finally, the Receiver's reply revises the proposed allowable claims for three investors who submitted timely claims. (*Id.* at 6.) For the reasons herein, the Court (1) overrules the Investor's Objection and (2) grants the Receiver's motion, as modified in his reply.

## RELEVANT BACKGROUND

Two Receivership Orders are directly relevant to the Receiver's present motion. First, on February 12, 2015, the Court appointed a permanent receiver for Total Wealth Management, Inc. ("Total Wealth") and its subsidiaries and affiliates, including but not limited to Altus Capital Management, LLC (collectively, with Total Wealth, the "Receivership Entities" or "Entities"). (ECF No. 8 (the "Appointment Order").) Pursuant to the Appointment Order, the Receiver has exclusive authority and control over the Receivership Entities' assets and is authorized to marshal and recover all available assets for the benefit and administration of the Entities. In connection with this authority, the Court directed the Receiver to investigate and make an accounting of the Entities' assets. Second, on February 22, 2017, the Court granted Receiver Seaman's motion for an order establishing a summary claims procedure for distribution of the Entities' assets. (ECF No. 137.) The Court's order approved a claims bar date and a claim form for prospective claimants to use. (*Id.*) In addition, the Court approved the Receiver's proposed claim process by which "[c]laims will be evaluated on an aggregate money-in/money-out basis, across the Receivership Entities as a whole." (ECF No. 124-1 at 3; *see also* ECF No. 137 at 2 (approving the Receiver's "use of summary procedures for the determination of claims against the estate of the Receivership Entities, *as detailed in the Motion*[.]" (emphasis added)).)

In the present motion, the Receiver represents that he "has largely completed

---

[1] After the Receiver filed his reply, the Court permitted Clugston to file his objection on the docket. (ECF No. 239.)

– 2 –

his investigation and accounting, and is holding approximately $3.9 million in cash for the benefit and administration of the Receivership Entities." (ECF No. 230-1 at 3.) The Receiver has received and reviewed 282 Investor claims and 12 Non-Investor claims[2] in connection with his proposal for claim establishment and claim disallowance or allowance. (ECF No. 230-1 Ex. A (Investor Claims); *Id*. Ex. B (Non-Investor Claims).) Pursuant to the Court's approval of his claims procedure, the Receiver has conducted a money-in/money-out ("MIMO") analysis of the claims by using supporting information submitted by an investor as well as the books, records and tax documents of the Receivership Entities. (ECF No. 230-1 at 4.) The Receiver has determined that 86 investor claims are verifiable and should be fully allowed, 13 claims should disallowed, and 183 should be partially allowed consistent with company records. (*Id*.) The Receiver assessed Non-Investor claims by examining claims based on supporting documentation and company records. (*Id.* at 6.) With the results of the review in hand, the Receiver requests that the Court approve his determinations regarding the various claims on the Receivership assets.

## DISCUSSION

The Receiver requests that the Court resolve all claims on the Receivership assets by summary procedures and, over a single investor's objection[3], approve the use of the MIMO method to determine the allowable claims on the assets. (ECF No. 230-1 at 8.) Pursuant to its broad authority over administration of the Receivership and the purposes of a receivership, the Court grants the Receiver's requests and finds it is appropriate to overrule the investor objection.

First, summary proceedings for approval of the claims identified by the

---

[2] All but 3 of the Non-Investor claims are from the FTB. (ECF No. 230-1 Ex. B.)

[3] Given the Receiver's concession to the merits of the FTB's objection, it is unnecessary for the Court to address the substance of the objection. Thus, there is only one objection to the Receiver's motion before the Court.

– 3 –

Receiver are appropriate. As the Court has noted on multiple occasions, a district court's "power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005) (quoting *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986)). This broad authority permits a court to advance an equity receivership's primary purpose: the orderly and efficient administration of an estate for the benefit of the creditors. *Hardy,* 803 F.2d at 1038; *SEC v. Wencke*, 783 F.2d 829, 837 n.9 (9th Cir. 1986). Consistent with this purpose, a district court may employ summary procedures to determine appropriate relief in equitable receiverships to "promote[] judicial efficiency and reduce[] litigation costs to the receivership," so long as the procedures do not deprive creditors of fair notice and a reasonable opportunity to respond. *Hardy*, 803 F.2d at 1040; *Wencke*, 783 F.2d at 837–38 & n.9.

