DAVID R. ZARO (BAR NO. 124334)
JOSHUA A. DEL CASTILLO (BAR NO. 239015)
NORMAN M. ASPIS (BAR NO. 313466)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone:  (213) 622-5555
Fax:  (213) 620-8816
E-Mail:  dzaro@allenmatkins.com
         jdelcastillo@allenmatkins.com
         naspis@allenmatkins.com

Attorneys for Receiver
THOMAS SEAMAN

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>            Plaintiff,<br><br>    v.<br><br>TOTAL WEALTH MANAGEMENT, INC.; et al.,<br><br>            Defendants. | Case No. 15-cv-226 BAS-MSB<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT<br><br>FINAL REPORT AND ACCOUNTING OF RECEIVER, THOMAS A. SEAMAN<br><br>[Notice of Filing of Final Report submitted concurrently herewith]<br><br>Date:  March 2, 2020<br>Time:  10:00 a.m.<br>Ctrm:  4B<br>Judge Hon. Cynthia Bashant |

**TO THIS HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 2, 2020, in Courtroom 4B of the above-entitled Court, located at 221 West Broadway, San Diego, California 92101, and in accordance with:  (a) this Court's February 12, 2015, (1) Preliminary Injunction, Appointment of a Permanent Receiver, and Related Orders; and (2) Order Vacating Hearing on Preliminary Injunction (the "Appointment Order") (ECF No. 8); (b) Civil Local Rule 66.1(e); and (c) this Court's December 4, 2018

"Order:  (1) Granting Fourth Interim Applications for Payment of Fees and Reimbursement of Receiver Thomas A. Seaman and Allen Matkins, (2) Granting First Application of Crow LLP, Accountant for the Receiver, and (3) Instructing Receiver to Propose an Omnibus Plan for Distribution of Proceeds and Winding-Up of the Receivership" (ECF No. 244), Thomas A. Seaman (the "Receiver"), the Court-appointed permanent receiver for Total Wealth Management, Inc. ("Total Wealth") and its subsidiaries and affiliates (collectively, the "Receivership Entities" or "Entities"), hereby submits this Final Report and Accounting (the "Final Report"). This Final Report provides a summary of the Receiver's activities over the course of the receivership with an emphasis upon the more recent work since the Eighth Interim Report and Petition for Further Instructions (the "Eighth Interim Report"). (ECF No. 246.)  This Final Report also reiterates the Receiver's recommendation that he be authorized to wind-up the receivership as described in the Eighth Interim Report.

I.  **PRELIMINARY STATEMENT.**

The Receiver's most significant accomplishments during the pendency of the instant receivership include:

- Completing a detailed review and analysis of the business and financial activities of the Receivership Entities, including a review and analysis of hundreds of thousands of thousands of transactions, detailed in over a million pages of records relating to the Receivership Entities and their investors;

- Marshaling and preserving all receivership assets ("Receivership Assets" or "Assets"), ultimately resulting in gross recoveries in the amount of $4,989,420 for the benefit of the Receivership Entities, including funds raised from the sale of personal property assets, liquidations, and settlement and pending litigation;

- Securing Court approval of the settlement of claims alleged in the action styled Seaman v. Lively, et al., Case No. 37-2016-00003644-CU-PN-

CTL (the "Malpractice Action"), and recovering settlement proceeds for the benefit of the Receivership Entities;

- Negotiating a settlement, and securing Court approval thereof, of the action styled <u>Seaman v. Private Placement Capital Notes II, LLC, et al.</u>, USDC, S.D. Cal. Case No. 16-cv-0578 BEN (DHB) (the "PPCN Action"), which provides for, among other things, a settlement (the "PPCN Settlement") payment to the Receivership Entities in the amount of at least $1 million, and which, if successful, may enable the Receiver to make a supplemental and final distribution on allowed claims ("the Final Distribution");

- Reviewing and addressing more than three hundred (300) claims submitted by Receivership Entity investors and creditors, conferring with claimants regarding claim deficiencies, and developing and securing Court approval of his recommended equitable treatment of allowed claims; and

- Developing, and securing Court approval of, the proposed omnibus plan for distribution on allowed claims, pursuant to which the Receiver made an initial distribution, in the aggregate amount of $2,831,781.02[1], on a *pro rata* basis on all allowed, non-subordinated claims.

The Receiver further administered and protected the assets of the Receivership Entities (collectively, sometimes, the "Estate"), including conferring with investors to keep them apprised of the status of the receivership and claims

---

[1] In connection with the Receiver's Motion for Order Authorizing and Approving Omnibus Plan for Distribution on Allowed Claims (the "Omnibus Distribution Motion") (ECF No. 245), the Court entered its April 8, 2019 "Order:  (1) Overruling Claimant Richard M. Kipperman's Objection and (2) Granting Receiver Thomas A. Seaman's Motion for Order Authorizing and Approving Omnibus Plan for Distribution on Allowed Claims, as Amended" (the "Omnibus Distribution Order") (ECF No. 253), pursuant to which the Court authorized the Receiver to make an initial aggregate distribution in the amount of $2,832,982, on a *pro rata* basis, on all allowed, non-subordinated claims.  Subsequently, the Receiver corrected an erroneously-calculated distribution to a particular investor, which led to an additional distribution in the amount of $1,178.28.  In addition, the Receiver made an adjustment to the aggregate distribution amount to the extent that certain distribution checks were voided, in the amount of $2,387.98. Accordingly, the Receiver's initial distribution amount was $2,831,781.02.

administration efforts, and monitoring and participating in, as necessary, pending third-party litigation which related to or implicated the Receivership Entities.

