1  DAVID R. ZARO (BAR NO. 124334)
   JOSHUA A. DEL CASTILLO (BAR NO. 239015)
2  NORMAN M. ASPIS (BAR NO. 313466)
   ALLEN MATKINS LECK GAMBLE
3    MALLORY & NATSIS LLP
   865 South Figueroa Street, Suite 2800
4  Los Angeles, California 90017-2543
   Phone:  (213) 622-5555
5  Fax:  (213) 620-8816
   E-Mail:  dzaro@allenmatkins.com
6           jdelcastillo@allenmatkins.com
            naspis@allenmatkins.com
7
   Attorneys for Receiver
8  THOMAS SEAMAN

9              UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11

12 SECURITIES AND EXCHANGE          Case No. 15-cv-226 BAS-MSB
   COMMISSION,
13                                  NO ORAL ARGUMENT UNLESS
                Plaintiff,          REQUESTED BY THE COURT
14
        v.                          MEMORANDUM OF POINTS AND
15                                  AUTHORITIES IN SUPPORT OF
   TOTAL WEALTH MANAGEMENT,         MOTION OF RECEIVER, THOMAS A.
16 INC.; et al.,                    SEAMAN, FOR ORDER:
                                    (1) APPROVING FINAL REPORT AND
17              Defendants.         ACCOUNTING; (2) AUTHORIZING
                                    PAYMENT OF FINAL FEE
18                                  APPLICATIONS OF RECEIVER AND
                                    PROFESSIONALS; AND (3) STAYING
19                                  RECEIVERSHIP CASE AND
                                    DISCHARGING AND RELEASING
20                                  RECEIVER

21                                  [Notice of Motion and Motion;
                                    Declaration of Thomas A. Seaman; Final
22                                  Report and Accounting; Final
                                    Applications for Payment of Fees and
23                                  Reimbursement of Expenses; and
                                    [Proposed] Order thereon submitted
24                                  concurrently herewith]

25                                  Date:  March 2, 2020
                                    Ctrm:  4B
26                                  Judge Hon. Cynthia Bashant

27

28

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................5

II. PRELIMINARY STATEMENT .............................................................6

III. RELEVANT PROCEDURAL BACKGROUND .........................................8

IV. RECEIVERSHIP WIND-UP RECOMMENDATIONS .............................10

    A. Approval of the Receiver's Final Report..............................................10

    B. Payment of Fees and Expenses of Receiver and His Professionals ........................................................................................10

    C. PPCN Settlement..................................................................................11

    D. Undertake Receivership Wind-Up And Closing Tasks .....................12

        1. Submission of Appropriate Tax Returns and Other Filings ............................................................................................12

        2. Abandonment or Destruction of Records .................................12

        3. Remittance of Receivership Assets ...........................................13

        4. Discharge and Release of the Receiver .....................................13

V. ARGUMENT .........................................................................................14

    A. The Proposed Final Closing Tasks Should Be Authorized ...............14

    B. The Final Fee Applications Are Reasonable And Appropriate, And Payment Of All Outstanding Fees and Expenses Should Be Authorized At This Time ................................16

        1. The Fees and Expenses Requested in the Final Fee Applications are Reasonable .....................................................16

        2. The Fees and Expenses Requested in the Final Fee Applications have been Submitted to the Commission, Without Objection .................................................17

        3. The Receiver Should be Authorized to Pay Allowed Fees and Expenses from Cash on Hand....................................18

VI. CONCLUSION .....................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Bennett v. Williams,
    892 F.2d 822 (9th Cir. 1989) ........................................................................ 15

CFTC v. Topworth Int'l,
    205 F.3d 1107 (9th Cir. 1999) ..................................................................... 14

Finn v. Childs Co.,
    181 F.2d 431 (2d Cir. 1950) ................................................................. 17, 18

Fleet Nat'l Bank v. H&D Entm't,
    926 F. Supp. 226 n. 56 (D. Mass. 1996) ..................................................... 14

Gaskill v. Gordon,
    27 F.3d 248 (7th Cir. 1994) .......................................................................... 16

In re Phila. & Reading Coal & Iron Co.,
    61 F. Supp. 120 (D.C. Pa. 1945) ........................................................... 17, 18

In re Thinking Machs. Corp.,
    182 B.R. 365 (D. Mass. 1995) ..................................................................... 15

In re Thinking Machs. Corp.,
    67 F.3d 1021 (1st Cir. 1995) ........................................................................ 15

SEC v. Am. Capital Invs.,
    98 F.3d 1133 (9th Cir. 1996) ....................................................................... 14