This Court has already authorized the Receiver to conduct the very claims procedure whose results are the subject of the Receiver's present motion. (ECF No. 137.) Potential claimants have had the opportunity to submit a claim and provide supporting documentation and they have had the opportunity to object to the Receiver's claim determination as to them. The Court sees no reason to depart from the use of summary proceedings regarding the Receiver's claims determinations. Doing so now risks further unnecessary delay in distribution of the assets.

Second, the Receiver's use of the MIMO method to ascertain the size of any allowable claims is also appropriate. As the Receiver recognizes, courts regularly use the MIMO method for the purpose of distributing limited assets. *Capital Consultants*, 397 F.3d at 738 (describing a net claim calculation as "an administratively workable and equitable method of allocating the limited assets of the receivership"); *CFTC v. Topworth Int'l, Ltd*., 205 F.3d 1107, 1116 (9th Cir. 1999); *In re Tedlock Cattle Co. Inc*., 552 F.2d 1351, 1354 (9th Cir. 1977); *In re Taubman*, 160 B.R. 964, 980–82 (Bankr. S.D. Ohio 1993). It is indisputable that the

volume of assets available for distribution to claimants is exceedingly limited relative to the overall financial harms suffered by investors because of Defendants' conduct. The use of the MIMO method thus appears to be a reasonable and practical method to ascertain the size of allowable claims against distributable assets.

Investor Donald William Clugston, however, objects to the use of the MIMO method. (ECF No. 239.) He asserts that the method is inappropriate for investors like him, who he avers had "liquid" investments with the Entities as opposed to "illiquid" investments. He claims that using the MIMO method is an "unfair" "redistribution" of funds to investors who primarily invested in illiquid assets to the detriment of investors who chose to invest in liquid assets. More fundamentally, Clugston appears to object to the Receiver's appointment itself by asserting that the Receivership's appointment prevented him from getting a cash out he would have already received from the Entities. (*Id.* at 13.) The Court rejects Clugston's objection.

In addition to the fact that the MIMO method is a permissible method in cases like this one and without exhaustively detailing why Clugston's objection lacks merit, there are practical administrative reasons to reject Clugston's objection. For one, the Court approved the MIMO method in February 2017 in its order on the Receiver's motion to establish a summary claims procedures. During the three months that the Receiver's motion was pending, the proposed method for calculating claims was not challenged, nor was it challenged in the eighteen months before the Receiver filed his present motion regarding his claims assessment. The Receiver has used the MIMO method to assess all timely made claims and he has expressly forgone more granular methods of calculation that would incur additional receivership costs to the detriment of claimants' recovery. Similarly, Clugston's objection effectively portends additional delay in all investors' recovery solely to undertake new calculations for an unknown number of investors—none of whom have advanced the objection raised by Clugston. If followed, undertaking the method Clugston now

– 5 –

proposes risks incurring additional receivership costs to the detriment of all claimants.

Moreover, as the Receiver persuasively argues, Clugston effectively seeks to privilege the claims of some investors over the claims of others simply to maximize the potential recovery for investors like Clugston, with a very real possibility that little to no assets would be left to distribute to the investors Clugston believes should be second in line for distribution. (ECF No. 230-1 at 2.) The Court will not approve such a method, particularly given that the Receivership seeks to distribute the limited funds available to *all* claimants in the Receivership Entities who were harmed by Defendants' conduct, not to privilege recovery for a subset. Accordingly, the Court overrules the Investor's Objection and approves the Receiver's motion in its entirety, as modified by the Receiver's reply.

## CONCLUSION & ORDER

For the foregoing reasons, the Court **OVERRULES** the Investor's Objection and **GRANTS** the Receiver's motion. (ECF No. 230.)

The Receiver's recommended treatment of claims, as reflected in the Motion and its supporting documents, is **APPROVED**, as modified below:

a. The claims of the FTB are deemed **ALLOWED**, in the aggregate amount of $47,764.40;

b. The three (3) investor claims identified and addressed in the Receiver's Omnibus Reply (ECF No. 237) are **ALLOWED**, in the amounts reflected therein; and

c. The Receiver's recommended treatment of all other claims identified in Exhibit A (Investor Claims) and Exhibit B (Non-Investor Claims) attached to the Receiver's motion (ECF No. 230) is **APPROVED**.

**IT IS SO ORDERED.**

**DATED: September 11, 2018**

Hon. Cynthia Bashant
United States District Judge