## II.      RELEVANT PROCEDURAL BACKGROUND.

The Receiver invites the Court and interested parties to review the materials identified in **Appendix 1**, appended hereto, for a general summary of the relevant facts underlying the above-captioned receivership case and the activities and efforts of the Receiver and the Receiver's Professionals[2].

## III.     SUMMARY OF PRIOR ACTIVITIES.

As reflected in the Receiver's Interim Reports (ECF Nos. 17, 43, 70, 111, 144, 192, 204, 232, 246), the Receiver and his predecessor focused their efforts largely on the following key areas:

First, the Receiver sought and reviewed tens of thousands of pages of documents and records relating to the Receivership Entities in order to complete a detailed review and analysis of their business and financial activities, which effort included, but was not limited to:  (1) preparing necessary accountings; (2) developing an assessment of the Receivership Entities' financial activities and condition; (3) preparing necessary reports and other filings for the Court; and (4) identifying recoverable Receivership Assets, in whatever form, including cash, saleable assets, and claims for disgorgement or reimbursement.

Second, having completed all appropriate accounting and analysis, the Receiver sought to fund the receivership via:  (1) recovering available cash Assets; (2) selling hard Assets or abandoning those Assets that constituted a net liability to the Estate; and (3) prosecuting and settling actions against third parties to recover Assets for the benefit and administration of the Receivership Entities, and their investors and creditors.

---

[2]    For the purposes of this Final Report, the Receiver's "Professionals" are his attorneys, Allen Matkins Leck Gamble Mallory & Natsis, LLP, and his accountants and tax professionals, Crowe LLP.

Third, having completed all appropriate accounting and analysis, the Receiver developed and secured Court approval of a claims process whereby investors in, and creditors of, the Receivership Entities could submit claims based on their net losses, as measured by the difference between their monetary contributions to, and payments from, the Receivership Entities (see ECF No. 124).  Once the claims processing was concluded, the Receiver secured Court approval of his recommended treatment of allowed claims and his proposed plan for distributions to allowed claimants (see ECF Nos. 230 and 245, respectively).  The Receiver has since completed a Court-approved distribution pursuant to this Court's Omnibus Distribution Order.

Fourth, the Receiver attended to the overall administration of the Estate including, but not limited to, attending to pre-receivership litigation, conferring with investors regarding the status of the receivership, and preparing and submitting appropriate tax filings.

### A.    Document Recovery And Review.

As noted in prior Interim Reports, the principals of the Receivership Entities left almost no books, records, or computers behind when they abandoned the Receivership Entities.  Accordingly, the Receiver had to secure documents relating to the business and financial activities of the Entities, and then ascertain the nature, location, and value of Assets from a variety of third party sources.  The Receiver recovered the records and assets via turnover demands, subpoenas, and informal requests for materials.  Over the course of the receivership, the Receiver served dozens of subpoenas upon third parties and also obtained documents from pre-receivership counsel, the Securities and Exchange Commission (the "Commission"), and Defendant Jacob Cooper.  Ultimately, the Receiver recovered nearly 200,000 separate documents and files, constituting approximately 1 million pages of records, covering thousands of transactions.  Likewise, the Receiver conducted witness and interested party interviews, and independent research regarding the nature and value

of Receivership Assets. From these efforts, and his analysis thereof, the Receiver prepared detailed accountings of the business and financial activities of the Receivership Entities, developed an assessment of their financial condition, prepared reports and other filings for the Court, and identified recoverable Receivership Assets.

**B.    Receivership Assets.**

The Assets recovered to-date by the Receiver stem largely from three categories: (1) cash recoveries; (2) asset sales; and (3) funds paid over in connection with claims prosecuted by the Receiver.

As reflected in prior Interim Reports, at the commencement of the receivership, the Entities held approximately $2 million, in cash. The Receiver recovered over $1.2 million in additional cash from bank accounts containing Receivership Assets, liquidations of investments, and the sale of assets associated with Metropolitan Coffee and Concession, Inc., an entity into which investor funds had been directed. The Commission also turned over $150,000 in investor funds to the Receiver, which had initially been paid over by Mr. Cooper.

In addition to cash recoveries, the Receiver also recovered Assets via the settlement of the Malpractice Action, which yielded more than $500,000 in gross proceeds for the benefit of the Receivership Entities and their investors and creditors. Likewise, the Receiver successfully negotiated the PPCN Settlement and secured Court approval thereof. (See ECF No. 258.)

**C.    Claims Processing And Recommended Distribution Plan.**

On November 29, 2016, the Receiver filed his Motion for Order Establishing Summary Claims Procedures, Setting Claims Bar Date, and Approving Proposed Claim Form (the "Claims Motion") (ECF No. 124). By way of the Claims Motion, the Receiver sought Court approval of his proposed claims process and the proof of claim. He also requested that the Court establish a bar date for the submission of claims. The Court granted the Claims Motion on February 27, 2017 (ECF No. 137).