SEC v. Basic Energy & Affiliated Res.,
    273 F.3d 657 (6th Cir. 2001) ....................................................................... 14

SEC v. Elliot,
    953 F.2d 1560 (11th Cir. 1992) ................................................................... 16

SEC v. Elliot,
    998 F.2d 922 (11th Cir. 1993) ..................................................................... 16

SEC v. Fifth Ave. Coach Lines, Inc.,
    364 F.Supp. 1220 (S.D.N.Y. 1973) ....................................................... 16, 18

SEC v. Forex Asset Mgmt., LLC,
    242 F.3d 325 (5th Cir. 2001) ....................................................................... 14

SEC v. Hardy,
    803 F.2d 1034 (9th Cir. 1986) ..................................................................... 14

SEC v. Health Maint. Ctrs., Inc.,
    2002 WL 34388014 (W.D. Wash. 2002) .................................................... 15

SEC v. Wang,
    944 F.2d 80 (2d Cir. 1991) .......................................................................... 14

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1178712.01/LA

Case No.  15-cv-226 BAS-RNB

**Page(s)**

Sw. Media, Inc. v. Rau,
708 F.2d 419 (9th Cir. 1983) ........................................................... 15

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

Case No.  15-cv-226 BAS-RNB

1178712.01/LA                                           -3-

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **INTRODUCTION.**

Thomas A. Seaman (the "Receiver"), the Court-appointed permanent receiver for Total Wealth Management, Inc. ("Total Wealth") and its subsidiaries and affiliates including, but not limited to, Altus Capital Management, LLC (collectively, the "Receivership Entities" or "Entities"), hereby submits the present motion for an order:  (1) Approving Final Report and Accounting; (2) Authorizing Payment of Final Fee Applications of Receiver and Professionals; and (3) Staying Receivership Case and Discharging and Releasing Receiver (the "Wind-Up Motion").  As of the date of the instant Wind-Up Motion, the Receiver believes he has – with the assistance of his Professionals[1] – fulfilled each of his responsibilities to the fullest extent possible, and has exhausted all reasonable efforts to recover additional receivership assets ("Receivership Assets" or "Assets") for the benefit of the estate of the Receivership Entities (the "Estate").  The specific accomplishments of the Receiver and his Professionals are summarized herein, and in the Receiver's Final Report and Accounting ("Final Report"), submitted concurrently with the instant Wind-Up Motion.

Accordingly, the Receiver recommends that the Court now authorize him to commence the termination of the instant receivership, including the enumerated wind-up tasks identified below.  As the Receiver performs these wind-up tasks, he respectfully requests that the Court stay the above-captioned receivership, and retain jurisdiction over the instant receivership, solely for the limited purpose of permitting the Receiver to make a supplemental and final distribution on a *pro rata* basis to all allowed, non-subordinated claims, from any available funds paid in connection with the settlement of the action styled Seaman v. Private Placement Capital Notes II,

---

[1]   For the purposes of this Wind-Up Motion, the Receiver's "Professionals" are his attorneys, Allen Matkins Leck Gamble Mallory & Natsis, LLP, and his accountants and tax professionals, Crowe LLP.

1  LLC, et al., USDC, S.D. Cal. Case No. 16-cv-0578 BEN (DHB) (the "PPCN

2  Action"), as detailed herein (the "Final Distribution").

3       Following any Final Distribution or, if the Receiver determines that no Final

4  Distribution will be made, then the Receiver will file a declaration ("Final

5  Declaration") with the Court notifying the Court that the Receiver has completed all

6  of his work, and the receivership should be closed.  Absent any further inquiry by

7  the Court, the Receiver shall be discharged upon the filing of the Final Declaration.

8  **II.    PRELIMINARY STATEMENT.**

9       Pursuant to this Court's February 12, 2015 "(1) Preliminary Injunction,

10 Appointment of a Permanent Receiver, and Related Orders; and (2) Order Vacating

11 Hearing on Preliminary Injunction" (the "Appointment Order") (ECF No. 8), and

12 this Court's May 8, 2015 "Order Granting Motion for Order in Aid of Receivership"

13 (ECF No. 31), the Receiver's most significant accomplishments during the pendency

14 of the instant receivership include:

15       •    Completing a detailed review and analysis of the business and financial

16            activities of the Receivership Entities, including a review and analysis of

17            hundreds of thousands of transactions, detailed in over a million pages of

18            records relating to the Receivership Entities and their investors;