Thereafter, the Receiver conferred extensively with investors and creditors, in order to ensure that all timely claims were supported by materials sufficient to evaluate each claim and, on August 6, 2018, the Receiver filed the Motion for Order Establishing Allowed Claims and Approving Omnibus and Specific Claim Objections (the "Claims Treatment Motion") (ECF No. 230, *et seq*.), by which the Receiver requested that the Court approve his recommended treatment of claims. The Court granted the Claims Treatment Motion and approved the recommendations therein on September 11, 2018, and instructed the Receiver to submit a motion to address his proposed distribution plan on or before February 11, 2019 (ECF No. 240; <u>see also</u> ECF No. 244).

On February 11, 2019, the Receiver filed his Omnibus Distribution Motion, in which he recommended a distribution on allowed claims in the amount of $2,832,982, to be paid on a *pro rata* basis, followed by the Final Distribution of any available proceeds resulting from the PPCN Settlement.  The Court granted the Omnibus Distribution Motion on April 8, 2019, via the Omnibus Distribution Order (ECF No. 253), and the Receiver thereafter completed the Court-approved distribution.[3]  In accordance with the Court's Omnibus Distribution Order, the Receiver set aside funds sufficient to cover the Receiver's and his Professionals' accrued administrative and professional fees, inclusive of amounts previously approved by the Court, but as yet unpaid, and funds sufficient to cover the fees and expenses anticipated to be incurred through the termination of the instant receivership.  Any additional distributions on allowed claims will be made only if funds are received from the PPCN Settlement, as described in the concurrently-filed Motion for Order:  (1) Approving Final Report and Accounting; (2) Authorizing Payment of Final Fee Applications of Receiver and Professionals; and (3) Staying Receivership Case and Discharging and Releasing Receiver.

---

[3]  <u>See</u> Footnote 1 for additional information regarding the Court-approved distribution.

**D.      Receivership Estate Administration.**

1.      <u>Pending Federal and State Court Litigation.</u>

At the time the Court appointed a receiver in this matter, the Receivership Entities were already named in six (6) separate actions[4] brought by investors in an attempt to recover funds invested.  After his appointment, the Receiver endeavored to protect the Estate from diminution by participating, in a limited manner, in these actions, principally by providing notice of the pendency of the receivership and the imposition of the Appointment Order's litigation stay, and by periodically appearing in these actions to provide or file status reports and updates requested by presiding judges.  While a handful of these matters remain pending, the claims of most of the investor plaintiffs therein have been addressed via the Claims Motion, the Claims Treatment Motion, and the Receiver's Omnibus Distribution Motion.

2.      <u>Investor Communications.</u>

Since the inception of the receivership, the Receiver has provided information and regular updates to investors and other interested parties via the receivership website, <u>totalwealthreceiver.com</u>, as well as by in-person, telephonic, and counsel-facilitated communications.  All told, the Receiver, his staff, and his Professionals collectively expended significant time over the course of the receivership communicating directly with investors to apprise them of, or address material developments in, the receivership case, including with respect to the status of pending litigation, Receivership Asset recovery efforts, claims, and distributions.

---

[4] These matters include:  (1) <u>Mitchell v. Total Wealth Mgmt., Inc.</u>, USDC, S.D. Cal. Case No. 14-cv-1552; (2) <u>Staniforth v. Total Wealth Mgmt., Inc.</u>, U.S.D.C. S.D. Cal. Case No. 14-cv-1899; (3) <u>Calderon v. Total Wealth Mgmt., Inc.</u>, U.S.D.C. S.D. Cal. Case No. 15-cv-1632; (4) <u>Troya v. Total Wealth Mgmt., Inc.</u>, San Diego Superior Court Case No. 37-2014-00012816; (5) <u>Morin v. Total Wealth Mgmt., Inc.</u>, San Diego Superior Court Case No. 37-2014-00025391; and (6) <u>Drehsler v. Total Wealth Mgmt., Inc.</u>, San Diego Superior Court Case No. 37-2014-00042224.

3. <u>Preparation and Submission of Necessary Tax Documents.</u>

The Receivership Entities have certain tax obligations, including the preparation and submission of appropriate federal and state tax returns, as well as the preparation and distribution of quarterly (K-1) statements to investors.  Over the course of the receivership, the Receiver has attended, and continues to attend to these obligations by submitting necessary returns and providing necessary information to investors.

## IV. **RECEIVERSHIP WIND-UP RECOMMENDATIONS.**

The Receiver believes that he has now satisfied his obligations to the Receivership Entities and exhausted all reasonable efforts to recover additional Receivership Assets.  Accordingly, the Receiver recommends that the Court now authorize him to commence the termination of the instant receivership.  Specifically, the Receiver's recommendations are as follows:

### A. **Payment of Fees and Expenses of Receiver and His Professionals.**

Concurrently with this Final Report, the Receiver and his Professionals have submitted their respective Final Fee Applications, requesting payment of their respective outstanding fees and expenses already incurred and anticipated fees and expenses through the termination of the instant receivership.  The Court has already authorized the Receiver, pursuant to its April 8, 2019 Omnibus Distribution Order (ECF No. 253), to set aside $520,334 from cash on-hand to cover the Receiver's and his Professionals' administrative and professional fees, including for:  (a) unpaid holdbacks of $333,834.41 of already-approved fees and expenses; and (b) a proposed reserve in the aggregate amount of $186,500 to cover remaining administrative fees and expenses (the "Reserve").[5]

---

[5] The Receiver has recovered an additional $42,655.50, such that he now has $562,989.50 in cash on-hand to cover the Receiver's and his Professionals' administrative and professional fees.  Given the scope and complexity of the work that the Receiver and his Professionals performed from August 1, 2018 to present, the Receiver respectfully requests that the Reserve amount be increased to $226,491.50, so that the additional funds recovered may be used to

1    While the Court has authorized the set-aside of these amounts, it has not

2    authorized the Receiver to make a payment therefrom.  Accordingly, the Receiver

3    respectfully requests such authorization at this time to pay his and his Professionals':

4    (1) unpaid holdbacks in the aggregate amount of $333,834.41; and (2) outstanding

5    administrative and professional fees and anticipated fees and expenses through the

6    termination of the instant receivership, from the set-aside Reserve amount of

7    $226,491.50, as set forth in further detail below.