19       •    Marshaling and preserving all Receivership Assets, ultimately resulting

20            in gross recoveries in the amount of $4,989,420 for the benefit of the

21            Receivership Entities, including funds raised from the sale of personal

22            property assets, liquidations, and settlement and pending litigation;

23       •    Securing Court approval of the settlement of claims alleged in the

24            action styled Seaman v. Lively, et al., Case No. 37-2016-00003644-CU-PN-

25            CTL, and recovering significant settlement proceeds for the benefit of the

26            Receivership Entities, including with respect to settlement proceeds against

27            which Defendant Jacob Cooper alleged a claim;

28

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1178712.01/LA

-5-

Case No.  15-cv-226 BAS-RNB

- Negotiating a settlement, and securing Court approval thereof, of the PPCN Action (the "PPCN Settlement"), which provides for, among other things, a settlement payment to the Receivership Entities in the amount of at least $1 million, and which, if successful, may enable the Receiver to make the Final Distribution on allowed claims;

- Reviewing and addressing more than three hundred (300) claims submitted by Receivership Entity investors and creditors, conferring with claimants regarding claim deficiencies, and developing and securing Court approval of his recommended equitable treatment of allowed claims; and

- Developing, and securing Court approval of, the proposed omnibus plan for distribution on allowed claims, pursuant to which the Receiver made an initial distribution, in the aggregate amount of $2,831,772.34[2], on a *pro rata* basis on all allowed, non-subordinated claims. (See concurrently filed Declaration of Thomas A. Seaman ["Seaman Decl."] ¶ 3.)

The Receiver further administered and protected the Estate, including conferring with investors to keep them apprised of the status of his receivership and claims administration efforts, and monitoring and participating in, as necessary, pending third-party litigation which related to or implicated the Receivership Entities.

---

[2] In connection with the Receiver's "Motion for Order Authorizing and Approving Omnibus Plan for Distribution on Allowed Claims" (ECF No. 245), the Court entered its April 8, 2019 "Order: (1) Overruling Claimant Richard M. Kipperman's Objection and (2) Granting Receiver Thomas A. Seaman's Motion for Order Authorizing and Approving Omnibus Plan for Distribution on Allowed Claims, as Amended" (the "Omnibus Distribution Order") (ECF No. 253), pursuant to which the Court authorized the Receiver to make an initial aggregate distribution in the amount of $2,832,982, on a *pro rata* basis, on all allowed, non-subordinated claims. Subsequently, the Receiver corrected an erroneously-calculated distribution to a particular investor, which led to an additional distribution in the amount of $1,178.28. In addition, the Receiver made an adjustment to the aggregate distribution amount to the extent that certain distribution checks were voided, in the amount of $2,387.98. Accordingly, the Receiver's initial distribution amount was $2,831,772.34.

## III.   **RELEVANT PROCEDURAL BACKGROUND.**

The Receiver invites the Court and interested parties to review the materials identified in **Appendix 1** to the Final Report for a general summary of the relevant facts underlying the above-captioned receivership case and the activities and efforts of the Receiver and his Professionals.  A full recitation of the procedural and factual history of the above-captioned action is unnecessary for the purposes of this Wind-Up Motion, particularly given that the Receiver's concurrently-submitted Final Report summarizes the Receiver's actions during the pendency of this matter.  As to this Wind-Up Motion, the relevant facts are as follows:

The above-captioned enforcement action was commenced by the Plaintiff Securities and Exchange Commission (the "Commission") on February 4, 2015. (ECF No. 1.)  The Commission's Complaint alleged that Defendants Total Wealth and its founder, Jacob Cooper, ran a series of unregistered hedge funds through which they took substantial funds from client accounts, under the guise of "administrative fees," without providing any meaningful explanation or accounting to clients.  The Commission requested the appointment of a receiver and, on February 12, 2015, this Court entered the Appointment Order.  (ECF No. 8.)