8    **B.     PPCN Settlement and Stay of Receivership**

9    As described in greater detail in the Wind-Up Motion, if PPCN performs its

10   obligations under the PPCN Settlement and timely pays the Receiver, the Receiver

11   will make the Final Distribution, per the terms of the Omnibus Distribution Order.

12   If, however, PPCN fails to timely pay the Receiver, pursuant to the PPCN

13   Settlement, the Receiver may file and record the stipulated judgment.

14   In light of the contingent nature of PPCN's performance under the PPCN

15   Settlement, the Receiver respectfully requests that the Court stay the above-

16   captioned action and receivership, and retain jurisdiction over the instant

17   receivership, for the limited purpose of permitting the Receiver to make the Final

18   Distribution of proceeds recovered from the PPCN Settlement, if any.  Upon the

19   Receiver recovering the amounts due under the PPCN Settlement or the judgment

20   provided for thereunder, and making the Final Distribution or upon determining that

21   there will be no further recovery with regard to the PPCN Settlement or judgment,

22   the Receiver will file a declaration ("Closing Declaration") notifying the Court that

23   all of the Closing tasks have been completed and asking the Court to close the

24   Receivership and discharge the Receiver.

25   **C.     Undertake Receivership Wind-Up And Closing Tasks.**

26   The Receiver respectfully reiterates his request to undertake the

27

28   compensate the Receiver and his Professionals for work performed from August
1, 2018 through the termination of the instant receivership.

1  recommended wind-up and termination procedures, as set forth in detail in the

2  Eighth Interim Report, which include:

3                  1.    <u>Submission of Appropriate Tax Returns and Other Filings.</u>

4        The Receiver is required to submit appropriate tax returns for each calendar

5  year of the pendency of the receivership.  Based on his discussions with his

6  accounting professionals, the Receiver believes that, before the receivership is

7  terminated, he will need to submit Qualified Settlement Fund returns for the Entities

8  for at least the 2018 and 2019 tax years, and to undertake necessary supporting

9  work, including preparing tax accounting/trial balances.  The Receiver will file the

10  tax returns on or before February 15, 2020.  If and only if there is a Final

11  Distribution, then the Receiver will file a tax return reflecting the recovery and

12  distribution prior to submitting the Receiver's Closing Declaration.

13                  2.    <u>Abandonment or Destruction of Records.</u>

14        The Receiver has obtained and reviewed hundreds of thousands of pages of

15  material relevant to the business and financial activities of the Receivership Entities,

16  in hard copy and digital form.  Some of these documents contain private financial

17  information.  The Receiver therefore requests that, within ninety (90) days after the

18  entry of an order approving the Receiver's recommendations herein, the Receiver be

19  authorized to abandon any documents containing non-private information, and

20  destroy any documents containing private information, except for those records, if

21  any, that are necessary to the Final Distribution.

22                  3.    <u>Discharge and Release of the Receiver.</u>

23        As noted above, the only task remaining in the instant receivership is the

24  prospective Final Distribution pursuant to the PPCN Settlement (and possibly a final

25  tax return), in accordance with this Court's Omnibus Distribution Order.

26  Accordingly, the Receiver believes that it is appropriate to present his Final Report,

27  along with the Final Fee Applications, and to request the Court to stay the

28  receivership case and retain jurisdiction thereover, pending a potential performance

1   of the PPCN Settlement.  To facilitate the goals of the instant receivership, the

2   Receiver requests that the Court stay the receivership and retain jurisdiction over

3   any settlement proceeds paid in connection with the PPCN Settlement, which

4   settlement proceeds shall remain subject to the self-help bar and litigation stay

5   imposed by the Appointment Order.

6          It may be some time before PPCN makes a payment to the Receiver in

7   accordance with the PPCN Settlement.  Likewise, it is uncertain whether PPCN will

8   make all contemplated payments and whether the judgment provided for under the

9   PPCN Settlement will be collected or otherwise monetized.  Accordingly, and in

10  order to best preserve limited receivership resources and further limit the cost of

11  administering the Estate, the Receiver recommends that the Court accept the

12  Receiver's Final Report and eliminate further reporting obligations in connection

13  with the instant receivership such that the Receiver shall only be required to submit

14  a further declaration or report:  if the Receiver believes the Court's attention is

15  needed in connection with the PPCN Settlement, judgment or Final Distribution; or

16  to notify the Court.