Since his appointment, the Receiver has administered the Estate and all Receivership Assets in accordance with the Court's instructions including, but not limited to:  (1) marshaling and preserving Receivership Assets; (2) performing accountings and analysis of the Receivership Entities' financial activities and condition; (3) eliminating and addressing the Entities' liabilities; (4) recommending the claims process, appropriate treatment of claims, and making distributions; and (5) preparing reports for this Court.  (See concurrently filed Declaration of Thomas A. Seaman ["Seaman Decl."] ¶ 2.)  The specific actions undertaken to-date are identified in the Receiver's various interim and quarterly reports, including the Final Report.  Importantly, the Receiver believes he has – with the assistance of his Professionals – fulfilled each of his responsibilities to the fullest extent possible, and

1   has exhausted all reasonable efforts to recover additional Receivership Assets for

2   the benefit of the Estate.  Accordingly, the Receiver's continued administration,

3   except in connection with a potential settlement payment derived from the PPCN

4   Settlement, will not increase the amount of Assets available to the Receivership

5   Estate.  (Seaman Decl. ¶ 4.)  Thus, the costs of continuing the receivership now

6   outweigh the benefits.  Id.  Given this determination, and having fulfilled his

7   responsibilities under the Appointment Order, the Receiver believes it is now time

8   to stay the receivership case pending a potential performance of the PPCN

9   Settlement, as detailed below, and discharge and release the Receiver, except as in

10  connection with the Final Distribution.  Id. at ¶ 5.

11      Most recently, the Receiver secured Court approval of the PPCN Settlement,

12  pursuant to the Order Approving Settlement, dated September 18, 2019 (ECF No.

13  258).  As provided for under the terms of the PPCN Settlement, Private Placement

14  Capital Notes II, LLC and its associated entities (collectively, "PPCN") is obligated

15  to pay the Receiver $1.0 million on or before September 18, 2020.  This obligation

16  is secured by a stipulated judgment, which may be recorded in the event that a

17  payment is not timely made.  If PPCN performs its obligations under the PPCN

18  Settlement and timely pays the Receiver, the Receiver will make the Final

19  Distribution, per the terms of the Omnibus Distribution Order.  If, however, PPCN

20  fails to timely pay the Receiver, pursuant to the PPCN Settlement, the Receiver may

21  file and record the stipulated judgment[3].

22      For the reasons set forth herein, the Receiver respectfully requests that this

23  Court enter an Order approving the Receiver's Final Report; authorizing the

24  payment of the Final Fee Applications; authorizing the Receiver to commence

25  termination of the instant receivership, including the enumerated wind-up tasks; and

26

27

28

[3]  If PPCN fails to pay the amounts required under the PPCN Settlement, the Receiver may retain or sell the stipulated judgement in his sole discretion, but is under no obligation to pursue a collection therefrom.

staying the above-captioned action and retaining jurisdiction of the instant receivership for the limited purpose of permitting the Receiver to make the Final Distribution, if possible.  The Receiver respectfully requests that the Court discharge and release the Receiver upon the Receiver's filing of the Final Declaration reflecting completion of the wind-up tasks and the outcome of the PPCN Settlement. Id. at ¶ 6.

## IV.   RECEIVERSHIP WIND-UP RECOMMENDATIONS.

The Receiver believes that he has now satisfied his obligations to the Estate and exhausted all reasonable efforts to recover additional Receivership Assets. Accordingly, the Receiver recommends that the Court now authorize him to commence the termination of the instant receivership.  Specifically, the Receiver's recommendations are as follows:

### A.   Approval of the Receiver's Final Report.

The Receiver's Final Report (which also appends his final accounting for the Estate) has been submitted to the Court concurrently with this Wind-Up Motion. (Seaman Decl. ¶ 5; see also, Receiver's Final Report filed concurrently herewith.) The Final Report summarizes the actions of the Receiver and his Professionals during the pendency of the receivership case, and provides descriptions of his document review and analysis, accounting, Asset preservation and recovery, claims administration, and reporting efforts.  Id.  A copy of the Receiver's final accounting summary, reflecting recoveries and expenditures during the pendency of the receivership, is attached as **Exhibit 1** to the Final Report.  Id.  The Receiver respectfully requests that the Court approve his Final Report.

### B.   Payment of Fees and Expenses of Receiver and His Professionals.

Concurrently with this Wind-Up Motion, the Receiver and his Professionals have submitted their respective Final Fee Applications, requesting payment of their respective outstanding fees and expenses already incurred and anticipated fees and expenses through the termination of the instant receivership.  (Seaman Decl. ¶ 5.)

1   The Court has already authorized the Receiver, pursuant to its April 8, 2019

2   Omnibus Distribution Order (ECF No. 253), to set aside $520,334 from cash on-

3   hand to cover the Receiver's and his Professionals' administrative and professional

4   fees, including for:  (a) unpaid holdbacks of $333,834.41 of already-approved fees

5   and expenses; and (b) a proposed reserve in the aggregate amount of $186,500 to

6   cover remaining administrative fees and expenses.[4]  (Seaman Decl. ¶ 7.)