17         **D.     Accounting and Current Financial Position.**

18         Cash basis financial statements including a Profit & Loss Statement and

19  Balance Sheet for the period from February 1, 2019 through December 10, 2019 as

20  well as for the duration of the receivership are attached as **Exhibit 1**.  A copy of the

21  Standardized Fund Accounting Report for the period from February 1, 2019 through

22  December 10, 2019 is also attached hereto in **Exhibit 1**.  Since the time of the

23  Receiver's last report the Receiver has collected $43,482 and disbursed $2,027.  The

24  Receiver is currently holding cash in the amount of $562,989.50.[6]

25

26

27

28

---

[6]  <u>See</u> Footnote 5, reflecting the additional sums collected during this period.

**E.     Final Distributions of Receivership Assets.**

As noted above, in order to calculate his recommended initial distribution amount, the Receiver previously proposed, in his Eighth Interim Report, setting aside a total of $520,334, reflecting the unpaid holdbacks of approved fees via earlier applications, plus a reasonable estimate of the aggregate administrative fees and expenses the Receiver and his Professionals expect to incur in administering the Estate from the date of the last Court-approved fee applications through the termination of the receivership and the discharge and release of the Receiver.  Since that time, the Receiver has collected additional funds and paid nominal administrative expenses of the estate and is holding cash of $562,089.50.  A reserve variance analysis follows:

| | |
|---|---|
| Reserve 01/31/19 | 520,334.00 |
| | |
| Increase/(decrease) to reserve: | |
| | |
| PPCN | 25,000.00 |
| Tax refund | 800.00 |
| Boat proceeds | 2,773.18 |
| Interest income | 17,681.63 |
| Receiver exp. | (1,226.67) |
| Claims adjustments | (2,372.64) |
| Cash balance | 562,989.50 |

Based on the foregoing and the pending fee applications of the Receiver and his Professionals, if approved by the Court, there will be a small surplus as follows:

| | |
|---|---|
| Current cash balance | 562,989.50 |
| Allen Matkins Holdback | 283,719.02 |
| Allen Matkins Final Fee App | 135,000.00 |
| Receiver Holdback | 50,115.89 |
| Receiver Fee App | 41,491.50 |

| | |
|---|---|
| Crowe Horwath | 50,000.00 |
| Document destruction | 500.00 |
| Surplus/(deficiency) | 2,163.09 |

The Receiver recommends the Court authorize him to remit the remaining balance of $2,163.09 to the Commission for payment to the United States Treasury.

**V.    CONCLUSION.**

Based on the information presented above, the Receiver respectfully requests that this Court enter an order approving the Receiver's actions in administering the Estate, accepting this Final Report and the recommendations presented herein.

Dated:  January 23, 2020

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
DAVID R. ZARO
JOSHUA A. DEL CASTILLO
NORMAN M. ASPIS

By:        /s/ *David R. Zaro*
DAVID R. ZARO
Attorneys for Receiver
THOMAS SEAMAN

## <u>VERIFICATION</u>

I have read the foregoing FINAL REPORT AND ACCOUNTING OF RECEIVER, THOMAS A. SEAMAN, and know its contents.

I am the Receiver appointed in the above-entitled action.  The matters stated in the foregoing document are true, to the best of my knowledge.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on January 23, 2020 in Irvine, California.


_____
THOMAS A. SEAMAN

## **APPENDIX 1**

For a more detailed description of important events and the administration of the receivership in the above-entitled action, the Receiver invites the Court and interested parties to review the following documents:

- Commission's Complaint against Defendants Total Wealth and Jacob Keith Cooper (ECF No. 1.);
- Appointment Order (ECF No. 8);
- Initial Report and Recommendations and Petition for Further Instructions of Receiver (ECF No. 17);
- Order in Aid (ECF No. 31);
- Receiver's First Interim Report and Petition for Further Instructions (ECF No. 43);
- Receiver's Second Interim Report and Petition for Further Instructions (ECF No. 70);
- Substitution Order (ECF No. 102);
- Receiver's Third Interim Report and Petition for Further Instructions (ECF No. 111);
- Notice of Motion and Motion of Receiver for Order Establishing Summary Claims Procedures, Setting Claims Bar Date, and Approving Proposed Claim Form (ECF No. 124);
- Order granting Claims Motion (ECF No. 137);
- Receiver's Fourth Interim Report and Petition for Further Instructions (ECF No. 144);
- Amended Joint Motion to Release Real and Personal Property from Asset Freeze for Sale Purposes (ECF No. 154);
- Order Granting Cooper Property Sale Motion (ECF No. 156);
- Receiver's Ex Parte Motion for Order Authorizing Filing of Joint Motion to Approve Settlement Under Seal (ECF No. 168);