7        While the Court has authorized the set-aside of these amounts, it has not

8   authorized the Receiver to make a payment therefrom.  Accordingly, the Receiver

9   respectfully requests such authorization at this time to pay his, and his

10  Professionals':  (1) unpaid holdbacks in the aggregate amount of $333,834.41; and

11  (2) outstanding administrative and professional fees and anticipated fees and

12  expenses through the termination of the instant receivership, from the set-aside

13  reserve amount of $226,491.50.  (Id.)

14       **C.    PPCN Settlement.**

15       If PPCN performs its obligations under the PPCN Settlement and timely pays

16  the Receiver, the Receiver will make the Final Distribution, per the terms of the

17  Omnibus Distribution Order.  If, however, PPCN fails to timely pay the Receiver,

18  pursuant to the PPCN Settlement, the Receiver may file and record the stipulated

19  judgment.

20       In light of the contingent nature of PPCN's performance under the PPCN

21  Settlement, the Receiver respectfully requests that the Court stay the above-

22  captioned action, and retain jurisdiction over the instant receivership, for the limited

23

24

---

[4]  The Receiver has recovered an additional $42,655.50, such that he now has
$562,989.50 in cash on-hand to cover the Receiver's and his Professionals'
administrative and professional fees.  Given the scope and complexity of the
work that the Receiver and his Professionals performed from August 1, 2018 to
present, the Receiver respectfully requests that the reserve amount be increased
to $226,491.50 (from $186,500), so that a portion of the additional funds
recovered may be used to compensate the Receiver and his Professionals for
work performed from August 1, 2018 through the termination of the instant
receivership.

purpose of permitting the Receiver to make the Final Distribution of proceeds recovered from the PPCN Settlement, if any, along with the filing of any associated tax returns.

In accordance with the Omnibus Distribution Order, the Receiver will notify the Court within seven (7) days after either completion of the Final Distribution.  If the Receiver determines that no Final Distribution will be forthcoming, the Receiver will file the Final Declaration and request the Court to close the receivership.

### D. Undertake Receivership Wind-Up And Closing Tasks.

The Receiver respectfully reiterates his request to undertake the recommended wind-up and termination procedures, as set forth in detail in the Eighth Interim Report and Petition for Further Instructions (the "Eighth Interim Report") (ECF No. 246), which include:

1. Submission of Appropriate Tax Returns and Other Filings.

The Receiver is required to submit appropriate tax returns for each calendar year of the pendency of the receivership.  (Seaman Decl. ¶ 10.)  Based on his discussions with his accounting professionals, the Receiver will file the Qualified Settlement Fund returns for the Entities for the 2019 tax year on or before February 20, 2020.  (Id.)  If there is a Final Distribution, the Receiver anticipates submitting necessary and appropriate tax returns prior to, or contemporaneously with, the closure of the receivership case, which shall be promptly after the Final Distribution is completed or, in the event that such distribution is not possible, after notice to the Court and a recommendation that the receivership be terminated.  (Id.)

2. Abandonment or Destruction of Records.

The Receiver has obtained and reviewed hundreds of thousands of pages of material relevant to the business and financial activities of the Receivership Entities, in hard copy and digital form.  (Seaman Decl. ¶ 11.)  Some of these documents contain private financial information.  The Receiver therefore requests that, within ninety (90) days after the entry of an order approving the Receiver's

1  recommendations herein, the Receiver be authorized to abandon any documents

2  containing non-private information, and destroy any documents containing private

3  information, except for those records, if any, that are necessary to the Final

4  Distribution.  (Id.)

5          3.      Remittance of Receivership Assets.

6          As noted above, in order to calculate his recommended initial distribution

7  amount, the Receiver previously proposed, in his Eighth Interim Report, setting

8  aside a total of $520,334, reflecting the unpaid holdbacks of approved fees via

9  earlier applications, plus a reasonable estimate of the aggregate administrative fees

10 and expenses the Receiver and his Professionals expect to incur in administering the

11 Estate from the date of the last Court-approved fee applications through the

12 termination of the receivership and the discharge and release of the Receiver.[5]  The

13 Receiver recommends that the Court authorize him to remit any unused or unapplied

14 funds remaining in this reserve at the time of the termination of the receivership to

15 the Commission.  (Seaman Decl. ¶ 12.)

16         4.      Discharge and Release of the Receiver.