- Defendant Cooper's Motion to Stay (ECF Nos. 173);
- Order granting First Settlement Sealing Motion (ECF No. 174);
- Receiver's Ex Parte Motion for Order Authorizing Filing of Supplement to Joint Motion to Approve Settlement Under Seal (ECF No. 179);
- Order granting Second Settlement Sealing Motion (ECF No. 181);
- Order Granting Joint Motion to Approve Settlement (ECF No. 183);
- Order:  (1) Denying Defendant Jacob Keith Cooper's Motion to Stay [ECF No. 173]; (2) Granting SEC's Motion for Summary Judgment [ECF No. 151]; and (3) Entering Final Judgment of Permanent Injunction Against Defendant Jacob Keith Cooper (ECF No. 185);
- Receiver's Fifth Interim Report and Petition for Instructions (ECF No. 192);
- Order Approving Joint Motion to Approve Settlements (ECF No. 201);
- Notice of Motion and Motion of Receiver, Thomas A. Seaman, and Plaintiff Securities and Exchange Commission, for Order Awarding Settlement Proceeds to Receiver, in Their Entirety (ECF Nos.  208, *et seq.*);
- Order:  (1) Granting in Part and Denying in Part the Receiver's and Plaintiff's Joint Motion for an Order Awarding Settlement Funds to Receiver; (2) Denying Defendant Jacob Cooper's Motion for Order Awarding Settlement Funds to Cooper; and (3) Denying Cooper's Motion to Strike Portions of the Declaration of Receiver Thomas A. Seaman (ECF No. 229);
- Notice of Motion and Motion of Receiver, Thomas A. Seaman, for Order Establishing Allowed Claims and Approving Omnibus and Specific Claim Objections (ECF No. 230, *et seq.*);
- Order:  (1) Overruling Objection, (2) Establishing Allowed Claims, and

(3) Approving Omnibus and Specific Claim Objections (ECF No. 240);

- Order:  (1) Granting Fourth Interim Applications for payment of Fees and Reimbursement of Receiver Thomas A. Seaman and Allen Matkins, (2) Granting First Application of Crow LLP, Accountant for the Receiver, and (3) Instructing Receiver to Propose an Omnibus Plan for Distribution of Proceeds and Winding-Up of the Receivership" (ECF No. 244);

- Notice of Motion and Motion of Receiver, Thomas A. Seaman, for Order Authorizing and Approving Omnibus Plan for Distribution on Allowed Claims (ECF No. 245);

- Eighth Interim Report (ECF No. 246);

- Supplemental Memorandum in Support of Motion of Receiver, Thomas A. Seaman, for order Authorizing and Approving Omnibus Plan for Distribution on Allowed Claims (ECF No. 248);

- Order:  (1) Overruling Claimant Richard M. Kipperman's Objection; and (2) Granting Receiver Thomas A. Seaman's Motion for Order Authorizing and Approving Omnibus Plan for Distribution on Allowed Claims, as Amended (ECF No. 253);

- Order Requesting Status Report on Distribution (ECF No. 254);

- Status Report of Receiver, Thomas A. Seaman, Re:  Status of Distribution on Allowed Claims (ECF No. 255);

- Notice of Motion and Motion for Order Approving Settlement (ECF No. 256); and

- Order Approving Settlement (ECF No. 258).

*Securities and Exchange Commission v. Total Wealth Management, Inc., et al.,*
USDC, SD of California, Case No. 3:15-cv-00226 BAS-MSB

### INDEX OF EXHIBITS

| Exhibit | Description | Page |
|---------|-------------|------|
| 1 | Total Wealth Management Balance Sheet, Profit & Loss, and Standardized Fund Accounting Report | 19 |

**3:00 PM**

**12/10/19**

**Accrual Basis**

## Total Wealth Management Inc.
## Balance Sheet
### As of December 10, 2019

|  | Dec 10, 19 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| **Wells Fargo Checking 5531** | 36,478.38 |
| **Wells Fargo Treasury Account** | 526,511.12 |
| **Total Checking/Savings** | 562,989.50 |
| **Total Current Assets** | 562,989.50 |
| **TOTAL ASSETS** | **562,989.50** |
| **LIABILITIES & EQUITY** | |
| **Equity** | |
| **Retained Earnings** | 3,479,511.99 |
| **Net Income** | -2,916,522.49 |
| **Total Equity** | 562,989.50 |
| **TOTAL LIABILITIES & EQUITY** | **562,989.50** |

**Exhibit 1** Page 1

**Page 19**

2:58 PM

12/10/19

Accrual Basis

# Total Wealth Management Inc.
# Profit & Loss
### February 1 through December 10, 2019

|  | Feb 1 - Dec 10, 19 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Sale of Personal Property | 2,773.18 |
| Settlement Proceeds | 25,000.00 |
| **Total Income** | 27,773.18 |
| **Gross Profit** | 27,773.18 |
| **Expense** | |
| Bank Service Charges | 110.88 |
| Computer and Internet Expenses | 825.00 |
| Distribution to Claimants | 2,831,781.02 |
| Income Tax Expense | 0.00 |
| Outside Services | 241.50 |
| Postage and Delivery | 49.29 |
| Uncategorized Expenses | 0.00 |
| **Total Expense** | 2,833,007.69 |
| **Net Ordinary Income** | -2,805,234.51 |
| **Other Income/Expense** | |
| **Other Income** | |
| Interest Income | 17,681.63 |
| **Total Other Income** | 17,681.63 |
| **Net Other Income** | 17,681.63 |
| **Net Income** | **-2,787,552.88** |