17         The only task remaining in the instant receivership is the prospective Final

18 Distribution pursuant to the PPCN Settlement (and possibly an additional tax

19 return), in accordance with this Court's Omnibus Distribution Order.  Accordingly,

20 the Receiver believes that it is appropriate to present his Final Report, along with the

21 Final Fee Applications, and to request the Court to stay the receivership case and

22 retain jurisdiction thereover, pending a potential performance of the PPCN

23 Settlement.  To facilitate the goals of the instant receivership, the Receiver requests

24 that the Court retain jurisdiction over any settlement proceeds paid in connection

25

26

27  [5]  See Footnote 4, reflecting the current cash on-hand balance of $562,989.50, which includes additional recoveries of $42,655.50.  The Receiver respectfully requests that the reserve to cover administrative and professional fees from August 1, 2018 through the termination of the instant receivership be increased to $226,491.50.

28

1  with the PPCN Settlement, which settlement proceeds shall remain subject to the

2  self-help bar and litigation stay imposed by the Appointment Order.

3       It may be some time before PPCN makes a payment to the Receiver in

4  accordance with the PPCN Settlement.  Likewise, it is uncertain whether PPCN will

5  make all contemplated payments.  Accordingly, and in order to best preserve limited

6  receivership resources and further limit the cost of administering the Estate, the

7  Receiver recommends that the Court accept the Receiver's Final Report and

8  eliminate further reporting obligations in connection with the instant receivership

9  such that the Receiver shall only be required to submit a written update only if the

10  Receiver believes the Court's attention is needed to facilitate the payment of the

11  Final Distribution.  (Seaman Decl. ¶ 13.)

12  **V.**    **ARGUMENT.**

13      **A.**    **The Proposed Final Closing Tasks Should Be Authorized.**

14       A court's power to administer an equity receivership is extremely broad.  SEC

15  v. Hardy, 803 F.2d 1034, 1037 (9th Cir. 1986); SEC v. Forex Asset Mgmt., LLC,

16  242 F.3d 325, 331 (5th Cir. 2001); SEC v. Basic Energy & Affiliated Res., 273 F.3d

17  657, 668 (6th Cir. 2001); SEC v. Elliot, 953 F.2d 1560, 1566 (11th Cir. 1992); SEC

18  v. Wang, 944 F.2d 80, 85 (2d Cir. 1991).  In the absence of controlling authority,

19  and where applicable, district courts supervising equity receiverships routinely look

20  to bankruptcy law for guidance.  SEC v. Am. Capital Invs., 98 F.3d 1133,1140 (9th

21  Cir. 1996); CFTC v. Topworth Int'l, 205 F.3d 1107, 1116 (9th Cir. 1999) (Central

22  District local rules, for instance, "direct receivers, unless otherwise ordered … to

23  'administer the estate as nearly as possible in accordance with … the administration

24  of estates in bankruptcy.'"); Fleet Nat'l Bank v. H&D Entm't, 926 F. Supp. 226, 240

25  n. 56 (D. Mass. 1996) ("[W]hat is permitted under the Bankruptcy Code, generally

26  is, a fortiori, permissible under receivership law.").

27       In the case administration context, courts are deferential to the business

28  judgment of bankruptcy trustees, receivers, and similar estate custodians.  See, e.g.,

1   Bennett v. Williams, 892 F.2d 822, 824 (9th Cir. 1989) ("[W]e are deferential to the

2   business management decisions of a bankruptcy trustee."); Sw. Media, Inc. v. Rau,

3   708 F.2d 419, 425 (9th Cir. 1983) ("The decision concerning the form of … [estate

4   administration] … rested with the business judgment of the trustee."); see also SEC

5   v. Health Maint. Ctrs., Inc., 2002 WL 34388014 (W.D. Wash. 2002) (Equating

6   bankruptcy trustees with receivers and finding that "the courts have overwhelmingly

7   applied a 'business judgment' test" to estate administration.); In re Thinking Machs.

8   Corp., 182 B.R. 365, 368 (D. Mass. 1995) ("The application of the business

9   judgment rule … and the high degree of deference usually afforded purely economic

10  decisions of trustees, makes court refusal unlikely.") (rev'd on other grounds, 67

11  F.3d 1021 (1st Cir. 1995)).

12          As reported herein and in the concurrently-submitted Final Report, the

13  Receiver has made all reasonable and necessary efforts to:  recover, review, and

14  analyze Receivership Entity business records and documents; assemble forensic

15  accounting reports reflecting the Receivership Entities' financial activities; recover

16  available Receivership Assets; and develop and administer an equitable claims and

17  distribution process for victimized investors and creditors.  The Receiver has

18  concluded, in his reasonable business judgment, that continued administration of the

19  instant receivership, except in connection with the potential Final Distribution from

20  the PPCN Settlement, will not result in recovery of any additional Receivership

21  Assets.  Accordingly, the Receiver has concluded that it is now appropriate for the

22  Court to stay the receivership case and retain jurisdiction thereover pending a

23  potential performance of the PPCN Settlement.  Consistent with the foregoing, the

24  Receiver requests that the Court order the discharge of the Receiver upon the

25  Receiver's filing of the Final Declaration reflecting the recovery and distribution of

26  proceeds from the PPCN Settlement, if any, or the disposition of any judgment

27  entered as a result of PPCN's failure to perform under the Settlement Agreement.