**Exhibit 1** Page 1
Page 20

**2:59 PM**

**12/10/19**

**Accrual Basis**

# Total Wealth Management Inc.
# Profit & Loss
### As of December 10, 2019

|  | Dec 10, 19 |
|---|---|
| **Ordinary Income/Expense** |  |
| **Income** |  |
| **Fund Liquidations** | 2,103,168.48 |
| **Life Insurance Commission** | 15,067.62 |
| **Sale of Personal Property** | 2,773.18 |
| **Settlement Income** | 150,000.00 |
| **Settlement Proceeds** | 662,500.00 |
| **Turnover/Seizure** | 2,015,080.84 |
| **Total Income** | 4,948,590.12 |
|  |  |
| **Gross Profit** | 4,948,590.12 |
|  |  |
| **Expense** |  |
| **Bank Service Charges** | 1,519.05 |
| **Computer and Internet Expenses** | 42,049.91 |
| **Distribution to Claimants** | 2,831,781.02 |
| **Document Production** | 1,563.36 |
| **Forensic Computer Imaging** | 12,611.45 |
| **Income Tax Expense** | 4,096.47 |
| **Outside Services** | 3,826.11 |
| **Postage and Delivery** | 668.16 |
| **Professional Fees** |  |
| **Mediation Fees** | 2,695.00 |
| **Outside Accounting** | 159,577.00 |
| **Receiver's Counsel -Expenses** | 32,297.47 |
| **Receiver's Counsel -Fees** | 924,299.93 |
| **Receiver's Fees** | 451,038.51 |
| **Total Professional Fees** | 1,569,907.91 |
|  |  |
| **Travel Expense** | 1,088.30 |
| **Uncategorized Expenses** | 0.00 |
| **Total Expense** | 4,469,111.74 |
|  |  |
| **Net Ordinary Income** | 479,478.38 |
| **Other Income/Expense** |  |
| **Other Income** |  |
| **Interest Income** | 83,511.12 |
| **Total Other Income** | 83,511.12 |
|  |  |
| **Net Other Income** | 83,511.12 |
|  |  |
| **Net Income** | **562,989.50** |

**Exhibit 1** Page 1
Page 21

STANDARDIZED FUND ACCOUNTING REPORT for Total Wealth Management - Cash Basis
Receivership; Case No. 15-cv-226-BAS-DHB
Reporting Period 02/01/2019 to 12/31/2019

| FUND ACCOUNTING (See instructions): | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | Beginning Balance (01/31/2019): | 3,353,316 | | 3,353,316 |
| | | | | |
| | *Increases in Fund Balance:* | | | |
| | | | | |
| Line 2 | **Business Income** | | | - |
| Line 3 | **Cash and Securities** | 800 | | 800 |
| Line 4 | **Interest/Dividend Income** | 17,682 | | 17,682 |
| Line 5 | **Business Asset Liquidation** | | | - |
| Line 6 | **Personal Asset Liquidation** | | | - |
| Line 7 | **Third-Party Litigation Income** | 25,000 | | 25,000 |
| Line 8 | **Miscellaneous - Other** | | | - |
| | **Total Funds Available (Lines 1 - 8):** | **3,396,798** | | **3,396,798** |
| | | | | |
| | *Decreases in Fund Balance:* | | | |
| | | | | |
| Line 9 | **Disbursements to Investors** | (2,831,781) | | (2,831,781) |
| | | | | |
| Line 10 | **Disbursements to Receivership Operations** | | | |
| *Line 10a* | *Disbursement to Receiver or Other Professionals* | | | - |
| *Line 10b* | *Business Asset Expenses* | | | - |
| *Line 10c* | *Personal Asset Expenses* | (2,027) | | (2,027) |
| *Line 10d* | *Investment Expenses* | | | - |
| *Line 10e* | *Third-Party Litigation Expenses* | | | - |
| | *1. Attorney Fees* | - | | - |
| | *2. Litigation Expenses* | - | | - |
| | ***Total Third-Party Litigation Expenses*** | **-** | | **-** |
| | | | | |
| *Line 10f* | *Tax Administrator Fees and Bonds* | - | | - |
| *Line 10g* | *Federal and State Tax Payments* | | | |
| | **Total Disbursements for Receivership Operations** | | | **(2,027)** |
| | | | | |
| Line 11 | **Disbursements for Distribution Expenses Paid by the Fund:** | | | |
| *Line 11a* | *Distribution Plan Development Expenses:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator…………………………… | - | | - |
| | Independent Distribution Consultant (IDC).. | - | | - |
| | Distribution Agent………………………… | - | | - |
| | Consultants………………………………… | - | | - |
| | Legal Advisors…………………………… | - | | - |
| | Tax Advisors……………………………… | - | | - |
| | 2. Administrative Expenses | - | | - |
| | 3. Miscellaneous | - | | - |
| | ***Total Plan Developmental Expenses*** | **-** | | **-** |
| | | | | |
| *Line 11b* | *Distribution Plan Implementation Expenses:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator…………………………… | - | | - |
| | IDC………………………………………… | - | | - |
| | Distribution Agent………………………… | - | | - |
| | Consultants………………………………… | - | | - |
| | Legal Advisors…………………………… | - | | - |
| | Tax Advisors……………………………… | - | | - |
| | 2. Administrative Expenses | - | | - |
| | 3. Investor Identification: | | | |
| | Notice/Publishing Approved Plan…………… | | | - |
| | Claimant Identification…………………… | - | | - |
| | Claims Processing………………………… | - | | - |
| | Web Site Maintenance/Call Center………… | - | | - |
| | 4. Fund Administrator Bond | - | | - |
| | 5. Miscellaneous | | | - |
| | 6. Federal Account for Investor Restitution | | | |
| | (FAIR) Reports Expenses | - | | - |
| | ***Total Plan Implementation Expenses*** | **-** | | **-** |
| | **Total Disbursements for Distribution Expenses Paid by the Fund** | | | **-** |
| | | | | |
| Line 12 | **Disbursements to Court/Other:** | | | |
| *Line 12a* | *Investment Expenses/Court Registry Investment* | | | |
| | *System (CRIS) Fees* | - | | - |
| *Line 12b* | *Federal Tax Payments* | - | | - |
| | **Total Disbursement to Court/Other:** | | | - |
| | **Total Funds Disbursed (Lines 9 - 11):** | | | **(2,833,808)** |
| | | | | |
| Line 13 | **Ending Balance (As of 12/31/2019):** | | | 562,990 |