28

**B.      The Final Fee Applications Are Reasonable And Appropriate, And Payment Of All Outstanding Fees and Expenses Should Be Authorized At This Time.**

As noted above, the Court entered its Omnibus Distribution Order on April 8, 2019 (see ECF No. 253), which authorized the Receiver to set aside $520,334 from cash on-hand to cover the Receiver's and his Professionals' administrative and professional fees, including for:  (a) unpaid holdbacks of $333,834.41 of already-approved fees and expenses; and (b) a proposed reserve in the aggregate amount of $186,500 to cover remaining administrative fees and expenses.[6]

"As a general rule, the expenses and fees of a receivership are a charge upon the property administered."  Gaskill v. Gordon, 27 F.3d 248, 251 (7th Cir. 1994). These expenses include the fees and expenses of the Receiver and his Professionals. Decisions regarding the timing and amount of an award of fees and expenses to the Receiver and his Professionals are committed to the sound discretion of the Court. SEC v. Elliot, 953 F.2d 1560, 1577 (11th Cir. 1992) (rev'd in part on other grounds, 998 F.2d 922 (11th Cir. 1993)).

          1.      The Fees and Expenses Requested in the Final Fee Applications are Reasonable.

In determining the reasonableness of fees and expenses requested in this context, the Court should consider the time records presented, the quality of the work performed, the complexity of the problems faced, and the benefit of the services rendered to the receivership estate.  SEC v. Fifth Ave. Coach Lines, Inc., 364 F.Supp. 1220, 1222 (S.D.N.Y. 1973).

---

[6]   See Footnote 4, reflecting the current cash on-hand balance of $562,989.50, which includes additional recoveries of $42,655.50.  The Receiver respectfully requests that the reserve to cover administrative and professional fees from August 1, 2018 through the termination of the instant receivership be increased to $226,491.50 from $186,500.

Here, the Final Fee Applications describe the nature of the services that have been rendered, and where appropriate, the identity and billing rate of the individuals performing each task.  The Receiver and his Professionals have endeavored to staff matters as efficiently as possible in light of the level of experience required and the complexity of the issues presented.  In general, the Final Fee Applications reflect the Receiver's and his Professionals' customary billing rates and the rates charged for comparable services in other matters, less any discounts or reductions specifically identified in the respective applications.  The weighted-average billing rates of the Receiver and his Professionals are as noted in the Final Fee Applications.

The Receiver has reviewed the Final Fee Applications, and believes the hourly rates charged were appropriate, given the requirements of the instant receivership, that every effort was made to have tasks completed at the lowest possible billing rate, and that the total fees for which the Receiver seeks authorization for payment are fair and reasonable.  (Seaman Decl. ¶ 8.)  The Receiver likewise believes that the Estate has benefited from the services identified.  (Id.)

2.      The Fees and Expenses Requested in the Final Fee Applications have been Submitted to the Commission, Without Objection.

Courts often consider the judgment and experience of the Commission relating to receiver compensation.  "[I]t is proper to [keep] in mind that the [Commission] is about the only wholly disinterested party in [this] proceeding and that … its experience has made it thoroughly familiar with the general attitude of the Courts and the amounts of allowances made in scores of comparable proceedings." In re Phila. & Reading Coal & Iron Co., 61 F. Supp. 120, 124 (D.C. Pa. 1945). Indeed, the Commission's perspectives are not "mere casual conjectures, but are recommendations based on closer study than a district judge could ordinarily give to such matters."  Finn v. Childs Co., 181 F.2d 431, 438 (2d Cir. 1950) (internal quotation marks omitted).  In fact, "recommendations as to fees of the

1   [Commission] may be the only solution to the 'very undesirable subjectivity with

2   variations according to the particular judge under particular circumstances' which

3   has made the fixing of fees seem often to be 'upon nothing more than an ipse dixit