**Exhibit 1**
**Page 22**

**STANDARDIZED FUND ACCOUNTING REPORT for Total Wealth Management Cash Basis**
Receivership; Case No. 15-cv-226-BAS-DHB
Reporting Period 02/01/2019 to 12/31/2019

| Line 14 | Ending Balance of Fund - Net Assets: | | | |
|---|---|---|---|---|
| Line 14a | *Cash & Cash Equivalents* | | | 562,990 |
| Line 14b | *Investments* | | | - |
| Line 14c | *Other Assets or Uncleared Funds* | | | - |
| | Total Ending Balance of Fund - Net Assets | | | 562,990 |

**OTHER SUPPLEMENTAL INFORMATION:**

| | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| | *Report of Items NOT to be Paid by the Fund:* | | | |
| **Line 15** | **Disbursement for Plan Administration Expenses Not Paid by the Fund:** | | | |
| *Line 15a* | *Plan Development Expenses Not Paid by the Fund:* | | | |
| | 1. Fees: | | | |
| | Fund Administrator…………………………… | - | | - |
| | IDC…………………………………………… | - | | - |
| | Distribution Agent…………………………… | - | | - |
| | Consultants…………………………………… | - | | - |
| | Legal Advisors……………………………… | - | | - |
| | Tax Advisors………………………………… | - | | - |
| | 2. Administrative Expenses | - | | - |
| | 3. Miscellaneous | - | | - |
| | **Total Plan Developmental Expenses Not Paid by the Fund** | | | **-** |
| | | | | |
| *Line 15b* | *Plan Implementation Expenses Not Paid by the Fund* | | | |
| | 1. Fees: | | | |
| | Fund Administrator…………………………… | | | - |
| | IDC……………………………………………………… | | | |
| | Distribution Agent…………………………… | - | | - |
| | Consultants…………………………………… | - | | - |
| | Legal Advisors……………………………… | - | | - |
| | Tax Advisors………………………………… | - | | - |
| | 2. Administrative Expenses | - | | - |
| | 3. Investor Identification | | | |
| | Notice/Publishing Approved Plan…………… | - | | - |
| | Claimant Identification…………………………… | - | | - |
| | Claims Processing………………………………… | | | - |
| | Web Site Maintenance/Call Center………… | | | - |
| | 4. Fund Administrator Bond | - | | - |
| | 5. Miscellaneous | - | | - |
| | 6. FAIR Reporting Expenses | | | - |
| | **Total Plan Implementation Expenses Not Paid by the Fund** | | | **-** |
| *Line 15c* | *Tax Administrator Fees & Bonds Not Paid by the Fund* | | | - |
| | **Total Disbursements for Plan Administration Expenses Not Paid by the Fund** | | | **-** |
| | | | | |
| **Line 16** | **Disbursements to Court/Other Not Paid by the Fund:** | | | |
| *Line 16a* | *Investment Expenses/CRIS Fees* | - | | - |
| *Line 16b* | *Federal Tax Payments* | | | |
| | Total Disbursement to Court/Other Not Paid by the Fund: | | | - |
| | | | | |
| **Line 17** | **DC & State Tax Payments** | - | | - |
| | | | | |
| **Line 18** | **No. of Claims:** | | | |
| *Line 18a* | *# of Claims Received This Reporting Period*…………………………………………………………… | | | |
| *Line 18b* | *# of Claims Received Since Inception of Fund*…………………………………………………… | | | |
| **Line 19** | **No. of Claimants/Investors:** | | | |
| *Line 19a* | *# of Claimants/Investors Paid this Reporting Period* | 261 | | |
| *Line 19b* | *# of Claimants/Investors Paid Since Inception of Fund* | 261 | | |

Receiver:

By: *Thomas L. Seaman*

Thomas Seaman

Receiver for Total Wealth

Date: 12/10/2019

**Exhibit 1**
**Page 23**

# PROOF OF SERVICE

*Securities and Exchange Commission v. Total Wealth Management, Inc., et al.*
USDC, Southern District of California – Case No. 15-cv-226 BAS-MSB

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 865 S. Figueroa Street, Suite 2800, Los Angeles, California 90017-2543.

On **January 23, 2020**, I caused to be served on all the parties to this action addressed as stated on the attached service list the document entitled:

## FINAL REPORT AND ACCOUNTING OF
## RECEIVER, THOMAS A. SEAMAN

☐ **OFFICE MAIL**: By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with the firm's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **OVERNIGHT DELIVERY**: I deposited in a box or other facility regularly maintained by express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document(s) in sealed envelope(s) or package(s) designed by the express service carrier, addressed as indicated on the attached service list, with fees for overnight delivery paid or provided for.

☐ **HAND DELIVERY**: I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **ELECTRONIC MAIL**: By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING**: By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX**: By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

1009060.94/LA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on **January 23, 2020** at Los Angeles, California.

Martha Diaz