4   basis.'"  Id.  Thus, the Commission's perspective on the matter should certainly by

5   given "great weight," as observed by the court in Fifth Ave. Coach Lines, Inc., 364

6   F. Supp. at 1222.

7        In order to ensure that the fees and expenses requested in the Final Fee

8   Applications are appropriate, the Receiver and his Professionals have submitted

9   their respective invoices to the Commission for review.  The Commission has not

10  objected.  The Commission's satisfaction with the subject invoices therefore merits

11  significant deference.  As the Phila. & Reading Coal & Iron Co. court observed, the

12  Commission is "thoroughly familiar with … the amounts of allowances made in

13  scores of comparable proceedings." 61 F.Supp. at 124.  Indeed, the Commission is

14  likely in the best position to measure the fees and expenses requested here against

15  those incurred in other, similar proceedings, and cases of similar complexity.  The

16  Receiver and his Professionals thus respectfully request that the Court approve all

17  requested fees and expenses reflected in their respective Final Fee Applications,

18  which will be paid from the reserve identified in the Omnibus Distribution Order.

19        3.    The Receiver Should be Authorized to Pay Allowed Fees and

20              Expenses from Cash on Hand.

21        The bulk of the funds the Receiver holds are those previously set aside per

22  Court Order to cover the fees and expenses incurred by the Receiver and his

23  Professionals.  By their Final Fee Applications, the Receiver and his Professionals

24  respectfully request that the Court exercise its broad discretion and enter an Order

25  permitting the payment of fees and expenses requested from these funds.

26

27

28

## VI. <u>CONCLUSION.</u>

Based on the Receiver's cumulative findings and the fulfillment of his duties under the Appointment Order, the Receiver respectfully requests that this Court enter an Order:

1.     Approving the Final Report in its entirety;

2.     Authorizing the payment of the fees and expenses requested in the Final Fee Applications of the Receiver and his Professionals;

3.     Authorizing and instructing the Receiver to commence termination of the instant receivership, including certain wind-up tasks, as identified herein;

4.     Staying the above-captioned action and retaining jurisdiction over the instant receivership solely for the limited purpose of permitting the Receiver to recover and make the Final Distribution of proceeds recovered from the PPCN Settlement, if any, pursuant to the Omnibus Distribution Order; and

5.     Discharging and releasing the Receiver and terminating the receivership upon the Receiver's submission of the Final Declaration and supporting order to the Court reflecting the completion of all closing tasks, and the final disposition of the PPCN Settlement and/or judgment including the Final Distribution, if any.


Dated:  January 23, 2020                      ALLEN MATKINS LECK GAMBLE
                                              MALLORY & NATSIS LLP
                                              DAVID R. ZARO
                                              JOSHUA A. DEL CASTILLO
                                              NORMAN M. ASPIS

                                              By:_____/s/ _David R. Zaro_____
                                                   DAVID R. ZARO
                                                   Attorneys for Receiver
                                                   THOMAS SEAMAN

1

### PROOF OF SERVICE

*Securities and Exchange Commission v. Total Wealth Management, Inc., et al.*
USDC, Southern District of California – Case No. 15-cv-226 BAS-MSB

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 865 S. Figueroa Street, Suite 2800, Los Angeles, California 90017-2543.

On **January 23, 2020**, I caused to be served on all the parties to this action addressed as stated on the attached service list the document entitled:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF RECEIVER, THOMAS A. SEAMAN, FOR ORDER: (1) APPROVING FINAL REPORT AND ACCOUNTING; (2) AUTHORIZING PAYMENT OF FINAL FEE APPLICATIONS OF RECIEVER AND PROFESSIONALS; AND (3) STAYING RECEIVERSHIP CASE, DISCHARGING AND RELEASING RECEIVER**

☐ **OFFICE MAIL**: By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with the firm's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **OVERNIGHT DELIVERY**:  I deposited in a box or other facility regularly maintained by express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document(s) in sealed envelope(s) or package(s) designed by the express service carrier, addressed as indicated on the attached service list, with fees for overnight delivery paid or provided for.

☐ **HAND DELIVERY**:    I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **ELECTRONIC MAIL**: By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING**: By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX**: By transmitting the document by facsimile transmission.    The transmission was reported as complete and without error.

1        I declare that I am employed in the office of a member of the Bar of this Court
2   at whose direction the service was made.  I declare under penalty of perjury under the
    laws of the United States of America that the foregoing is true and correct.  Executed
3   on **January 23, 2020** at Los Angeles, California.

4

5   Martha Diaz

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1009060.98/LA